**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Adam C. Rogoff, Esq. (*pro hac vice* pending)
Rachael L. Ringer, Esq. (*pro hac vice* pending)
Megan M. Wasson, Esq. (*pro hac vice* pending)
Ashland J. Bernard, Esq. (*pro hac vice* pending)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
David M. Bass, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

*Proposed Co-Counsel to the Debtors and*
*Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Del Monte Foods Corporation II Inc., *et al.*,[1] | ) Case No. 25-16984 (MBK) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS, LIENHOLDERS, 503(B)(9) CLAIMANTS, AND PACA VENDORS; (B) DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS PAYMENTS IN CONNECTION THEREWITH; AND (C) GRANTING RELATED RELIEF

TO THE HONORABLE BANKRUPTCY JUDGE:

Del Monte Foods Corporation II Inc. and its affiliated debtors and debtors in possession

(collectively, the "**Debtors**") in the above-captioned chapter 11 cases respectfully state the

following in support of this motion (the "**Motion**"), and rely upon and incorporate by reference

the *Declaration of Jonathan Goulding, as Chief Restructuring Officer, in Support of the Debtors'*

---

[1] The last four digits of Debtor Del Monte Foods Corporation II Inc.'s tax identification number are 1894. A complete list of the Debtors in these Chapter 11 Cases and their respective tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent, at https://cases.stretto.com/DelMonteFoods. The location of the Debtor Del Monte Foods Corporation II Inc.'s principal place of business and the Debtors' service address is 205 North Wiget Lane, Walnut Creek, California 94598.

*Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**") filed concurrently herewith[2]:

**RELIEF REQUESTED**

1.      The Debtors seek entry of interim and final orders (the "**Interim Order**" and "**Final Order**," respectively), substantially in the form annexed hereto as **Exhibit A-1** and **Exhibit A-2** respectively, (a) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course of business, the prepetition claims owed to Domestic Critical Vendors, Foreign Critical Vendors, Lienholders, 503(b)(9) Claimants, and PACA Vendors (each, as defined below, and collectively, the "**Vendors**," and the prepetition claims thereof, the "**Critical Vendor Claims**") for goods, materials, supplies, and services rendered to the Debtors prior to the Petition Date (as defined below); (b) authorizing, but not directing, banks and other financial institutions (collectively, the "**Banks**") to receive, process, honor, and pay all checks presented for payment and all electronic payment requests made by the Debtors relating to satisfaction of the Critical Vendor Claims, whether such checks were presented or electronic-payment requests were submitted prior to or after the Petition Date; and (c) granting related relief, including scheduling a hearing for entry of a final order granting the relief requested in the Motion in a final basis (the "**Final Hearing**") within approximately thirty-five (35) days of the commencement of these Chapter 11 Cases (as defined below) to consider entry of the Final Order (the period of time before the Final Hearing, the "**Interim Period**").

2.      The Debtors seek authority to pay the unpaid and outstanding claims of such Vendors arising prior to the Petition Date, in an amount not to exceed $102,000,000 during the

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

Interim Period, as summarized in the following chart, and in the ordinary course of business following entry of the Final Order:

| Vendor Category | Interim Period Aggregate Amount | Aggregate Outstanding Prepetition Amount |
|---|---|---|
| Domestic Critical Vendors | $50,000,000 | $67,000,000 |
| Foreign Critical Vendors | $9,000,000 | $18,000,000 |
| Lienholders | $21,000,000 | $29,000,000 |
| 503(b)(9) Claimants | $19,000,000 | $19,000,000 |
| PACA Vendors | $3,000,000 | $3,000,000 |

## JURISDICTION AND VENUE

3.       The United States Bankruptcy Court for the District of New Jersey (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered on July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.) (the "**Standing Order**").

4.       This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.       Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6.       The statutory and legal predicates for the relief requested herein are sections 105(a), 363(b), 503(b), and 507(a)(2) of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and rules 2002-1 and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**").

## BACKGROUND

### A.     General Background

7.     On July 1, 2025 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their business and manage their financial affairs as debtors in possession.

8.     Contemporaneously herewith, the Debtors have also filed a motion requesting procedural consolidation and joint administration of these Chapter 11 Cases pursuant to sections 105(a) and 342(c)(1) of the Bankruptcy Code and Bankruptcy Rule 1015(b).  As of the date hereof, no request for the appointment of a trustee or examiner has been made, nor has any statutory committee been appointed or designated, in the Chapter 11 Cases.

9.     Information regarding the Debtors' history and business operations, capital structure and primary secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the First Day Declaration, which is incorporated herein by reference.

### B.     Overview of Debtors' Vendors

10.     As further described in the First Day Declaration, the Debtors are a leading producer, marketer, and distributor of various premium quality, packaged food products marketed under a portfolio of household brands.  The Debtors' products are distributed across the United States through various channels, including grocery and other retailer stores, e-commerce platforms, and third-party food delivery services.  The Debtors' ability to operate their business uninterrupted during these Chapter 11 Cases depends on the Debtors' ability to maintain their relationships with, and access to, their wide network of vendors, suppliers, and service providers,

and the various goods, services, and other materials the Debtors utilize in the ordinary course of business.

11.     Accordingly, and as further discussed below, following a careful analysis of their operations, the Debtors have identified a limited set of Vendors – consisting of Domestic Critical Vendors, Foreign Critical Vendors, Lienholders, 503(b)(9) Claimants, and PACA Vendors – that hold claims for unpaid goods and services arising prior to the Petition Date and provide goods and services critical to the stability, efficiency, and overall success of the Debtors' business operations; may hold liens against the Debtors' products in their possession; or otherwise may hold claims entitled to administrative priority status.

### C.     Domestic and Foreign Critical Vendors

12.     In the ordinary course of business, the Debtors engage various vendors, suppliers, and service providers of a variety of goods, materials and services, including raw and other ingredient materials, inventory, supplies, equipment, packaging, freight, logistics, and other materials and services essential to the Debtors' business operations, based in the United States (the "**Domestic Critical Vendors**") and outside of the United States (the "**Foreign Critical Vendors**" and, together with the Domestic Critical Vendors, collectively, the "**Critical Vendors**").

13.     Given the highly specialized nature of the products and services they provide, these Critical Vendors are either irreplaceable or the process to identify and obtain replacement goods and services not only carries the potential of harming the Debtors' industry reputation and goodwill, but would result in significant cost, delay, and disruption to the Debtors' business operations, to the detriment of their estates and all stakeholders.  As of the Petition Date, the Debtors estimate that approximately $85,000,000 remains owing to Critical Vendors in the aggregate, comprised of approximately $67,000,000 owed to Domestic Critical Vendors and

$18,000,000 to Foreign Critical Vendors.  The Debtors' Critical Vendors can be categorized as follows:

14.     <u>Co-Packers</u>.  Due to the volume and diversity of the products they produce, as well as various logistical considerations, the Debtors outsource certain of the sourcing, manufacturing, and packaging services to "co-packers."  These "co-packers" produce and deliver a finished product to the Debtors that can be branded with the Debtors' branded label, chiefly with respect to canned fruits and vegetables, stock and broth, and other packaged finished food products.  These Critical Vendors are irreplaceable, in light of the requisite infrastructure, magnitude of product volume, geographic location, and other pertinent factors, as other third-party co-packing providers would be unable to fulfill Debtors' volume capacity, product quality and logistics requirements in a timely, efficient, and cost-effective manner necessary to meet customer demand, particularly as the peak cyclical pack season for key canned fruit and vegetable co-packers occurs starting in July and key stock and broth co-packers increase production to prepare for the end of year holiday selling season.  With respect to this subcategory of co-packer Critical Vendors, the Debtors estimate that, as of the Petition Date, approximately $43,000,000 is owed to Domestic Critical Vendors and $12,000,000 is owed to Foreign Critical Vendors.

15.     <u>Raw Materials and Packaging</u>.  During the production process, the Debtors utilize various materials and supplies purchased through third-party vendors and suppliers.  These include, but are not limited to, (i) raw ingredients and other specialty materials, such as preservatives, sweeteners, spices, seasoning mixes, condiments, and other flavoring products; (ii) consumer packaging products and materials, including cans, lids, plastic cups, and other goods necessary to package the Debtors' products; (iii) various dunnage materials utilized to package the Debtors' products for shipping and distribution.  These products and materials are highly

specialized with respect to the Debtors' products and use of materials that are specifically designed for the Debtors.  Transitioning the sourcing of these products and materials to alternative vendors would result in significant delays to production as well as increased costs, and would not be viable during the anticipated pendency of these Chapter 11 Cases.  With respect to this subcategory of raw material supplier Critical Vendors, the Debtors estimate that, as of the Petition Date, approximately \$9,000,000 is owed to Domestic Critical Vendors and \$2,000,000 is owed to Foreign Critical Vendors.

16.    <u>Facilities and Equipment Vendors</u>.  The Debtors utilize various facilities and equipment vendors to provide equipment, repair, and other services essential to production, facilities operation, and distribution segments of the Debtors' business.  The services provided by these Critical Vendors include, among other things, (i) selling and leasing specialty equipment and other machinery for food processing (such as automated machinery for peeling, coring, slicing, stemming, and pitting) and equipment for farming and growing solutions (such as water irrigation systems); (ii) maintenance, repair, and sanitization services in connection with the Debtors' plant and facilities operations; (iii) replacement and spare parts required for maintenance of equipment; and (iv) supplying fuel, natural gas, diesel, and other commodities utilized throughout the supply chain.  With respect to this subcategory of facility and equipment Critical Vendors, the Debtors estimate that, as of the Petition Date, approximately \$5,200,000 is owed to Domestic Critical Vendors and \$400,000 is owed to Foreign Critical Vendors.

17.    <u>Critical Service Providers</u>.[3]  In the ordinary course of business, the Debtors rely on certain third-party vendors to provide various specialized services and programs to ensure that

---

[3]    Concurrently herewith, the Debtors have filed the Debtors' Wages Motion and Insurance Motion (each, as defined in the First Day Declaration, and, together, the "**Other Operational Motions**"), in which certain of these Other Outsourced Services Providers are addressed.  To the extent not addressed in the Other Operational Motions, the Debtors hereby incorporate by reference and restate the relief requested therein as it pertains to the Debtors' request

optimal performance, efficiency, and profitability of the Debtors' business operations is being achieved across the supply chain. The services provided by this group of Critical Vendors involve, among other things, information technology, administrative support, data management, product branding solutions, and product marketing/advertising. This group of Critical Vendors is comprised of specialized and highly skilled industry leaders for the particular services they provide, rendering them all but irreplaceable. With respect to this subcategory of critical service Critical Vendors, the Debtors estimate that, as of the Petition Date, approximately $9,800,000 is owed to Domestic Critical Vendors and $3,600,000 is owed to Foreign Critical Vendors.

18.    Overall, the Debtors undertook an extensive analysis of their payroll, current business operations, cash disbursements and vendor database to identify 3,546 trade vendors that may qualify as "Critical Vendors." The Debtors thereafter evaluated each of these trade vendors as to whether such trade vendor was truly "critical" to the Debtors' business based on a variety of factors and criteria tailored to the Debtors' business operations and needs. This analysis included, among other considerations,

    (i)    the negative impact to the business of not obtaining the specific produce, raw material, or packaging supplies produced by the vendor;

    (ii)    whether the vendor is a sole-source, limited-source, or high-volume supplier of goods or services critical to the Debtors' business operations;

    (iii)    whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal (or better) terms, including within a reasonable timeframe and within reasonable geographic proximity to meet the Debtors' production needs;

---

to pay any amounts due and owing as of the Petition Date to these Critical Vendors. For the avoidance of doubt, the Debtors are not seeking to, and shall not, pay any amounts to these Critical Vendors in excess of the amounts due and owing as of the Petition Date.

(iv)  whether the Debtors would be able to continue operating while transitioning business to an alternative supplier, if available, and how long such a transition would take;

(v)  whether failure to pay all or part of a particular vendor's claim could cause the vendor to withhold goods owned by the Debtors, or to refuse to ship inventory, or to provide critical services on a postpetition basis;

(vi)  the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

(vii)  whether the likelihood that a temporary break in the vendor's relationship with the Debtors could be remedied through use of the tools available in these Chapter 11 Cases;

(viii)  whether the vendor is currently refusing to supply the Debtors with product, or is refusing to do so without cash up front; and

(ix)  whether failure to pay a particular vendor could result in contraction of trade terms.

19.   As a result of the above-described process and analysis, the Debtors identified a select group of Critical Vendors that comprise less than 6% of the total number of the Debtors' active trade vendors.

20.   The Debtors carefully estimated all potential vendor claims as of the Petition Date, including the Critical Vendor Claims, and have determined that the ability to satisfy Critical Vendor Claims is absolutely necessary to maximize value and to avoid immediate and irreparable harm to the Debtors and their highly seasonal business during this critical stage of these Chapter 11 Cases.  In addition, the Debtors intend to pay Critical Vendor Claims only to the extent necessary and critical to enhance estate value.

21.   In return for paying the Critical Vendor Claims, the Debtors may use commercially reasonable efforts to condition payment of the Critical Vendor Claims upon each claimant's agreement to supply goods and services on terms that are acceptable to the Debtors in light of

customary industry practices (the "**Customary Trade Terms**"). The Debtors reserve the right to require, in their discretion, that the Customary Trade Terms condition to payment be made in writing.

22.     Accordingly, the Debtors respectfully request authority (i) to pay the prepetition claims of the Critical Vendors, in an amount not to exceed $59,000,000 pursuant to the Interim Order, (ii) to continue to negotiate new trade agreements and/or modify the terms of existing trade agreements, including the imposition of Customary Trade Terms, in the ordinary course of business on a postpetition basis, and (iii) to pay Critical Vendor Claims in the ordinary course of business and consistent with historical practice upon entry of the Final Order.

### D.    Lienholders

23.     As discussed above, the Debtors depend on a global shipping, warehousing, and distribution network to transport raw materials and products to their production and warehouse facilities and, ultimately, to many of their customers. The Debtors therefore contract with various shippers; ocean, freight and parcel carriers; freight-forwarders; warehousemen; lessors of the Debtors' facilities; and other transport, storage, and logistics providers to transport, store, and distribute the Debtors' products. Certain of these third-parties are presently in possession of the Debtors' products and other property as of the Petition Date, or are otherwise owed outstanding amounts for services rendered to the Debtors (collectively, the "**Lienholders**"). Under applicable law, certain Lienholders have a possessory or warehouseman's lien on such products, which secures the costs incurred in connection with transporting, storing, or otherwise moving the Debtors' product, while other Lienholders have the right to assert and perfect a statutory lien against applicable personal and real property of the Debtors.[4]

---

[4]    *See, e.g.*, U.C.C. § 7-307(a) (carrier has lien on goods in possession for costs incurred after date of carrier's receipt thereof, including for storing or transporting goods, and expenses necessary for preserving goods"); CAL. CONST.

24.    If the Debtors fail to pay for any amounts owed to the Lienholders, including arising from the prepetition period, the Lienholders may refuse to release the Debtors' products and other property, thereby causing significant disruption to the Debtors' business operations.  To avoid these consequences, the Debtors respectfully request authority to pay the prepetition claims of the Lienholders in an amount not to exceed $21,000,000 pursuant to the Interim Order, and to pay such claims in the ordinary course and consistent with their historical practices upon entry of the Final Order.

### E.    503(b)(9) Claimants

25.    In connection with the Debtors' ordinary course business operations, the Debtors regularly receive various co-packer products, raw materials, packaging, and other goods and supplies from various vendors and suppliers.  Certain of these trade vendors delivered goods to the Debtors within the 20 days immediately preceding the Petition Date and therefore are entitled to assert administrative priority claims against the Debtors' estates, pursuant to section 503(b)(9) of the Bankruptcy Code, for the associated amounts that remain due and outstanding as of the Petition Date (collectively, the "**503(b)(9) Claimants**").  Because the Debtors do not have long-term supply contracts with many of these 503(b)(9) Claimants, the 503(b)(9) Claimants may refuse to fulfill future orders absent payment of the prepetition amounts owed in connection with those deliveries.  As of the Petition Date, the Debtors estimate that approximately $19,000,000 in the aggregate is owed to the 503(b)(9) Claimants.

26.    To avoid major disruption or delay in the Debtors' production and overall business operations, the Debtors seek authority to satisfy the unpaid prepetition claims of the 503(b)(9)

---

ART. XIV § 3 ("Mechanics, materialmen, artisans, and laborers of every class shall have a lien upon the property upon which they have bestowed labor or furnished materials, for the value of such labor done and materials furnished; and the Legislature shall provide by law, for speedy and efficient enforcement of claims.").

Claimants, in an amount not to exceed $19,000,000 pursuant to the Interim Order, and to pay such claims in the ordinary course of business and consistent with historical practices upon entry of the Final Order.

### F.    PACA Vendors

27.    The Debtors rely on various farmers, producers, growers, and other agricultural suppliers from which the Debtors obtain various fresh produce – including fruits (such as pineapples, peaches, pears, and mandarin oranges) and vegetables (such as carrots, green beans, corn, and potatoes) – utilized in each of the Debtors' products.  The Debtors believe that certain of these vendors (collectively, the "**PACA Vendors**") are entitled to statutory protections under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a–499t ("**PACA**") or any other local or state statute of similar effect.

28.    The PACA Vendors and their products are the cornerstone to key elements of the Debtors' product line, and continued access to such products is fundamental to the Debtors' ability to continue to operate throughout these Chapter 11 Cases.  Therefore, to ensure that the supply of these perishable products continues unimpeded, it is imperative that the Debtors be authorized to pay these PACA Vendors in the ordinary course of business and consistent with their historical practices.  As of the Petition Date, the Debtors estimate that approximately $3,000,000 in the aggregate is owed to the PACA Vendors.  As such, the Debtors seek authority to satisfy the unpaid prepetition claims of the PACA Vendors, in an amount not to exceed $3,000,000 pursuant to the Interim Order, and to pay such claims in the ordinary course of business and consistent with historical practices upon entry of the Final Order.

**BASIS FOR RELIEF**

**I.      The Court Should Authorize the Payment of Critical Vendor Claims Pursuant to Sections 105(a), 363(b), and 503(b) of the Bankruptcy Code**

29.     The Court has ample statutory authority to grant the relief requested by the Debtors, including pursuant to Sections 503(b), 363(b), and 105(b) of the Bankruptcy Code.  Section 503(b)(1) of the Bankruptcy Code provides that:

> After notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate….

11 U.S.C. § 503(b)(1)(A).  The Court, therefore, can authorize the Debtors to use estate funds to pay any Critical Vendor Claims arising or relating to the period after the Petition Date.  Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[a debtor-in-possession], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  This provision grants a court broad flexibility to authorize a debtor to pay prepetition claims where a sound business purpose exists.  *See In re Diocese of Camden*, 653 B.R. 722, 741 (Bankr. D.N.J. 2023) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'") (quoting *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999)).

30.     Section 105(a) of the Bankruptcy Code authorizes a court, in its discretion, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  This provision codifies the inherent equitable powers of the bankruptcy court, including the power to authorize payment of prepetition claims, under what is known as the "doctrine of necessity" or the "necessity of payment" doctrine, when such payment is critical to a

- 13 -

debtor's reorganization or necessary for the preservation of the value of the debtor's estate. *See, e.g.*, *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) ("[T]he sine qua non for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction, failing such payment.  In such a circumstance, it is evident that the payment made under the 'necessity of payment' rule is in the interest of all parties … because such payment will facilitate the [debtors'] continued operation."); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (citations omitted) ("A number of cases declare a so-called 'necessity of payment' exception to the normal deferment of the payment of prereorganization claims until their disposition can be made part of a plan of reorganization.  These cases permit immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."); *see also In re Motor Coach Indus. Int'l, Inc.*, No. 08-12136-BLS, 2009 WL 330993, at *2 n.5 (D. Del. Feb. 10, 2009) ("The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor."); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("[I]t is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate.").

31.     The payment of prepetition claims under the doctrine of necessity is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code: preserving going concern value and maximizing property available to satisfy creditors' claims.  *See Bank of Am. Nat'l Tr. & Savs. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).  Indeed, bankruptcy courts routinely grant "first day" relief in the form of authorizing the payment of prepetition obligations,

including to critical vendors, where granting such relief serves these and other "significant Code-related objectives." *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (noting that courts have entered "'critical vendor' orders that allow payment of essential suppliers' prepetition invoices," particularly where such "distributions . . . would 'enable a successful reorganization and make even the disfavored creditors better off'" (quoting *In re Kmart Corp.*, 359 F. 3d 866, 872 (7th Cir. 2004) (discussing the justifications for "critical vendor" orders))); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"). Similarly, Debtors' ability to satisfy the Critical Vendor Claims is consistent with their fiduciary duties as debtors in possession pursuant to Section 1107(a) and 1108 of the Code. *See* 11 U.S.C. §§ 1107, 1108. "Implicit in the duties of a . . . debtor in possession . . . is the duty of such a fiduciary to protect and preserve the estate, including an operating business's going-concern value." *CoServ*, 273 B.R at 497. In addition, granting the relief requested herein is consistent with Bankruptcy Rule 6003, which implies that the payment of prepetition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm."

32.     Indeed, allowing the Debtors to pay the Critical Vendor Claims is particularly appropriate where, as here, doing so is consistent with increasing the Debtors' prospects for a successful chapter 11 process and maximizing value for the Debtors' estates, including its creditors. For that reason, courts in this district regularly grant relief consist with that which is being sought in this Motion. *See, e.g.*, *In re New Rite Aid, LLC, et al.*, Case No. 25-14861 (MBK) [Docket No. 130] (Bankr. D.N.J. May 7, 2025); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMB) [Docket No. 71] (Bankr. D.N.J. Mar. 1, 2024); *In re Invitae Corp.*, Case No. 24-11362 (MBK)

[Docket No. 51] (Bankr. D.N.J. Feb. 16, 2024); *In re WeWork Inc.*, Case No. 23-19865 (JKS)

[Docket No. 96] (Bankr. D.N.J. Nov. 8, 2023); *In re Cyxtera Techs., Inc.*, Case No. 23-14853

(JKS) [Docket No. 65] (Bankr. D.N.J. Jun. 6, 2023).[5]

33.     The relief requested by this Motion represents a sound exercise of the Debtors'

business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates,

and is justified under sections 105(a) and 363(b) of the Bankruptcy Code.  As noted herein, the

Debtors have sound business reasons for seeking authority to pay the Critical Vendor Claims.  It

is the Debtors' business judgment that the failure to pay the Critical Vendor Claims would likely

have a material adverse impact on the Debtors' efforts to monetize their assets and maximize the

value of their estates.  Absent the requested payments, the value of the Debtors' estates will suffer

significant, immediate, and possibly irreparable harm.  Accordingly, the Debtors submit that it is

appropriate for the Court to authorize the Debtors to engage in discussions with counterparties that

qualify as Critical Vendors regarding the validity and amount of their respective claims and to

determine whether any such counterparties qualify as Critical Vendors and, subject to entry of the

Final Order, for the Court to authorize the Debtors to satisfy the Critical Vendor Claims as set

forth herein.

## II.     The Court Should Authorize Payment of 503(b)(9) Claims Pursuant to Section 503(b)(9) of the Bankruptcy Code and to Avoid Lien Claims

34.     Section 503(b)(9) of the Bankruptcy Code provides that "[a]fter notice and a

hearing, there shall be allowed administrative expenses . . . including . . . the value of any goods

received by the debtor within 20 days before the date of commencement of a case under this title

in which the goods have been sold to the debtor in the ordinary course of such debtor's business."

---

[5]   Due to the voluminous nature of the orders cited herein, such orders have not been attached hereto, but are available upon request of the Debtors' proposed counsel.

11 U.S.C. § 503(b)(9).  The Debtors will be required to pay in full all claims entitled to administrative expense priority under section 503(b)(9) of the Bankruptcy Code to confirm any chapter 11 plan filed in these cases.  *See* 11 U.S.C. § 1129(a)(9)(A) (requiring payment in full of claims entitled to administrative expense priority).

35.     Many of the Critical Vendor Claims, including Critical Vendors that provide fresh food and produce, would likely be entitled an administrative expense claim pursuant to Section 503(b)(9) of the Bankruptcy Code.  The payment of such claims will affect only a change in the timing of such payments, but not the amounts or priority thereof, and so no other creditor or party in interest in these Chapter 11 Cases will be unfairly prejudiced.

36.     Additionally, certain Critical Vendors may be entitled under applicable non-bankruptcy law to assert liens on the Debtors' goods or equipment (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claim.  Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.  As a result, the Debtors anticipate that certain Critical Vendors may assert or perfect liens, simply refuse to turn over goods in their possession, or stop performing their ongoing obligations.  Even absent a valid lien, to the extent certain Critical Vendors have possession of the Debtors' inventory, equipment or products, mere possession or retention could drastically disrupt the Debtors' operations.

## III.     The Court Should Authorize Payment to PACA Vendors

37.     The Debtors believe that certain of the Critical Vendors may qualify under the PACA statutory scheme and therefore may have the right to assert claims pursuant thereto against the Debtors in the event of non-payment.

38.     Congress enacted PACA to regulate the sale of "perishable agricultural commodities."  7 U.S.C. § 499a; *see also Alliance Shippers, Inc. v. Guarrancino (In re Guarracino)*, 575 B.R. 298, 306 (Bankr. D.N.J. 2017) ("Congress enacted PACA in 1930 to promote fair trading practices in the shipping, handling, and marketing of perishable agricultural commodities in interstate commerce.").   Under PACA, the term "perishable agricultural commodity" is generally defined as "fruits and fresh vegetables of every kind and character …. whether or not frozen or packed in ice."  7 U.S.C. § 499a(b)(4).   PACA provides various protections to fresh fruit and vegetable sellers, including the establishment of a statutory constructive trust (a "**PACA Trust**"), consisting of a purchaser's entire inventory of food or other derivatives of perishable agricultural commodities, the products derived therefrom, and the proceeds related to any sale of the commodities or products (collectively, the "**PACA Trust Assets**").  *See* 7 U.S.C. § 499e(c)(2).

39.     PACA requires that certain procedural steps be taken by a seller of perishable agricultural commodities in order to preserve its rights as a trust beneficiary.  Beneficiaries of a PACA Trust that adhere to the statutory notice requirements are entitled to prompt payment from the PACA Trust Assets, as applicable, ahead of secured and unsecured creditors of a debtor's estate.  *See In re Superior Tomato-Avocado, Ltd.*, 481 B.R. 866, 869 (Bankr. W.D. Tex. 2012).  Further, PACA Trust Assets are not part of the Debtors' estate because they are subject to a non-segregated floating trust.  *See Stanziale v. Rite Way Meat Packers, Inc. (In re CFP Liquidating Est.)*, 405 B.R. 694, 697 (Bankr. D. Del. 2009); *In re Long John Silver's Rests., Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999); *Tom Lange Co. v. Kornblum & Co. (In re Kornblum & Co.)*, 81 F.3d 280, 284 (2d Cir. 1996).

40.     As discussed above, the Debtors believe a certain portion of the goods purchased from their vendors, including those identified as Critical Vendors, may qualify as "perishable agricultural commodit[ies]" under PACA.  As a result, insofar as those PACA Vendors abide by the notice requirements of PACA, such vendors may be eligible to assert claims granting them priority ahead of all other secured and unsecured creditors.  Accordingly, payment of such claims at this time will not prejudice or affect the amount available for distributions to other creditors of the Debtors.  Moreover, similar relief has been approved by courts in this Circuit.  *See, e.g., In re Meier's Wine Cellars Acquisition, LLC*, Case No. 24-11575 (MFW) [Docket No. 75] (Bankr. D. Del. July 25, 2024); *In re MRRC Hold Co*, Case No. 24-11164 (CTG) [Docket No. 55] (Bankr. D. Del. June 10, 2024); *In re RTI Holdings Co.*, Case No. 20-12456 (JTD) [Docket No. 561] (Bankr. D. Del. Nov. 18, 2020); *In re Earth Fare, Inc.*, Case No. 20-10256 (KBO) [Docket No. 218] (Bankr. D. Del. Feb. 26, 2020).

41.     To ensure that the supply of fresh produce continues unimpeded, it is imperative that the Debtors be authorized to pay these PACA Vendors in the ordinary course of business and consistent with their historical practices.

**IV.     Processing of Checks and Electronic Fund Transfers Should Be Authorized**

42.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations.  In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein.  Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.  Therefore, the Debtors respectfully request that the Court authorize, but not direct,

the Banks, when requested by the Debtors, to receive, process, honor, and pay any and all checks

or wire transfer requests in respect of the relief requested in this Motion.

## IMMEDIATE RELIEF IS JUSTIFIED

41.    Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one

(21) days after the filing of the petition if the "relief is needed to avoid immediate and irreparable

harm." Fed. R. Bankr. P. 6003(a).  As set forth in this Motion, the Debtors believe an immediate

and orderly transition into chapter 11 is critical to the viability of their operations, including by

authorizing payment of the Critical Vendor Claims in order to ensure the continued supply of

services and materials provided by such Vendors to the Debtors.  Further, any delay in granting

such relief requested herein could hinder the Debtors' operations and restructuring efforts, and

could immediately threaten the debtor's future as a going concern.  Accordingly, in order to avoid

any such immediate and irreparable harm, the Debtors respectfully request that the Court grant the

relief requested in this Motion on an emergency basis.

## REQUEST FOR WAIVER OF STAY

43.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule

6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than

cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court

orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek

in this Motion is necessary for the Debtors to operate their business without interruption and to

preserve value for their estates.  Accordingly, the Debtors respectfully request that the Court waive

the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief

sought herein justifies immediate relief.

44.    To implement the foregoing immediately, the Debtors respectfully request a waiver

of the notice requirements of Bankruptcy Rule 6004(a) to the extent they are deemed to apply.

## REQUEST FOR WAIVER OF MEMORANDUM OF LAW

45.     In addition, the Debtors respectfully request the Court waive the requirements to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3), as the legal grounds upon which the Debtors rely is set forth in this Motion and does not raise any novel issues of law.

## RESERVATION OF RIGHTS

46.     Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended, and should not be construed, as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE OF MOTION AND INTERIM ORDER

47.     Notice of the Motion will be given to (i) the Office of the United States Trustee for the District of New Jersey; (ii) counsel to the Prepetition ABL Agent; (iii) counsel to the Ad Hoc Term Lender Group; (iv) counsel to the Super-Senior Agent; (v) counsel to the DIP Agents; (vi) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (vii) the United States Department of Justice; (viii) the Internal Revenue Service; (ix) the United States Food and Drug Administration; and (x) all parties requesting notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Bankruptcy Rule 2002 and Local Rule 9013-5.  In light of the nature of the relief requested herein, the Debtors submit that due and proper notice has been given under the circumstances, and that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectively request that the Court grant the relief requested herein and such other and further relief as the Court may deem just and appropriate under the circumstances.

*[Remainder of page intentionally left blank]*

Dated: July 1, 2025

*/s/ Michael D. Sirota*
Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota
David M. Bass
Felice R. Yudkin
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:  msirota@coleschotz.com
             dbass@coleschotz.com
             fyudkin@coleschotz.com

*– and –*

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Adam C. Rogoff*
Rachael L. Ringer*
Megan M. Wasson*
Ashland J. Bernard*
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: Adam.Rogoff@HSFKramer.com
             Rachael.Ringer@HSFKramer.com
             Megan.Wasson@HSFKramer.com
             Ashland.Bernard@HSFKramer.com

                    *Pending Admission Pro Hac Vice*

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

## <u>EXHIBIT A-1</u>

### (PROPOSED INTERIM CRITICAL VENDOR ORDER)

Caption in Compliance with D.N.J. LBR 9004-1(b)

<table>
<tr><td><strong>UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY</strong></td><td></td></tr>
<tr><td>In re:</td><td>Chapter 11</td></tr>
<tr><td>Del Monte Foods Corporation II Inc., <em>et al.</em>,[1]</td><td>Case No. 25-16984 (MBK)</td></tr>
<tr><td>Debtors.</td><td>(Jointly Administered)</td></tr>
</table>

## INTERIM ORDER (A) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS, LIENHOLDERS, 503(B)(9) CLAIMANTS, AND PACA VENDORS; (B) DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS PAYMENTS IN CONNECTION THEREWITH; AND (C) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through nine (9), is

**ORDERED**.

---

[1] The last four digits of Debtor Del Monte Foods Corporation II Inc.'s tax identification number are 1894. A complete list of the Debtors in these Chapter 11 Cases and their respective tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent, at https://cases.stretto.com/DelMonteFoods. The location of the Debtor Del Monte Foods Corporation II Inc.'s principal place of business and the Debtors' service address is 205 North Wiget Lane, Walnut Creek, California 94598.

.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Adam C. Rogoff (*pro hac vice* pending)
Rachael L. Ringer (*pro hac vice* pending)
Megan M. Wasson (*pro hac vice* pending)
Ashland J. Bernard (*pro hac vice* pending)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: Adam.Rogoff@HSFKramer.com
         Rachael.Ringer@HSFKramer.com
         Megan.Wasson@HSFKramer.com
         Ashland.Bernard@HSFKramer.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
David M. Bass
Felice R. Yudkin
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:  msirota@coleschotz.com
         dbass@coleschotz.com
         fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

(Page 3)

| | |
|---|---|
| Debtors: | DEL MONTE FOODS CORPORATION II INC., *et al.* |
| Case No. | 25-16984 (MBK) |
| Caption of Order: | Interim Order (A) Authorizing Debtors to Pay Prepetition Claims of Critical Vendors, Lienholders, 503(B)(9) Claimants, and PACA Vendors; (B) Directing Financial Institutions to Honor and Process Payments in Connection Therewith; and (C) Granting Related Relief |

Upon the motion (the "**Motion**")[1] filed by the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") seeking entry of an order (this "**Interim Order**"), (a) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course of business, the prepetition claims of certain Domestic Critical Vendors, Foreign Critical Vendors, Lienholders, 503(b)(9) Claimants, and PACA Vendors; (b) authorizing, but not directing, the Banks to honor and process checks and electronic transfer requests related to the foregoing; and (c) granting related relief, all as more fully set forth in the Motion; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the Standing Order; and this Court having found that venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that due and proper notice of the Motion has been given, and that no other or further notice is required or necessary under the circumstances; and this Court having determined that it may enter an interim order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and upon the record in the Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

(Page 4)

| | |
|---|---|
| Debtors: | DEL MONTE FOODS CORPORATION II INC., *et al.* |
| Case No. | 25-16984 (MBK) |
| Caption of Order: | Interim Order (A) Authorizing Debtors to Pay Prepetition Claims of Critical Vendors, Lienholders, 503(B)(9) Claimants, and PACA Vendors; (B) Directing Financial Institutions to Honor and Process Payments in Connection Therewith; and (C) Granting Related Relief |

1.      The Motion is **GRANTED** as set forth herein on an interim basis.

2.      The final hearing (the "**Final Hearing**") on the Motion shall be held on _____, 2025, at _____, prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed with the Court, and served so as to be received by the following parties, by no later than 4:00 p.m., prevailing Eastern Time, on _____, 2025: (i) proposed co-counsel to the Debtors, Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn: Michael D. Sirota (msirota@coleschotz.com), David M. Bass, Esq. (dbass@coleschotz.com) and Felice R. Yudkin (fyudkin@coleschotz.com), and  Herbert Smith Freehills Kramer (US) LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Adam C. Rogoff (Adam.Rogoff@HSFKramer.com), Rachael L. Ringer (Rachael.Ringer@HSFKramer.com), Megan M. Wasson (Megan.Wasson@HSFKramer.com), and Ashland J. Bernard (Ashland.Bernard@HSFKramer.com); (ii) Office of the United States Trustee for the District of New Jersey, Attn: Jeffrey M. Sponder (Jeffrey.M.Sponder@usdoj.gov) and Lauren Bielskie (Lauren.Bielskie@usdoj.gov), One Newark Center, Suite 2100 Newark, NJ 07102; (iii) counsel to the Prepetition ABL Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attn: Sandeep Qusba (squsba@stblaw.com), Nicholas E. Baker (nbaker@stblaw.com), Dov Gottlieb (dov.gottlieb@stblaw.com), and Zachary J. Weiner (zachary.weiner@stblaw.com); (iv) counsel to the Ad Hoc Term Lender Group, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, New York 10166 (Attn: Scott J. Greenberg (sgreenberg@gibsondunn.com), Jason Z. Goldstein (jgoldstein@gibsondunn.com), Francis Petrie (fpetrie@gibsondunn.com), Kevin Liang (kliang@gibsondunn.com) and Simon Briefel

(Page 5)

| | |
|---|---|
| Debtors: | DEL MONTE FOODS CORPORATION II INC., *et al.* |
| Case No. | 25-16984 (MBK) |
| Caption of Order: | Interim Order (A) Authorizing Debtors to Pay Prepetition Claims of Critical Vendors, Lienholders, 503(B)(9) Claimants, and PACA Vendors; (B) Directing Financial Institutions to Honor and Process Payments in Connection Therewith; and (C) Granting Related Relief |

(sbriefel@gibsondunn.com), and Sills Cummis & Gross P.C., The Legal Center, One Riverfront Plaza, 1037 Raymond Blvd, Newark, New Jersey 07102, Attn: Andrew H. Sherman (asherman@sillscummis.com) and Gregory A. Kopacz (gkopacz@sillscummis.com); and (v) if any statutory committee has been appointed in these Chapter 11 Cases, counsel to such committee (collectively, the "**Notice Parties**").  If no objections to the entry of the Final Order are timely filed, this Court may enter the Final Order without further notice or a hearing.

3.      The Debtors are authorized, but not directed, in their discretion and exercise of reasonable business judgment, subject to this Interim Order, to pay, honor, or otherwise satisfy prepetition claims held by Domestic Critical Vendors, Foreign Critical Vendors, Lienholders, 503(b)(9) Claimants, and PACA Vendors in the ordinary course of business, up to the aggregate amounts set forth in the following chart, subject to entry of a final order:

| Vendor Category | Interim Authorized Amount |
|---|---|
| Domestic Critical Vendors | $50,000,000 |
| Foreign Critical Vendors | $9,000,000 |
| Lienholders | $21,000,000 |
| 503(b)(9) Claimants | $19,000,000 |
| PACA Vendors | $3,000,000 |

4.      Nothing in this Interim Order shall prejudice the Debtors' right to request authority to pay additional amounts owed on account of claims held by Domestic Critical Vendors, Foreign Critical Vendors, Lienholders, 503(b)(9) Claimants, and PACA Vendors, which right is expressly and fully reserved and preserved.  In the event the Debtors will exceed the aggregate amounts of Domestic Critical Vendors, Foreign Critical Vendors, Lienholders, 503(b)(9) Claimants and

| | |
|---|---|
| (Page 6) | |
| Debtors: | DEL MONTE FOODS CORPORATION II INC., *et al.* |
| Case No. | 25-16984 (MBK) |
| Caption of Order: | Interim Order (A) Authorizing Debtors to Pay Prepetition Claims of Critical Vendors, Lienholders, 503(B)(9) Claimants, and PACA Vendors; (B) Directing Financial Institutions to Honor and Process Payments in Connection Therewith; and (C) Granting Related Relief |

PACA Vendors in the Interim Period, the Debtors shall file a separate motion with the Court identifying the Vendors and/or categories of claim and the overage amount, and shall obtain Court approval prior to making payments in excess of the aggregate caps set forth herein.

5.    Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to any interim and final orders, as applicable, approving the use of cash collateral and/or the Debtors' entry into any postpetition financing facilities or credit agreements, and any budgets in connection therewith governing any such postpetition financing and/or use of cash collateral (each such order, a "**DIP Order**"). To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

6.    The Debtors are further authorized, but not directed, in their discretion, to condition the payment of a Critical Vendor claim on the agreement of the Critical Vendor (i) to continue supplying goods and services to the Debtors on the Customary Trade Terms, or such other trade terms that are at least as favorable to the Debtors as those in place during the twelve (12) months prior to the Petition Date, or as otherwise agreed to by the Debtors, in the reasonable exercise of their business judgment,  and the Critical Vendor; and (ii) not to cancel on less than ninety (90) calendar days' notice any contract or agreement pursuant to which they provide goods or services to the Debtors.

7.    The Debtors shall maintain a matrix/schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Interim Order including the following information: (i) the names of the payee; (ii) the amount of the payment; (iii) the category, nature or type of

(Page 7)

| | |
|---|---|
| Debtors: | DEL MONTE FOODS CORPORATION II INC., *et al.* |
| Case No. | 25-16984 (MBK) |
| Caption of Order: | Interim Order (A) Authorizing Debtors to Pay Prepetition Claims of Critical Vendors, Lienholders, 503(B)(9) Claimants, and PACA Vendors; (B) Directing Financial Institutions to Honor and Process Payments in Connection Therewith; and (C) Granting Related Relief |

payment; (iv) the payment due; and (v) the Debtor or Debtors that made such payment. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee and to counsel to each of the Ad Hoc Term Lender Group, the Super-Senior Agent, the Prepetition ABL Agent, the DIP Agents, and any statutory committees appointed in the Chapter 11 Cases on a monthly basis beginning upon entry of this Interim Order, provided, however, that any information provided to statutory committees pursuant to this paragraph shall be on a "professional eyes only" basis.

8.     Prior to entry of a final order, the Debtors shall not pay any obligations under this Interim Order unless they are due or are deemed necessary to be paid in the Debtors' reasonable business judgment to ensure ongoing provision of goods or services or otherwise to avoid an adverse effect on operations.

9.     Nothing herein shall impair or prejudice the rights of the U.S. Trustee, the Ad Hoc Term Lender Group, the Super-Senior Agent, the Prepetition ABL Agent, the DIP Agents, and any statutory committees appointed in the Chapter 11 Cases, which are expressly reserved, to object to any payment made pursuant to this Interim Order to an "insider" (as such term is defined in section 101(31) of the Bankruptcy Code) or any affiliate of an insider to the Debtors. To the extent the Debtors intend to make a payment to an insider or an affiliate of an insider of the Debtors, the Debtors shall provide seven (7) calendar days' advance notice to object by the U.S. Trustee, the Ad Hoc Term Lender Group, the Super-Senior Agent, the Prepetition ABL Agent, the DIP Agents, and any statutory committees appointed in the Chapter 11 Cases; *provided* that if any party objects to a payment, the Debtors shall not make such payment without order of this Court.

(Page 8)

| | |
|---|---|
| Debtors: | DEL MONTE FOODS CORPORATION II INC., *et al.* |
| Case No. | 25-16984 (MBK) |
| Caption of Order: | Interim Order (A) Authorizing Debtors to Pay Prepetition Claims of Critical Vendors, Lienholders, 503(B)(9) Claimants, and PACA Vendors; (B) Directing Financial Institutions to Honor and Process Payments in Connection Therewith; and (C) Granting Related Relief |

10.     The Banks are authorized, but not directed, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, on, or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Interim Order.

11.     Notice of the Motion as described therein shall be deemed good and sufficient notice thereof and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

12.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry

13.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion or otherwise waived by entry of this Interim Order.

14.     Any party may move for modification of this Interim Order in accordance with Local Rule 9013-5(e).

15.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

(Page 9)

| | |
|---|---|
| Debtors: | DEL MONTE FOODS CORPORATION II INC., *et al.* |
| Case No. | 25-16984 (MBK) |
| Caption of Order: | Interim Order (A) Authorizing Debtors to Pay Prepetition Claims of Critical Vendors, Lienholders, 503(B)(9) Claimants, and PACA Vendors; (B) Directing Financial Institutions to Honor and Process Payments in Connection Therewith; and (C) Granting Related Relief |

16.    The Debtors shall serve a copy of this Interim Order and the Motion on all parties required to receive such service pursuant to Local Rule 9013-5(f).

17.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

**<u>EXHIBIT A-2</u>**

**(PROPOSED FINAL CRITICAL VENDOR ORDER)**

Caption in Compliance with D.N.J. LBR 9004-1(b)

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re: | Chapter 11 |
| Del Monte Foods Corporation II Inc., *et al.*,[1] | Case No. 25-16984 (MBK) |
| Debtors. | (Jointly Administered) |

### FINAL ORDER (A) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS, LIENHOLDERS, 503(B)(9) CLAIMANTS, AND PACA VENDORS; (B) DIRECTING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS PAYMENTS IN CONNECTION THEREWITH; AND (C) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through five (5), is

**ORDERED**.

---

[1] The last four digits of Debtor Del Monte Foods Corporation II Inc.'s tax identification number are 1894. A complete list of the Debtors in these Chapter 11 Cases and their respective tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent, at https://cases.stretto.com/DelMonteFoods. The location of the Debtor Del Monte Foods Corporation II Inc.'s principal place of business and the Debtors' service address is 205 North Wiget Lane, Walnut Creek, California 94598.

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Adam C. Rogoff (*pro hac vice* pending)
Rachael L. Ringer (*pro hac vice* pending)
Megan M. Wasson (*pro hac vice* pending)
Ashland J. Bernard (*pro hac vice* pending)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: Adam.Rogoff@HSFKramer.com
          Rachael.Ringer@HSFKramer.com
          Megan.Wasson@HSFKramer.com
          Ashland.Bernard@HSFKramer.com

**COLE SCHOTZ P.C.**
Michael D. Sirota
David M. Bass
Felice R. Yudkin
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:   msirota@coleschotz.com
          dbass@coleschotz.com
          fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

(Page 3)

| | |
|---|---|
| Debtors: | DEL MONTE FOODS CORPORATION II, INC., *et al.* |
| Case No. | 25-16984 (MBK) |
| Caption of Order: | Final Order (A) Authorizing Debtors to Pay Prepetition Claims of Critical Vendors, Lienholders, 503(B)(9) Claimants, and PACA Vendors; (B) Directing Financial Institutions to Honor and Process Payments in Connection Therewith; and (C) Granting Related Relief |

Upon the motion (the "**Motion**")[1] filed by the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") seeking entry of an order (this "**Final Order**") (a) authorizing, but not directing, the Debtors, in their sole discretion, to pay, in the ordinary course of business, the prepetition claims of certain Domestic Critical Vendors, Foreign Critical Vendors, Lienholders, 503(b)(9) Claimants, and PACA Vendors; (b) authorizing, but not directing, the Banks to honor and process checks and electronic transfer requests related to the foregoing; and (c) granting related relief, all as more fully set forth in the Motion; and this Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the Standing Order; and this Court having found that venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that due and proper notice of the Motion has been given, and that no other or further notice is required or necessary under the circumstances; and this Court having determined that it may enter a final order consistent with Article III of the United States Constitution; and upon consideration of the First Day Declaration; and upon the record in the Chapter 11 Cases and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

(Page 4)

| | |
|---|---|
| Debtors: | DEL MONTE FOODS CORPORATION II INC., *et al.* |
| Case No. | 25-16984 (MBK) |
| Caption of Order: | Final Order (A) Authorizing Debtors to Pay Prepetition Claims of Critical Vendors, Lienholders, 503(B)(9) Claimants, and PACA Vendors; (B) Directing Financial Institutions to Honor and Process Payments in Connection Therewith; and (C) Granting Related Relief |

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is **GRANTED** as set forth herein on a final basis.

2.      The Debtors are authorized, but not directed, in their sole discretion and exercise of reasonable business judgment, to pay, honor, or otherwise satisfy prepetition claims held by Domestic Critical Vendors, Foreign Critical Vendors, Lienholders, 503(b)(9) Claimants, and PACA Vendors in the ordinary course of their business and consistent with historical practice, subject to the terms of this Final Order.

3.     The Debtors are further authorized, but not directed, in their discretion, to condition the payment of a Critical Vendor claim on the agreement of the Critical Vendor (i) to continue supplying goods and services to the Debtors on the Customary Trade Terms, or such other trade terms that are at least as favorable to the Debtors as those in place during the twelve (12) months prior to the Petition Date, or as otherwise agreed to by the Debtors and the Critical Vendor; and (ii) not to cancel on less than ninety (90) calendar days' notice any contract or agreement pursuant to which they provide goods or services to the Debtors.

4.     The Banks are authorized, but not directed, when requested by the Debtors, in the Debtors' discretion, to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations authorized to be paid hereunder, whether such checks or other requests were submitted prior to, on, or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.  The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order,

(Page 5)

| | |
|---|---|
| Debtors: | DEL MONTE FOODS CORPORATION II INC., *et al.* |
| Case No. | 25-16984 (MBK) |
| Caption of Order: | Final Order (A) Authorizing Debtors to Pay Prepetition Claims of Critical Vendors, Lienholders, 503(B)(9) Claimants, and PACA Vendors; (B) Directing Financial Institutions to Honor and Process Payments in Connection Therewith; and (C) Granting Related Relief |

and any such Bank shall not have any liability to any party for relying on such representations by the Debtors, as provided for in this Final Order.

5.      Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to any interim and final orders, as applicable, approving the use of cash collateral and/or the Debtors' entry into any postpetition financing facilities or credit agreements, and any budgets in connection therewith governing any such postpetition financing and/or use of cash collateral (each such order, a "**DIP Order**"). To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

6.      Notice of the Motion as provided therein shall be deemed good and sufficient notice thereof and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

7.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order shall be immediately effective and enforceable upon its entry.

8.      Any party may move for modification of this Final Order in accordance with Local Rule 9013-5(e).

9.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

10.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.