| | |
|---|---|
| **HERBERT SMITH FREEHILLS KRAMER (US) LLP** | **COLE SCHOTZ P.C.** |
| Adam C. Rogoff, Esq. (admitted *pro hac vice*) | Michael D. Sirota, Esq. |
| Rachael L. Ringer, Esq. (admitted *pro hac vice*) | David M. Bass, Esq. |
| Natan M. Hamerman, Esq. (admitted *pro hac vice*) | Felice R. Yudkin, Esq. |
| Megan M. Wasson, Esq. (admitted *pro hac vice*) | Court Plaza North, 25 Main Street |
| 1177 Avenue of the Americas | Hackensack, New Jersey 07601 |
| New York, New York 10036 | Telephone: (201) 489-3000 |
| Telephone: (212) 715-9100 | |
| *Proposed Co-Counsel to the Debtors and Debtors in Possession* | *Proposed Co-Counsel to the Debtors and Debtors in Possession* |

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| Del Monte Foods Corporation II Inc., *et al.*,[1] | ) ) ) | Case No. 25-16984 (MBK) |
| Debtors. | ) ) ) | (Jointly Administered) |

**LIMITED OBJECTION TO PACIFIC COAST PARTNER'S AND MORNING STAR'S MOTION SEEKING APPLICATION FOR ORDER SHORTENING TIME REGARDING (I) MOTION OF CO-MOVANTS PACIFIC COAST PRODUCERS, THE MORNING STAR PACKING COMPANY, L.P. FOR ENTRY OF AN ORDER (I)(A) COMPELLING DEBTORS TO ASSUME OR REJECT CERTAIN EXECUTORY CONTRACT AND UNEXPIRED LEASE AND (B) GRANT ADEQUATE PROTECTION, OR (II) IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY AND (II) MOTION TO FILE UNDER SEAL THE EXHIBITS TO MOTION OF CO-MOVANTS PACIFIC COAST PRODUCERS, THE MORNING STAR PACKING COMPANY, L.P. AND MORNING STAR KINGS LLC FOR AN ENTRY OF AN ORDER (I)(A) COMPELLING DEBTORS TO ASSUME OR REJECT CERTAIN EXECUTORY CONTRACT AND UNEXPIRED LEASE AND (B) GRANT ADEQUATE PROTECTION, OR (II) IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY**

---

[1] The last four digits of Debtor Del Monte Foods Corporation II Inc.'s tax identification number are 1894. A complete list of the Debtors in these Chapter 11 Cases and their respective tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent, at https://cases.stretto.com/DelMonteFoods. The location of the Debtor Del Monte Foods Corporation II Inc.'s principal place of business and the Debtors' service address is 205 North Wiget Lane, Walnut Creek, California 94598.

KL3 3758811.8

TO THE HONORABLE BANKRUPTCY JUDGE:

Del Monte Foods Corporation II Inc. ("**DMFC**") and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases file this limited objection to the (i) *Application for Order Shortening Time Regarding (I) Motion of Co-Movants Pacific Coast Producers, the Morning Star Packing Company, L.P. for Entry of an Order (I)(A) Compelling Debtors to Assume or Reject Certain Executory Contract and Unexpired Lease And (B) Grant Adequate Protection, Or (II) In the Alternative, Granting Relief From the Automatic Stay* (the "**Motion**") and (ii) *Motion To File Under Seal The Exhibits to Motion of Co-Movants Pacific Coast Producers, the Morning Star Packing Company, L.P. And Morning Star Kings LLC For An Entry Of An Order (I)(A) Compelling Debtors to Assume or Reject Certain Executory Contract and Unexpired Lease And (B) Grant Adequate Protection, Or (II) In the Alternative, Granting Relief From the Automatic Stay* (the "**Application**") submitted by Pacific Coast Producers ("**PCP**") and Morning Star Packing Company L.P. and Morning Star Kings LLC (together "**Morning Star**," and with PCP, the "**Movants**"). In opposition to the Application, the Debtors respectfully state the following:

## **INTRODUCTION**

1.  The Movants' Application to shorten time to July 28, 2025 should be denied as unwarranted. However, subject to the Court's availability, Debtors agree that the Motion can be accelerated and be heard on August 4, 2025 – which itself is less than 21 days from the filing of the Motion. This agreement to shorter notice than otherwise required is subject to the Movants performing their postpetition obligations in the interim to pack and supply goods required by the Debtors, among other reasons, to fulfil their obligations to their customers. If, however, the Movants violate the stay by refusing to perform under their executory contracts – as they have

KL3 3758811.8

threatened to do – the Debtors reserve the right to seek immediate relief for violation of the automatic stay.  Hopefully such relief will not be necessary and the Movants will continue to perform pending the resolution of the issues raised in the Motion.

*    *    *

2. The Debtors are one of the country's leading producers, distributors, and marketers of premium quality, plant-based packaged food products.  They have been a cornerstone of American grocery stores for more than 130 years.  On July 1, 2025, the Debtors filed petitions to commence these chapter 11 cases, backstopped by a Restructuring Support Agreement (the "**RSA**") pursuant to which an ad hoc group of the Debtors' term loan lenders committed to act as a stalking horse bidder for the purchase of all of Debtors' assets on a going concern basis.  The Debtors have already obtained interim approval of their DIP Facilities with an initial borrowing of $100 million of new funding (to be increased to $165 million on final approval).

3. The Movants purchase, process, package, and supply tomatoes for the Debtors and also, under a separate and independent contract, lease a property to one of the Debtors.  The Movants want this Court to compel the Debtors to assume or reject the Movants' processing contracts and the separate facility lease *mere weeks into this bankruptcy* and at the initial stages of the marketing process for the Debtors' businesses as going concerns.  This breakneck pace is contrary to the breathing spell afforded the Debtors allowing them 120 days (subject to extension) to assume or reject non-residential real property leases, and until confirmation to make this decision for other executory contracts, like the supply agreement.

4. The Movants lack any true justification for their request to expedite the Debtors' these critical assumption or rejection decisions.  Stripped of rhetoric and hyperbole, the Movants' sole argument for shortening time is that they may incur costs before the Debtors' exercise their business judgment in the ordinary course.  But that is no justification for shortening time.  It is no

different than any other trade creditor who must, by operation of bankruptcy law, continue doing business with Debtors on their executory contracts. The Debtors have sufficient liquidity to perform under the DIP Facilities and there is a going concern sale process underway, supported by the ad hoc group of term lenders' commitment, pursuant to the terms of the RSA, to act as stalking horse bidder. The risk of harm will also be further alleviated by the Debtors posting a letter of credit in the Movants' favor, which is forthcoming today or Monday (as the Movants were told before they made the Motion). In the face of these steps, forcing a premature decision to assume or reject on the Debtors is prejudicial to the Debtors' estates and creditors. Giving the Debtors (and other interested parties – like a newly-formed creditors' committee that has not even selected advisors as of today) less than 10 days to respond to the Motion is even less warranted. If granted, the Motion could disrupt the sale process contemplated in the RSA and in the Debtors first day papers. The decision to assume or reject contracts should not be forced haphazardly, but rather should be made carefully and deliberatively in conjunction with the Debtors' sale process. And the Court's decision whether to grant or deny the Motion prejudicing the Debtors' sale process should not be made without time for fulsome briefing by the Debtors and other interested parties.

## ARGUMENT

5.  The Movants seek to shorten the time for notice pursuant to Fed. R. Bankr. P 9006(c)(1). Shortening time pursuant to Rule 9006(c)(1) "is akin to a temporary restraining order in that it often operates *ex parte* and affects the absent party's rights to a significant degree." *In re South Willow Creek Farm*, 1999 WL 1244511, at *3 (10th Cir. B.A.P. 1999). Thus, to demonstrate "cause" under Rule 9006(c)(1), the "moving party *must* provide evidence" that absent

a shortening of time, "there is a danger of irreparable harm or clear prejudice." *Id.* (emphasis added).

6. There is no emergent threat to the Debtors' or Movants' ability to perform their duties under the contracts that can only be remedied by forcing the Debtors to prematurely make their assumption or rejection decisions now – especially without the benefit of input from affected stakeholders, like the newly-formed creditors' committee. The Movants will be paid in the ordinary course for their delivered products, regardless of whether and when their contracts are assumed. And, again regardless of when the decision to assume (or not) is made, in the unlikely event the Movants are not paid in the ordinary course, they will have administrative claims. The Debtors' DIP budget covers these obligations. Moreover, the Movants will have access to the letter of credit the Debtors will have in place for their benefit shortly.[2]

7. In fact, the Movants have failed to produce any evidence that they will suffer *any* harm, let alone irreparable harm, if their Motion is heard in the regular course. Movants state that they *may* have to manufacture products that they *may* be unable to sell to other parties if the Debtors decide to reject the contract at a later date. The Movants never explain why they think the Debtors would not have an obligation under the contract to pay for products ordered and delivered; assumption or rejection has no bearing on the Debtors' obligation to pay post-petition vendors like the Movants. Moreover, the Movants concede they are producing unlabeled Brites

---

[2] The Debtors asked the Movants to refrain from making this Motion, and their Application to shorten time, because – with access to the interim DIP funds – the letter of credit is to be posted no later than Monday. The letter of credit is being finalized with the necessary input from the Movants as beneficiaries. Regrettably, the Movants not only did not accede to this request, they failed even to mention it to the Court in an effort to overstate their supposed risk.

KL3 3758811.8

Products that can, at least in part, be sold to other consumers. Mot. 7, 12 (observing that 62% of Brites Products[3] can be sold elsewhere).

8. Additionally, the Movants baldly assert that "no prejudice will be suffered" by any party if their Application is heard in 10 days. Application at 3. But the Movants overlook that the Debtors (and perhaps other interested parties) are entitled to time to respond to the Motion, which includes two declarations (one that, with exhibits, exceeds 380 pages). The Debtors dispute many of the Movants' factual assertions – many of the defaults alleged are *not defaults at all*, the Movants are not producing anything for the Debtors at the Hanford plant, the alleged default related to the Lease-Back Agreement is unrelated to any of the allegations concerning the Pack Season, and the risk of harm is overstated. The Debtors may want discovery from the Movants concerning these and other topics, and certainly want an opportunity to develop the factual record themselves. The Debtors are less than 3-weeks into this bankruptcy (and in the process of marketing these businesses for sale), and they need more time both to be able to decide whether to assume or reject the contract, and to gather the evidence to respond to this Motion.[4]

9. The granting of the Movants' Application to shorten time (or their Motion) threatens to cause yet further harm to the Debtors' relations with other parties. This is the Pack Season for many Del Monte products. If Movants get to jump the line, others will want to do so

---

[3] "Brite Products" are canned but unlabeled products.

[4] The Movants' request for super-priority claims may also be of interest to the Committee, which was only established yesterday and which, as of writing, cannot even see the necessary agreements until the Court rules on the Movants' motion to seal.

KL3 3758811.8

as well and the breathing room afforded by the Bankruptcy Code will be eroded – potentially putting the case into disarray.

10. Furthermore, this Motion requests relief that is unlikely to be granted. The Debtors have (at least) 120 days to decide whether to assume the non-residential real property lease, 11 U.S.C. § 365(d)(4)(A), and longer for any other executory contract. *Id.* § 365(d)(2). Congress provided these time limits to give the Debtor "the leeway needed to appraise its financial situation." *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 104-06 (2d Cir. 1982) (quoting *In re Midtown Skating Corp.*, 3 B.R. 194, 197 (Bankr. S.D.N.Y. 1980)). Granting a motion to force an early decision on the Debtor, therefore, can undermine congressional intent, which is why these motions are "rarely granted." 3 Collier on Bankruptcy ¶ 365.05 (16th 2025). In fact, in the cases *they* have provided in their motion (at Mot. 16) demonstrate that courts *do not grant* these motions, especially early in the case; indeed, their cases show that much later into the case, courts still give the debtor ample time to determine whether to assume or reject contracts. *See, e.g., In re G-I Holdings, Inc.*, 308 B.R. 196, 212-13 (D.N.J. 2004) (rejecting motion to compel assumption or rejection); *In re Adelphia Communications Corp.*, 291 B.R. 283, 300-01 (Bankr. S.D.N.Y. 2003) (same); *In re Teligent, Inc.*, 268 B.R. 723, 739 (S.D.N.Y. 2001) (denying motion six months after petition filed). Forcing a decision on an even faster timeline would undermine congressional intent and possibly prejudice other creditors before a plan is even drafted.

11. The Movants other claims for relief, which are unsupported by case citations, fare no better. Adequate protection liens are not granted for those performing under executory contracts. *In re Chama, Inc.*, 256 B.R. 662, 669 (Bankr. D. Del. 2000) (Bankr. D. Del. 2000). Nor do Courts grant relief from the automatic stay for general unsecured creditors absent extraordinary

circumstances, and certainly not this early in a complex case. *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 47-48 (Bankr. S.D.N.Y. 1990).

12. On the other hand, there may be a reason to expedite the schedule if Movants themselves fail to perform under the parties' contracts. Failing to supply Debtors in accordance with the PSA would cause Debtors to miss customer orders, irrevocably damaging customer relations and the goodwill of Debtors' tomato business (a fact that even Movants acknowledge). Mot. 13. And here, there should be no doubt that Debtors would prevail in a motion to compel performance as it is well-established that a non-debtor's refusal to perform under an executory contract is a violation of the automatic stay. *See In re Broadstripe, LLC*, 402 B.R. 646, 657 (Bankr. D. Del. 2009).

13. For all of these reasons there is no cause for expediting the assumption deadline, or for shortening the time for briefing and a hearing. But Debtors, in a show of good faith, agree that this Motion can be heard during the August 4, 2025 Omnibus Hearing.

## **RESERVATION OF RIGHTS**

11. This objection is made without prejudice to any argument that a motion to compel performance by the Debtors will need to be heard on an expedited basis. Movants have threatened, in their Motion and elsewhere, to not perform their obligations under the relevant agreements. As Movants note (at Mot. 8), this could cause irreparable harm to Del Monte's brand and may require expedited hearing.

## **CONCLUSION**

WHEREFORE, the Debtors respectively request that the Court deny the relief requested in the Application, set this Motion for argument on August 4, 2025, and grant such other relief as is just and proper.

KL3 3758811.8

Dated: July 18, 2025

/s/ Michael D. Sirota
Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota
David M. Bass
Felice R. Yudkin
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Email:  msirota@coleschotz.com
         dbass@coleschotz.com
         fyudkin@coleschotz.com

– and –

**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Adam C. Rogoff*
Rachael L. Ringer*
Natan M. Hamerman*
Megan M. Wasson*

1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
E-mail: Adam.Rogoff@HSFKramer.com
         Rachael.Ringer@HSFKramer.com
         Natan.Hamerman@HSFKramer.com
         Megan.Wasson@HSFKramer.com

**Admitted Pro Hac Vice*

*Proposed Co-Counsel to the Debtors and Debtors in Possession*