UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**TRIF & MODUGNO LLC**
Louis A. Modugno, Esq.
Kyle H. Cassidy, Esq.
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960
Telephone: (973) 547-3611
Facsimile: (973) 554-1220

**GRAYROBINSON, P.A.**
Steven J. Solomon, Esq.
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: 305-416-6880
Facsimile: 305-416-6887

*Attorneys for Saddle Creek Corporation*

| | |
|---|---|
| In re | Case No. 25-16984 (MBK) |
| DEL MONTE FOODS CORPORATION II Inc., *et al.*, | Chapter 11 (Jointly Administered) |
| Debtors.[1] | Judge Michael B. Kaplan |

# SADDLE CREEK CORPORATION'S LIMITED OBJECTION TO DEBTORS' BIDDING PROCEDURES AND SALE, AND RESERVATION OF RIGHTS

---

[1] The last four digits of Debtor Del Monte Foods Corporation II Inc.'s tax identification number are 1894. A complete list of the Debtors in these Chapter 11 Cases and their respective tax identification numbers may be obtained on the website of the Debtors' proposed claims and noticing agent, at https://cases.stretto.com/DelMonteFoods. The location of the Debtor Del Monte Foods Corporation II Inc.'s principal place of business and the Debtors' service address is 205 North Wiget Lane, Walnut Creek, California 94598

Saddle Creek Corporation ("Saddle Creek"), by and through its undersigned counsel, respectfully submits this limited objection (the "Limited Objection") in accordance with the Order (I) Approving the Auction and Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, (III) Scheduling an Auction and Sale Hearing, (IV) Approving the Form and Manner of Notice Thereof, (V) Authorizing the Sale of Assets, and (VI) Granting Related Relief (the "Order") (Docket No. 365). In support, Saddle Creek states as follows:

## PRELIMINARY STATEMENT

1. Saddle Creek does not oppose the Debtors' sale process. Its sole concern is to ensure that no order authorizes a sale of the Debtors' goods currently held by Saddle Creek free and clear of Saddle Creek's contractual and statutory lien rights. Under Saddle Creek's Warehouse Services Agreement, Saddle Creek has a general warehouse lien that secures *all obligations* owed by the Debtors to Saddle Creek[2]—not merely charges associated with specific shipments or goods. The validity and priority of Saddle Creek's contractual general lien rights are explicitly recognized by the Final DIP Order (Docket No. 359 at p. 94).

2. At the moment, Debtors are current on all payment obligations to Saddle Creek. If, through the contemplated sale, a buyer elects to assume the Warehouse Services Agreement and perform all obligations thereunder, Saddle Creek would have no objection because its contractual rights and general lien would continue unimpaired. If, however, the Agreement is not assumed and instead rejected under 11 U.S.C. § 365, Saddle Creek will hold a substantial rejection-damage claim secured by its general warehouse lien. Accordingly, Saddle Creek's concern is to ensure that any order entered under § 363(f) does not authorize the transfer of inventory that is subject to its

lien free and clear of Saddle Creek's rights—whether those rights continue under an assumed contract or secure its damage claim arising from rejection.

## BACKGROUND

3. Saddle Creek and Debtors entered into the Warehouse Services Agreement dated December 6, 2019 (as amended, the "Warehouse Agreement"), governing the storage, handling, and distribution of the Debtors' inventory at Saddle Creek's Ft. Worth, Texas facility (the "Facility"). The Warehouse Agreement provides, in relevant part, that Saddle Creek "shall have a general warehouse lien for all charges for storage, handling, and other services rendered and for any other indebtedness owing by Customer to Warehouseman, whether related to specific goods or otherwise, and Warehouseman may retain possession of any goods until all such charges and indebtedness are satisfied." Docket Nos. 357 & 359. This contractual general lien is broader than (but in addition to) the statutory specific lien recognized under Tex. Bus. & Com. Code § 7.209.

4. Under the Warehouse Agreement and Texas law, Saddle Creek's lien is possessory and perfected by possession, and it secures all current and future obligations of the Debtors to Saddle Creek, including any damage claims arising from rejection of the Agreement under § 365.

5. The Final DIP Order entered August 12, 2025 (Docket No. 359) expressly preserves and validates Saddle Creek's lien, providing that:

> Any liens and other relief granted hereunder do not prime and do not otherwise impair the Prior Senior Liens held by Saddle Creek Corporation ('SCC') arising out of SCC's continuing possessory warehouseman's lien only against the Debtors' goods stored at SCC's facility from time to time, as permitted under Article 7 of the Uniform Commercial Code, which liens are valid, binding, perfected, enforceable, non-avoidable, and senior in priority to the Prepetition Liens … pursuant to applicable law and that certain Warehouse Services Agreement dated as of December 6, 2019."

3

(Docket No. 359 at p. 94).

Saddle Creek filed two Proofs of Claim asserting secured status: (i) Claim No. 357 (Docket No. 357) against Del Monte Foods Corporation II Inc.; and (ii) Claim No. 359 (Docket No. 359) against Del Monte Foods, Inc. Both assert **fully secured claims** based on a warehouseman's lien securing goods valued at **$35,794,528.00** (Docket Nos. 357 & 359 at Part 2, Line 9).

## LIMITED OBJECTION

6. Saddle Creek's contractual general lien grants it the right to retain possession of any goods in its custody until all obligations (current and future) owed by the Debtors are satisfied, and it applies broadly to any amounts due under the Agreement, including damages arising from rejection under § 365.

7. In addition to its contractual lien, Texas law independently recognizes and protects Saddle Creek's possessory lien rights. The Warehouse Agreement expressly provides that Saddle Creek "shall operate at all times as a warehouseman under the Uniform Commercial Code as adopted in the State in which the Facility is located." (Warehouse Services Agreement § 12.1.) Because the Facility is located in Ft. Worth, Texas, Saddle Creek's statutory rights arise under Texas Business & Commerce Code §§ 7.209 and 7.210, which provide a warehouseman's lien on goods in its possession for all storage, handling, and related charges and restrict the release of those goods absent payment in full. See also Tex. Bus. & Com. Code § 9.333(b) (possessory tatutory liens have priority over security interests unless otherwise explicitly provided).

8. These contractual (general) and statutory liens—collectively—cannot be stripped, subordinated, or otherwise impaired in a sale under § 363(f) absent Saddle Creek's consent or full payment of all secured charges. Texas law provides no legal or equitable mechanism that would compel a warehouseman to surrender goods subject to its lien for a mere "money satisfaction." *See*

4

*In re Zaisan, Inc.*, 80 B.R. 832, 836–37 (Bankr. S.D. Tex. 1987) (holding that a Texas warehouseman's lien under § 7.209 is possessory and continues only so long as possession is retained). Federal bankruptcy courts applying Texas law have likewise held that a debtor may not sell collateral free and clear of a non-consenting lienholder's interest where none of the enumerated prongs of § 363(f) are satisfied. *See In re CDX Gas, LLC*, 2009 WL 1651445, at 2–3 (Bankr. S.D. Tex. June 9, 2009) (denying approval of bid procedures because the debtor could not demonstrate any basis under § 363(f) to sell assets "free and clear" of a non-consenting lienholder's interest)).

9. Saddle Creek *does not consent* to the sale of the goods in its possession free and clear of its continuing lien against the goods in its possession, regardless if Saddle Creek's claim arises out of unpaid charges due under the Agreement, and these lien rights are binding against any successful buyer to the same extent the Debtors are bound by such lien rights, regardless if the Agreement is assumed by the Debtors and assigned to a successful buyer or rejected by the Debtors, rendering the goods in Saddle Creek's possession subject to Saddle Creek's rejection damage claim.

10. Nor can the Debtors satisfy § 363(f)(5). As Texas courts and bankruptcy courts applying Texas law recognize, there exists no proceeding under Texas law that would compel a warehouseman to release goods subject to a possessory lien without full satisfaction of all obligations. *See* Tex. Bus. & Com. Code §§ 7.209, 7.210; *Zaisan*, 80 B.R. at 836–37; *CDX Gas*, 2009 WL 1651445, at *2–3.

11. Accordingly, both by contract and statute, Saddle Creek's general possessory warehouse lien secures all present and future obligations owed to it by the Debtors and continues to attach to all goods in its custody. Any sale order entered under § 363(f) must therefore expressly

preserve Saddle Creek's lien rights in their entirety and prohibit the sale or transfer of such goods free and clear of those continuing lien rights.

## RESERVATION OF RIGHTS

12. Saddle Creek reserves all rights, claims, and defenses, including without limitation the right to supplement or amend this Limited Objection or to raise additional objections to the Order. Nothing herein shall be construed as a waiver of Saddle Creek's statutory or contractual rights, including its rights under the Warehouse Agreement and its possessory lien rights under applicable law.

## CONCLUSION

13. For these reasons, Saddle Creek respectfully requests that the Court condition approval of any bidding procedures or sale Order on express protection of Saddle Creek's general warehouseman's liens and grant such further relief as the Court deems just and proper.

Dated: November 12, 2025
       Morristown, New Jersey

**GRAYROBINSON, P.A.**

*/s/ Steven J. Solomon*
Steven J. Solomon, Esq.
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone: 305-416-6880
Facsimile: 305-416-6887

**TRIF & MODUGNO LLC**
Louis A. Modugno, Esq.
Kyle H. Cassidy, Esq.
89 Headquarters Plaza
North Tower, Suite 1201
Morristown, New Jersey 07960
Telephone: (973) 547-3611
Facsimile: (973) 554-1220