**HERBERT SMITH FREEHILLS KRAMER (US) LLP**
Adam C. Rogoff, Esq. (admitted *pro hac vice*)
Rachael L. Ringer, Esq. (admitted *pro hac vice*)
Megan M. Wasson, Esq. (admitted *pro hac vice*)
Ashland J. Bernard, Esq. (admitted *pro hac vice*)
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

*Co-Counsel to the Debtors and*
*Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
David M. Bass, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000

*Co-Counsel to the Debtors and*
*Debtors in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Del Monte Foods Corporation II Inc., *et al.*, | ) Case No. 25-16984 (MBK) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF
## DEL MONTE FOODS CORPORATION II INC. AND ITS DEBTOR AFFILIATES

> **NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.  YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

---

[1] The last four digits of Debtor Del Monte Foods Corporation II Inc.'s tax identification number are 1894.  A complete list of the Debtors in these Chapter 11 Cases and their respective tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent, at https://cases.stretto.com/DelMonteFoods.  The location of the Debtor Del Monte Foods Corporation II Inc.'s principal place of business and the Debtors' service address is 205 North Wiget Lane, Walnut Creek, California 94598.

# TABLE OF CONTENTS

Page

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ...............................................................................................**2**

    A.    Defined Terms. ................................................................................................. 2

    B.    Rules of Interpretation; Consent Rights. ....................................................... 24

    C.    Computation of Time. ..................................................................................... 26

    D.    Governing Law. .............................................................................................. 26

    E.    Reference to Monetary Figures. ..................................................................... 26

    F.    Controlling Document. ................................................................................... 26

    G.    Reference to the Debtors and the Wind-Down Debtors. ............................... 26

**ARTICLE II. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY TAX CLAIMS, AND DIP CLAIMS** ...............................................................................**26**

    A.    Administrative Claims. ................................................................................... 27

    B.    Payment of Fees and Expenses under DIP Orders. ....................................... 28

    C.    Professional Fee Claims. ................................................................................ 28

    D.    Priority Tax Claims. ....................................................................................... 29

    E.    DIP Claims. .................................................................................................... 30

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ...........................**31**

    A.    Classification of Claims and Interests. ........................................................... 31

    B.    Treatment of Claims and Interests. ................................................................ 32

    C.    Special Provision Governing Unimpaired Claims. ........................................ 36

    D.    Elimination of Vacant Classes. ...................................................................... 36

    E.    Voting Classes, Presumed Acceptance by Non-Voting Classes. ................... 36

    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................. 36

    G.    Controversy Concerning Impairment. ............................................................ 36

    H.    Subordinated Claims. ..................................................................................... 37

    I.    Intercompany Interests. .................................................................................. 37

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ...........................................................**37**

    A.    General Settlement of Claims and Interests. .................................................. 37

    B.    Administrative Consolidation for Voting and Distribution Purposes Only. ... 38

    C.    Plan Administrator Reserve. .......................................................................... 38

    D.    SOTP Transactions; Transition Services. ....................................................... 40

    E.    Post-Effective Date Transactions. .................................................................. 40

    F.    The Wind-Down Debtors and Wind-Down. .................................................. 43

    G.    Post-Effective Date Governance. ................................................................... 44

    H.    Plan Administrator. ........................................................................................ 45

    I.    Claims Oversight Administrator. .................................................................... 48

    J.    Cancellation of Existing Agreements, Interests, and Intercompany Interests. ............ 49

    K.    Preservation of Causes of Action. ................................................................. 49

    L.    Release of Liens. ............................................................................................ 51

    M.    Effectuating Documents; Further Transactions. ............................................ 51

    N.    Section 1146 Exemption. ............................................................................... 51

    O.    Sale Orders. .................................................................................................... 52

    P.    Closing of Chapter 11 Cases. ........................................................................ 52

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .....................**52**

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ................ 52

    B.    Objections Relating to Assumption and Cure Costs. ..................................... 54

    C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ................... 55

    D.    Reservation of Rights. .................................................................................... 55

ii

E.   Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases. ........... 56
F.   Insurance Policies. ...................................................................................................................... 56
G.   Indemnification Obligations .......................................................................................................... 56
H.   Modifications, Amendments, Supplements, Restatements, or Other Agreements. ........................ 57
I.   Employment Agreements. ............................................................................................................. 57
J.   Employee Compensation and Benefits. ......................................................................................... 57
K.   Nonoccurrence of Effective Date. ................................................................................................. 58

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ................................................................ **58**
A.   Timing and Calculation of Amounts to Be Distributed. ................................................................. 58
B.   Distributions on Account of Obligations of Multiple Debtors. ....................................................... 58
C.   Distributions Generally. ................................................................................................................ 59
D.   Delivery of Distributions. ............................................................................................................. 59
E.   Undeliverable Distribution Reserve. .............................................................................................. 60
F.   Setoffs and Recoupment. .............................................................................................................. 62
G.   Claims Paid or Payable by Third Parties. ...................................................................................... 62

**ARTICLE VII.   PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
DISPUTED CLAIMS** ........................................................................................................... **62**
A.   Disputed Claims Process. .............................................................................................................. 62
B.   Allowance of Claims. .................................................................................................................... 63
C.   Claims Administration Responsibilities ......................................................................................... 63
D.   Estimation of Claims. .................................................................................................................... 63
E.   Adjustment to Claims or Interests without Objection. .................................................................... 64
F.   Time to File Objections to Claims. ................................................................................................ 64
G.   Disallowance of Claims or Interests. .............................................................................................. 64
H.   No Distributions Pending Allowance. ............................................................................................ 65
I.   Disputed Claims Reserve. ............................................................................................................. 65
J.   Distributions After Allowance. ...................................................................................................... 66
K.   No Interest. ................................................................................................................................... 66
L.   Amendments to Claims. ................................................................................................................ 66

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** .................... **67**
A.   Settlement, Compromise, and Release of Claims and Interests. ..................................................... 67
B.   Release of Liens. .......................................................................................................................... 68
C.   Debtor Release. ............................................................................................................................ 69
D.   Third-Party Release. ..................................................................................................................... 71
E.   Exculpation. ................................................................................................................................. 72
F.   Injunction. .................................................................................................................................... 74
G.   PBGC Release & Exculpation Carve-Out. ..................................................................................... 75
H.   Preservation of Setoff Rights. ....................................................................................................... 76
I.   Protections Against Discriminatory Treatment. ............................................................................. 76
J.   Document Retention. ..................................................................................................................... 76
K.   Reimbursement or Contribution. ................................................................................................... 77
L.   Term of Injunctions or Stays. ........................................................................................................ 77
M.   Subordination Rights. .................................................................................................................... 77
N.   Integral Part of Plan. ..................................................................................................................... 77

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
OF THE PLAN** .................................................................................................................... **78**
A.   Conditions Precedent to Confirmation. .......................................................................................... 78
B.   Conditions Precedent to the Effective Date. ................................................................................... 78
C.   Waiver of Conditions. ................................................................................................................... 80
D.   Effect of Failure of Conditions. ..................................................................................................... 80
E.   Substantial Consummation. ........................................................................................................... 80

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ............................ **80**
    A.      Modification and Amendments. ...................................................................... 80
    B.      Effect of Confirmation on Modifications. ...................................................... 81
    C.      Revocation or Withdrawal of Plan. ................................................................ 81

**ARTICLE XI. RETENTION OF JURISDICTION** ........................................................... **81**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** .......................................................... **84**
    A.      Immediate Binding Effect. ............................................................................. 84
    B.      Additional Documents. ................................................................................... 84
    C.      Payment of Statutory Fees. ............................................................................ 84
    D.      Statutory Committees and Cessation of Fee and Expense Payment. ............ 84
    E.      Rights of Purchasers under a Sale Order. ...................................................... 85
    F.      Reservation of Rights. .................................................................................... 85
    G.      Successors and Assigns. ................................................................................. 85
    H.      Notices. .......................................................................................................... 85
    I.      Entire Agreement. .......................................................................................... 87
    J.      Exhibits. ......................................................................................................... 87
    K.      Nonseverability of Plan Provisions. .............................................................. 87
    L.      Votes Solicited in Good Faith. ....................................................................... 88
    M.      Waiver or Estoppel. ....................................................................................... 88
    N.      Conflicts. ........................................................................................................ 88

# INTRODUCTION

Del Monte Foods Corporation II Inc. ("**DMFC**") and its affiliated debtors and debtors in possession in the above-captioned Chapter 11 Cases (each a "**Debtor**" and, collectively, the "**Debtors**" or "**Del Monte**") propose this joint plan (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**") for the resolution of the outstanding Claims against, and Interests in, the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined herein shall have the meanings set forth in Article I.A of the Plan.

This Plan is a wind-down plan for the Debtors. Pursuant to separate orders entered by the Bankruptcy Court, the Debtors have been authorized to sell substantially all of their assets to the Purchasers. The Plan provides for the establishment of a Plan Administrator Reserve funded using certain proceeds from the sales, the distribution of certain cash proceeds (including from the Plan Administrator Reserve), and the appointment of a Plan Administrator to make certain distributions hereunder, dispose of the Debtors' remaining assets, and wind down the Debtors' Estates.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor. The Plan further provides for the consolidation of all of the Debtors solely for the purposes of voting, determining which Class or Classes have accepted the Plan, confirming the Plan, and the resulting treatment of all Claims and Interests and distributions to such Allowed Claims.

Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

*A.      Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*Ad Hoc Group*" means the ad hoc group of holders of Super-Senior Term Loans and DIP Term Loan Claims represented by the Ad Hoc Group Advisors.

2.      "*Ad Hoc Group Advisors*" means, collectively, (a) Gibson, Dunn & Crutcher LLP, as co-counsel to the Ad Hoc Group, (b) Sills Cummis & Gross P.C., as co-counsel to the Ad Hoc Group, and (c) Houlihan Lokey Capital, Inc., as financial advisor and investment banker to the Ad Hoc Group.

3.      "*Administrative / Priority Claims*" means, collectively, Administrative Claims and Priority Claims.

4.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; and (d) all DIP Claims; *provided*, *however*, that any Administrative Claim that is an Assumed Liability pursuant to any SOTP Transaction shall be satisfied pursuant to the applicable Purchase Agreement in accordance with Article V.A of this Plan.

5.      "*Administrative Claim Bar Date*" means the deadline for filing requests for payment of Administrative Claims, which:  (a) with respect to Administrative Claims other than Professional Fee Claims , shall be the earlier of (i) 30 days after the Effective Date or (ii) in the event an Executory Contract is rejected following the Effective Date, solely as to Administrative Claims related to such rejected Executory Contract, 30 days after notice to the counterparty to such rejected Executory Contract; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.  For the avoidance of doubt, the Administrative Claim Bar Date does not apply to (a) claims asserted under section 503(b)(9) of the Bankruptcy Code, as such claims were subject to the deadline established by the Bar Date Order, or (b) DIP Claims.

6.      "*Administrative Claim Objection Bar Date*" means the deadline for filing objections to requests for payment of Administrative Claims, which shall be with respect to Administrative Claims other than Professional Fee Claims, shall be 180 days after the Effective Date; *provided* that the Administrative Claim Objection Bar Date may be extended by the Bankruptcy Court at the request of the Wind-Down Debtors or the Plan Administrator, as applicable, after notice and a hearing.

7.      "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity was a debtor in a case under the Bankruptcy Code.

2

8.   "*Agents*" means, collectively, the DIP Agents and the Prepetition Agents, including, in each case, any successors thereto.

9.   "*Allowed*" means with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim or request for payment of an Administrative Claim, as applicable, Filed by the Claims Bar Date or the Administrative Claim Bar Date, as applicable (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed) in accordance with the terms of the Bar Date Order; (b) a Claim that is listed in the Schedules, as may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed on or before the Claims Objection Deadline, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order.  Unless expressly waived by the Plan or otherwise permitted by the Plan, the Allowed amount of a Claim shall be subject to and shall not exceed the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.  Except as to any DIP Claim or Super-Senior Term Loan Claim, and except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable Law.  Except as to any DIP Claim or Super-Senior Term Loan Claim, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed (where such Proof of Claim is required to be Filed), is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  For the avoidance of doubt, except as to any DIP Claim or Super-Senior Term Loan Claim,  (x) a Proof of Claim or request for payment of an Administrative Claim, as applicable, Filed after the Claims Bar Date or the Administrative Claim Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim or agreement in writing by the Debtors and the Holder of such late-Filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be Allowed under applicable non-bankruptcy Law.  "Allow" and "Allowing" shall have correlative meanings.

10.   "*Amended DMFC Schedules*" means the Amended Schedule E/F and the Global Notes thereto Filed at [Docket No. 839].

11.   "*Assigned Claim*" means any Claim that has been properly assigned or transferred to an assignee pursuant to Bankruptcy Rule 3001(e).

12.   "*Assumed Contracts*" means, collectively, all Executory Contracts and Unexpired Leases that are assumed by the Debtors or the Wind-Down Debtors, as applicable, including

through a prior Order of the Bankruptcy Court, and/or to the Schedule of Assumed Executory Contracts and Unexpired Leases; *provided, however*, that Assumed Contracts shall exclude all Executory Contracts and Unexpired Leases that have been assumed and assigned to the Purchasers and/or any non-Debtor Entities.

13.     "*Assumed Liability*" means, with respect to any Purchaser, the Assumed Liabilities (as defined in the applicable Purchase Agreement) assumed by such Purchaser pursuant to the applicable SOTP Transaction Documents and Sale Order.

14.     "*August 2024 Transactions*" means those certain August 2024 Transactions, including any actions or inactions related to, or in connection with, such transactions, including the resulting consolidation of the assets and liabilities of the Debtors, as defined, described and incorporated herein by reference in the *Declaration of Jonathan Goulding, as Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 19].

15.     "*Avoidance Actions*" means any and all avoidance actions or remedies that may be brought by or on behalf of the Debtors or their Estates or by any other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy Law, including, without limitation, those arising under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common Law, including fraudulent transfer Laws.

16.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

17.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the District of New Jersey.

18.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

19.     "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 562].

20.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

21.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

22. "*Cash Collateral*" has the meaning set forth in section 363(a) of the Bankruptcy Code.

23. "*Cause of Action*" or "*Causes of Action*" means any Claims, interests, damages, remedies, causes of action, demands, rights, actions, controversies, proceedings, agreements, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, asserted or assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, whenever arising before, on, or after the Petition Date, as applicable, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by Law or in equity; (b) the right to object to or otherwise contest Claims or Equity Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Actions.

24. "*Chancery Court Settlement*" means the consensual settlement of, among other things, the claims asserted in the Chancery Court Complaint, as defined and further discussed in the *Declaration of Jonathan Goulding, as Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 19].

25. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and (b) when used with reference to all the Debtors, the procedurally consolidated cases Filed for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

26. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

27. "*Claims and Noticing Agent*" means Stretto, Inc., the noticing, claims, and administrative agent retained by the Debtors in the Chapter 11 Cases by orders of the Bankruptcy Court [Docket No. 71, 421].

28. "*Claims Bar Date*" means the date established pursuant to the Bar Date Order, by which Proofs of Claim must be Filed with respect to Claims, other than Administrative Claims and other Claims set forth in the Bar Date Order, including Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim. For the avoidance of doubt, (a) Professional Fee Claims shall not be subject to the Claims Bar Date and shall be Filed and treated in accordance with Article II.C hereof, and (b) the Claims Bar Date shall not apply to Claims for Cure Costs, if any, which shall be administered in accordance with Article V hereof.

29. "*Claims Objection Deadline*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court at the request of the Wind-Down Debtors or the Plan Administrator, as applicable, for objecting to Claims.

30. "*Claims Oversight Administrator*" means the Person appointed by the Debtors, in consultation with the Committee and the Ad Hoc Group, to consult with the Plan Administrator regarding the claims administration process consistent with the Settlement Order and as and to the extent set forth in Article IV.H hereof.

31. "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

32. "*Class*" means a category of Claims or Interests under section 1122(a) of the Bankruptcy Code.

33. "*CM/ECF*" means the Bankruptcy Court's case management and electronic case filing system.

34. "*Combined Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, pursuant to sections 1128 and 1129 of the Bankruptcy Code, and approval of the Disclosure Statement on a final basis, as such hearing may be continued from time to time.

35. "*Committee*" means that certain Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code [Docket No. 168].

36. "*Committee Hourly Fee Cap*" has the meaning set forth in the Settlement approved by the Settlement Order, which amount may be modified with the consent of all Settlement Parties in accordance with the Sale Orders and the Settlement Order.

37. "*Committee Professionals*" means, collectively, (a) Morrison & Foerster LLP, as co-counsel, (b) Kelley Drye & Warren, LLP, as co-counsel, (c) Province, LLC, as financial advisor, and (d) Miller Buckfire & Co., LLC, a business division of Stifel, Nicolaus & Co., as investment banker.

38. "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases, subject to all conditions specified in Article IX hereof.

39. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

40. "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, supplemented, or otherwise modified from time to time.

41. "*Consenting Lenders*" means the entities identified on the signature pages to the RSA, or that have executed a Joinder or Transfer Agreement thereto (each as defined in the RSA).

42. "*Consummation*" means the occurrence of the Effective Date.

43. "*Cure Costs*" means all amounts, including an amount of $0.00, required to cure any monetary defaults and other non-monetary defaults to the extent required by section 365 of the Bankruptcy Code, under any Executory Contract or Unexpired Lease (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors or the Wind-Down Debtors, or assumed and assigned by the Debtors or the Wind-Down Debtors, in each case, pursuant to any Sale Order or the Confirmation Order pursuant to sections 365 and/or 1123 of the Bankruptcy Code, or in connection with an Other Excluded Asset Disposition or Excluded Real Estate Disposition.

44. "*D&O Liability Insurance Policies*" means all directors and officers liability Insurance Policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors, any of their predecessors, and/or any of their current or former subsidiaries for current or former directors', managers', and officers' liability and all agreements, documents, or instruments relating thereto.

45. "*Debtor Director/Officer*" means all current and former directors and officers of the Debtors and the Debtors' non-Debtor subsidiaries.

46. "*Debtor Release*" means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article VIII.C of the Plan.

47. "*Debtors*" means, collectively: Del Monte Foods Corporation II Inc.; Del Monte Foods Holding Limited; Del Monte Foods Holdings II Inc.; Del Monte Foods Holdings, Inc.; Del Monte Foods, Inc.; Sager Creek Foods, Inc.; S & W Fine Foods, Inc.; College Inn Foods; Hi Continental Corporation; Joyba, Inc.; Kitchen Basics, Inc.; Green Thumb Foods; Del Monte Ventures, LLC; DM Intermediate Corporation; DM Intermediate II Corporation; Contadina Foods, Inc.; Del Monte Chilled Fruit Snacks, LLC; and Del Monte Mexico Holdings LLC,[2] the debtors and debtors in possession in the Chapter 11 Cases.

48. "*Deferred Decision Contract*" means those Executory Contracts set forth on Deferred Decision Schedule, which schedule shall be included in the Plan Supplement, that the Debtors have deferred their decision to assume or reject such Executory Contract until the Deferred Decision Deadline in consultation with the Committee.

49. "*Deferred Decision Deadline*" means (a) with respect to the Deferred Decision Contracts, the date that is 90 days after the Effective Date, *provided* that the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, may extend such date in successive 90-day increments for up to one year after the Effective Date, *provided, further*, that such extensions shall be noticed on the Bankruptcy Court docket; and (b) with respect to the Deferred Decision Leases, July 31, 2026, in accordance with the *Order, Pursuant to Section 365(d)(4) of the Bankruptcy Code, (I) Consensually Extending the Time Within Which the Debtors Must Assume*

---

[2]   The equity interests of Debtor entities Contadina Foods, Inc., Del Monte Chilled Fruit Snacks, LLC, and Del Monte Mexico Holdings LLC are "Purchased Entities" under the Multi-Business APA and will transfer to the Multi-Business Buyer upon the closing of the SOTP Transactions. To facilitate this process, the Debtors will seek dismissal of the Chapter 11 Cases of Contadina Foods, Inc., Del Monte Chilled Fruit Snacks, LLC, and Del Monte Mexico Holdings LLC, effective as of the closing of the SOTP Transactions.

*or Reject Unexpired Leases of Non-Residential Real Property, (II) Authorizing the Debtors to Provide Certain Consideration to Landlords in Exchange for Consenting to Such Extension, and (III) Granting Related Relief* [Docket No. 1206], *provided that*, the Deferred Decision Deadline for any Deferred Decision Lease may be further extended to a date agreed upon in writing (with email being sufficient) by the Debtors and the counterparty to the applicable Deferred Decision Lease.

50.     "*Deferred Decision Lease*" means those Unexpired Leases set forth on the Deferred Decision Schedule, which schedule shall be included in the Plan Supplement, that the Debtors, with the consent of the applicable landlords, have deferred their decision to assume or reject such Unexpired Lease until the applicable Deferred Decision Deadline.

51.     "*Deferred Decision Rejection Notice*" means the notice to be sent to each non-Debtor counterparty to any Deferred Decision Contract or Deferred Decision Lease that is removed from the Deferred Decision Schedule and rejected effective as of the date set forth in the Deferred Decision Rejection Notice and on or prior to the Deferred Decision Deadline.

52.     "*Deferred Decision Schedule*" means the list of Deferred Decision Contracts and Deferred Decision Leases that are subject to the applicable Deferred Decision Deadline.

53.     "*Definitive Documents*" means, collectively, (a) the Plan, (b) the Disclosure Statement and the Solicitation Materials, (c) the Confirmation Order, (d) any Sale Order, (e) the Disclosure Statement Order, (f) the Plan Supplement, (g) the SOTP Transaction Documents, (h) such other agreements and documentation contemplated in, or necessary or advisable to, consummate and implement the transactions contemplated by the Plan; and (i) any amendments or modifications to each of the Definitive Documents in clauses (a) through (h).

54.     "*DIP ABL Agent*" has the meaning set forth in the DIP Orders.

55.     "*DIP ABL Claim*" has the meaning ascribed to the term "DIP ABL Superpriority Claim" in the DIP Orders.

56.     "*DIP ABL Credit Agreement*" has the meaning set forth in the DIP Orders.

57.     "*DIP ABL Documents*" has the meaning set forth in the DIP Orders.

58.     "*DIP ABL Facility*" has the meaning set forth in the DIP Orders.

59.     "*DIP ABL Lenders*" has the meaning set forth in the DIP Orders.

60.     "*DIP Agents*" has the meaning set forth in the DIP Orders.

61.     "*DIP Claims*" means, collectively, the DIP ABL Claims and the DIP Term Loan Claims.

62.     "*DIP Credit Agreements*" has the meaning set forth in the DIP Orders.

63.     "*DIP Documents*" has the meaning set forth in the DIP Orders.

64.     "*DIP Lenders*" has the meaning set forth in the DIP Orders.

65.     "*DIP Orders*" means, collectively, (a) *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing, and (VI) Granting Related Relief [Docket No. 59]*, and (b) *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Granting Related Relief* [Docket No. 359].

66.     "*DIP Secured Parties*" has the meaning set forth in the DIP Orders.

67.     "*DIP Term Loan Agent*" has the meaning set forth in the DIP Orders.

68.     "*DIP Term Loan Claim*" has the meaning ascribed to the term "DIP Term Loan Superpriority Claim" in the DIP Orders.

69.     "*DIP Term Loan Claim Waiver*" means the waiver of $70,000,000 in DIP Term Loan Claims in accordance with the Settlement Order and subject to Consummation.

70.     "*DIP Term Loan Credit Agreement*" has the meaning set forth in the DIP Orders.

71.     "*DIP Term Loan Documents*" has the meaning set forth in the DIP Orders.

72.     "*DIP Term Loan Facility*" has the meaning set forth in the DIP Orders.

73.     "*DIP Term Loan Indemnity*" means the go-forward indemnity for the benefit of the DIP Lenders and their Affiliates and Related Parties due and payable under each of (a) the DIP Term Loan Credit Agreement and (b) the Super-Senior Credit Agreement, which shall be payable from and have sole recourse to the proceeds of the Other Excluded Assets and the Excluded Real Estate.

74.     "*DIP Term Loan Lenders*" has the meaning set forth in the DIP Orders.

75.     "*Director Fee Claims*" means all unpaid fees and expenses as of the Effective Date due to the Debtors' directors and officers pursuant to their respective director agreements with the applicable Debtor Entity, excluding any obligations incurred under any Indemnification Provisions.  On the Effective Date, the Director Fee Claims shall be deemed Allowed Administrative Claims against the Debtors.

76.     "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is scheduled as zero or as contingent, Disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable Law or the Plan; (c) is not scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the

9

Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable Law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; (e) has been withdrawn by the Holder thereof; (f) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (g) is evidenced by a proof of Claim or a proof of Interest which has been Filed, or which has been deemed to be Filed under applicable Law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly Filed; (h) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; and (i) where the holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code. In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

77.    "*Disbursing Agent*" means, as applicable, the Debtors, the Wind-Down Debtors, the Plan Administrator, or any Entity designated or retained by the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, with the consent of the Ad Hoc Group (such consent not to be unreasonably withheld or conditioned) and in consultation with the Committee, and without the need for any further order of the Bankruptcy Court, to make or to facilitate distributions in accordance with the Plan.  For the avoidance of doubt, the Plan Administrator may serve as the Disbursing Agent.

78.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, as may be amended, supplemented, or otherwise modified from time to time.

79.    "*Disclosure Statement Order*" means the order (and all exhibits thereto), entered by the Bankruptcy Court, conditionally approving the Disclosure Statement and the Solicitation Materials, and allowing solicitation of this Plan to commence (each as may be modified, supplemented, or amended).

80.    "*Disputed*" means, with respect to any Claim or Interest (or portion thereof), any Claim or Interest (or portion thereof) that (a) is not Allowed, (b) is not Disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

81.    "*Disputed Claims Reserve*" means any segregated account established pursuant to and governed in accordance with Article VII.I of the Plan.

82.    "*Dissolution Date*" has the meaning set forth in Article IV.F.3 of the Plan.

10

83. "*Distributable Proceeds*" means all Cash of the Debtors or the Wind-Down Debtors following closing of the SOTP Transactions, including all proceeds of Other Excluded Asset Dispositions (if any), net of (a) the repayment of the DIP ABL Facility Claims as set forth in the Sale Orders, and (b) the funding of the Plan Administrator Reserve with the Wind-Down Reserve Amount, the Professional Fee Escrow Account, and the GUC Recovery Contribution.  For the avoidance of doubt, Distributable Proceeds shall not include the proceeds of Excluded Real Estate Asset Dispositions, the funding of the Professional Fee Escrow Account, or the GUC Recovery Reserve.

84. "*Distribution Date*" means a date or dates, as determined by the Disbursing Agent in accordance with the terms of this Plan, on which the Disbursing Agent makes a distribution to Holders of Allowed Claims.

85. "*Distribution Record Date*" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Effective Date or such other date as designated in a Final Order of the Bankruptcy Court.

86. "*DMFC*" means Debtor Del Monte Foods Corporation II Inc.

87. "*DMFI*" means Debtor Del Monte Foods, Inc.

88. "*DMFI 2022 Term Loan*" means the "2022 Term Loan" as defined in the *Declaration of Jonathan Goulding, as Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 19].

89. "*DMFHL*" means Debtor Del Monte Foods Holdings Limited.

90. "*DMPL*" means Del Monte Pacific Limited and its non-Debtor Affiliates that are not subsidiaries of the Debtors.

91. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX.B of the Plan have been satisfied or waived in accordance with Article IX.C of the Plan.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

92. "*Entity*" or "*Entities*" means any entity, as defined in section 101(15) of the Bankruptcy Code.

93. "*Equity Security*" has the meaning set forth in section 101(16) of the Bankruptcy Code.

94. "*ERISA*" means the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1301–1461, and the regulations promulgated thereunder.

95. "*Estate*" means, as to each Debtor, the estate created for the Debtor in its respective Chapter 11 Case pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

96.     "*Excluded D&O Claim*" means any Claim held by a Debtor Director/Officer, other than Permitted Insider Claims or Director Fee Claims, including all Claims for indemnification (or rejection of any indemnity agreement) or contribution, which such Excluded D&O Claims shall not recover from the GUC Cash Recovery; provided, for the avoidance of doubt, that nothing herein shall affect the rights of any Debtors or Debtor Director/Officer under any applicable Insurance Policies.

97.     "*Excluded Liabilities*" shall have the meaning set forth in each of the Purchase Agreements.

98.     "*Excluded Real Estate*" means the Debtors' fee-owned real property interests (and, as applicable, related fixtures and appurtenances) and/or the proceeds of leases or subleases assumed by the Debtors pursuant to that certain *Order Authorizing the Debtors to Assume Real Property Lease and Sublease* [Docket No. 1207], as set forth in the Schedule of Excluded Real Estate, that are not Purchased Assets, which disposition shall be consistent with the Settlement.

99.     "*Excluded Real Estate Designation Notice*" shall have the meaning ascribed to it in Article IV.E.

100.    "*Excluded Real Estate Designation Rights*" shall have the meaning ascribed to it in Article IV.E.

101.    "*Excluded Real Estate Disposition*" shall have the meaning ascribed to it in Article IV.E.

102.    "*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such:  (a) each of the Debtors; (b) the Wind-Down Debtors and the Plan Administrator; (c) the Committee and each of its respective members; (d) the Claims Oversight Administrator; and (e) each Related Party of each Entity in clauses (a) through (d).

103.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code, including pursuant to the Sale Orders.

104.    "*Existing Equity Interests*" means, collectively, the shares (or any Class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor and options, warrants, rights, or other Securities or agreements to acquire or subscribe for, or which are convertible into or exercisable for the shares (or any Class thereof), common stock, preferred stock, limited liability company interests, or other equity, ownership, or profit interests of any Debtors (in each case, whether or not arising under or in connection with any employment agreement).

105.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

106.    "*File*" or "*Filed*" or "*Filing*" means file, filed, or filing with the Bankruptcy Court or any authorized designee thereof in the Chapter 11 Cases.

107.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, is not subject to any pending stay and as to which the time to appeal, move for reargument, reconsideration, or rehearing, or seek certiorari has expired and no appeal, motion for reargument, reconsideration, or rehearing or petition for certiorari has been timely taken or Filed, or as to which any appeal that has been taken, motion for reargument, reconsideration, or rehearing that has been granted or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be Filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

108.    "*General Unsecured Claim*" means any Claim that is not (a) a Secured Claim, (b) an Administrative Claim (including, for the avoidance of doubt, a Professional Fee Claim), (c) an Other Secured Claim, (d) a Priority Claim, (e) a DIP Claim, (f) a Super-Senior Term Loan Claim, (g) a Parent Claim, (h) an Excluded D&O Claim, (i) an Intercompany Claim, or (j) a Section 510 Claim.  For the avoidance of doubt, a Permitted Insider Claim constitutes a General Unsecured Claim.

109.    "*GUC Recovery Contribution*" means Cash proceeds from the sale of the DIP Lenders' collateral in the SOTP Transactions in the amount of $8,000,000 to fund the GUC Recovery Reserve and which Cash would have otherwise been paid to the DIP Term Loan Lenders at the closing of the SOTP Transactions and/or distributed to the DIP Term Loan Lenders from the Distributable Proceeds.

110.    "*GUC Cash Recovery*" means the GUC Recovery Contribution, *plus* any unused portion of the Committee Hourly Fee Cap (if any), net of any Cash used to fund the fees and expenses of the Claims Oversight Administrator.

111.    "*GUC Recovery Reserve*" means an interest-bearing account to be funded by the Debtors using the GUC Recovery Contribution from the Plan Administrator Reserve on or before the Effective Date in an amount equal to the GUC Recovery Contribution, to be used to fund (a) distributions on account of Allowed General Unsecured Claims and (b) the costs and expenses of the Claims Oversight Administrator.  For the avoidance of doubt, (i) none of Allowed Super-Senior Term Loan Claims or Allowed Other General Unsecured Claims shall be entitled to any recovery from the GUC Recovery Reserve, and (ii) any Secured Claims, including deficiency claims and indemnity obligations in favor of any secured lender (including the DIP Term Loan Indemnity), arising under the DIP Documents, Super-Senior Documents, or otherwise, shall not participate in any recovery from the GUC Recovery Reserve, which GUC Cash Recovery is solely for purposes of funding distributions to Class 4 General Unsecured Claims.

112.    "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

113.    "*Holder*" means any holder of an Allowed Claim or Interest.

114. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

115. "*Indemnification Obligations*" means each of the Debtors' indemnification provisions currently in place, whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, indemnification agreements, employment contracts, or trust agreements, for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, other Professionals, and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates. For the avoidance of doubt, Indemnification Obligations shall not include any obligations to indemnify any Entities not identified in the foregoing sentence.

116. "*Insurance Policies*" means all insurance policies that have been issued at any time to or provide coverage to any of the Debtors and all agreements, documents or instruments relating thereto, including, without limitation, all D&O Liability Insurance Policies, and any of the Debtors' rights under any third parties' insurance policies.

117. "*Intercompany Claim*" means any Claim held by a Debtor or a non-Debtor subsidiary of a Debtor against a Debtor. For the avoidance of doubt, (a) a Parent Claim, (b) an Excluded D&O Claim, or (c) a Permitted Insider Claim, in each case, does not constitute an Intercompany Claim.

118. "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor or non-Debtor subsidiary or Affiliate.

119. "*Intercreditor Adversary Proceeding*" means the adversary proceeding captioned *Certain Members of the Ad Hoc Group of Minority Secured Lenders v. Members of the Ad Hoc Term Lender Group*, Adv. Case No. 26-01018 (Bankr. D.N.J. 2026).

120. "*Interest*" means any Equity Security in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable Securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

121. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

122. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

123. "*Lead Wind-Down Debtor*" means, post-Effective Date, Del Monte Foods Corporation II Inc.

124. "*Legacy Pension Plan*" means the Del Monte Foods Corporation II Inc. Retirement Plan, a single-employer defined benefit pension plan insured by the PBGC and covered by Title IV of ERISA, 29 U.S.C. §§ 1301–1461.

125. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

126. "*Mediation*" means the mediation between the Mediation Parties in the Chapter 11 Cases authorized by the Bankruptcy Court pursuant to the Mediation Order.

127. "*Mediation Order*" means the *Stipulation and Agreed Order (I) Appointing the Hon. Christine M. Gravelle, Chief Judge, as Mediator for the Mediation Topics, (II) Referring Such Matters to Mediation, (III) Directing the Mediation Parties to Participate in the Mediation, and (IV) Granting Related Relief* [Docket No. 900].

128. "*Mediation Parties*" means, collectively, the Debtors, the Ad Hoc Group, DMPL, and the Committee subject to the Mediation conducted pursuant to the Mediation Order.

129. "*New Governance Documents*" means, with respect to any Wind-Down Debtor that remains in existence following the Effective Date, the organizational, formation and governance documents applicable to such Wind-Down Debtor, including, as applicable, its certificate of incorporation, certificate of formation, bylaws, limited liability company agreement, shareholder agreement (if any), operating agreement, memorandum and articles of association, or other similar documents.

130. "*Other Excluded Asset Disposition*" shall have the meaning ascribed to it in Article IV.E.

131. "*Other Excluded Assets*" means the assets of the Debtors, if any, that are not Purchased Assets, other than (a) the Excluded Real Estate and (b) any Causes of Action released under the Settlement Order and pursuant to this Plan.

132. "*Other General Unsecured Claim*" means Parent Claims and Excluded D&O Claims.

133. "*Other Priority Claim*" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases; *provided* that any Other Priority Claim that is an Assumed Liability under a Purchase Agreement shall be satisfied solely under the applicable Purchase Agreement and shall not be an obligation of the Debtors or the Wind-Down Debtors.

134. "*Other Secured Claim*" means any Secured Claim, including Secured Tax Claims, but excluding DIP Claims and a Super-Senior Term Loan Claims; *provided* that any Other Secured Claim that is an Assumed Liability under a Purchase Agreement shall be satisfied solely under the applicable Purchase Agreement and shall not be an obligation of the Debtors or the Wind-Down Debtors.

135. "*Parent Claims*" means any proofs of Claim asserted by DMPL and its Related Parties against the Debtors' Estates (including duplicate proofs of Claim Filed against multiple Debtors) other than Permitted Insider Claims.

136. "*PBGC*" means the Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation and agency of the United States created by ERISA.

137. "*Permitted Insider Claims*" means the General Unsecured Claims held by any Debtor Director/Officer arising under (a) executive deferred compensation plans, (b) supplemental executive retirement plans, (c) severance or separation arrangements, (d) any Court-approved key employee retention plan or key employee incentive plan, including the *Order (I) Approving Debtors' Key Employee Incentive Plan and Key Employee Retention Plan, and (II) Granting Related Relief* [Docket No. 490], (e) the rejection of employment agreements with the Debtors, and (f) any other prepetition welfare, benefit, or compensation programs.

138. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

139. "*Petition Date*" means July 1, 2025, the date on which the Debtors commenced the Chapter 11 Cases.

140. "*Plan*" has the meaning set forth in the Introduction.

141. "*Plan Administrator*" means an individual selected by the Debtors and the Ad Hoc Group, in consultation with the Committee, and disclosed in the Plan Supplement, or any successor(s) thereto, to be the representative of the Wind-Down Debtors on and after the Effective Date, and who shall have the rights, powers, duties and responsibilities set forth in this Plan and in the Plan Administrator Agreement.

142. "*Plan Administrator Agreement*" means the agreement to be entered into by and among the Plan Administrator and the Wind-Down Debtors, which shall be included in the Plan Supplement and shall be in form and substance reasonably acceptable to the Ad Hoc Group.

143. "*Plan Administrator Reserve*" means a segregated account established in accordance with Article IV.C, to be to be administered by the Plan Administrator in accordance with this Plan, funded with Cash on hand and the proceeds of the SOTP Transactions. The Plan Administrator Reserve shall include the Wind-Down Account, the Professional Fee Escrow Account, and the GUC Recovery Reserve.

144. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Debtors, to the extent reasonably practicable, no later than three (3) days before the voting deadline provided in the Solicitation Materials or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, including the following, as applicable: (a) the Schedule of Assumed Executory Contracts and Unexpired Leases (if any); (b) the Deferred Decision Schedule (if any); (c) the Schedule of Excluded Real Property; (d) the Schedule of Retained Causes of Action; (e) the identity of the initial Plan Administrator and the Plan Administrator Agreement; (f) the identity of the initial Claims Oversight Administrator; (g) the identity of the initial Post-Effective Date Director and other information specified in section 1129(a)(5) of the Bankruptcy Code; (h) the Wind-Down Agreement and the Wind-Down Budget; (i) the Wind-Down Transactions Memorandum; (j) the New Governance Documents of the Lead Wind-Down Debtor, DMFI, and

16

DMFHL; (k) the Transition Services Agreement; and (l) any other necessary documentation related to the Plan.  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date, subject to the terms of the Purchase Agreements, the Settlement, and the Sale Orders.

145.    "*Post-Effective Date Director*" means the member of the board of directors of the Lead Wind-Down Debtor that shall be formed on the Effective Date in accordance with Article IV.F hereof.  The identity of the initial Post-Effective Date Director shall be disclosed as part of the Plan Supplement.

146.    "*Prepetition Agents*" has the meaning set forth in the DIP Orders.

147.    "*Prepetition ABL Agent*" has the meaning set forth in the DIP Orders.

148.    "*Prepetition ABL Credit Agreement*" has the meaning set forth in the DIP Orders.

149.    "*Prepetition ABL Lenders*" has the meaning set forth in the DIP Orders.

150.    "*Prepetition ABL Loan Documents*" has the meaning set forth in the DIP Orders.

151.    "*Prepetition ABL Secured Parties*" has the meaning set forth in the DIP Orders.

152.    "*Prepetition Intercreditor Agreement*" has the meaning set forth in the DIP Orders.

153.    "*Prepetition Secured Parties*" has the meaning set forth in the DIP Orders.

154.    "*Priority Claims*" means, collectively, the Priority Tax Claims and the Other Priority Claims.

155.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

156.    "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

157.    "*Professional*" means a Person or Entity:  (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 328, 329, 330, 331, 503(b) or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

158.    "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation under sections 328, 330, 331, or 503(b)(2) of the Bankruptcy Code, as applicable for services rendered or reimbursement of expenses incurred (including transaction and success fees), on or after the Petition Date and through and including

the Confirmation Date that the Bankruptcy Court has not denied by a Final Order. To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

159.    "*Professional Fee Escrow Account*" means an interest-bearing escrow account to be funded by the Debtors with Cash from the Plan Administrator Reserve on or before the Effective Date in an amount equal to the Professional Fee Escrow Amount.

160.    "*Professional Fee Escrow Amount*" the aggregate amount of Professional Fee Claims incurred or estimated in good faith to be incurred in connection with the Chapter 11 Cases prior to and as of the Confirmation Date, in each case, subject to the agreed caps, including the Committee Hourly Fee Cap, set forth in the Settlement as approved by the Settlement Order, which estimates the Professionals shall deliver to the Debtors as set forth in Article II.C of the Plan.

161.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the applicable bar date.

162.    "*Purchase Agreement(s)*" means, collectively, (a) the Asset Purchase Agreement, dated as of February 6, 2026, by and among Del Monte Fresh Produce Company, a Delaware corporation (the "*Multi-Business Buyer*"), Fresh Del Monte Produce Inc., a company incorporated in the Cayman Islands, for the limited purposes set forth in Section 7.16 and Section 11.18 therein, and the Debtors (the "*Multi-Business APA*"), (b) the Asset Purchase Agreement, dated as of February 6, 2026, by and among Pacific Coast Producers, a California corporation (the "*Fruit Buyer*"), and the Debtors (the "*Fruit APA*"), and (c) the Asset Purchase Agreement, dated as of January 15, 2026, by and among, B&G Foods North America, Inc., a Delaware corporation (the "*Broth & Stock Buyer*") the Debtors and, solely for the purposes of Section 7.15(a)(i) and Section 11.01 therein, B&G Foods, Inc., a Delaware corporation, as amended by that certain First Amendment to Asset Purchase Agreement, dated as of January 28, 2026 (the "*Broth & Stock APA*"), in each case, a copy of which is attached as Exhibit A to the corresponding Sale Order and as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms thereof and the applicable Sale Order.

163.    "*Purchasers*" means, collectively, (a) the Multi-Business Buyer, (b) the Fruit Buyer, and (c) the Broth & Stock Buyer, under the Multi-Business APA, the Fruit APA, and the Broth & Stock APA, respectively.

164.    "*Purchased Assets*" means, with respect to any Purchaser, the Purchased Assets (as defined in the applicable Purchase Agreement) sold to such Purchaser pursuant to the applicable SOTP Transaction Documents and Sale Order.

165.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

166.    "*Rejection Procedures Order*" means the *Order (I) Approving Procedures for Future Rejection of Executory Contracts and (II) Granting Related Relief* [Docket No. 588].

167.    "*Related Party*" means each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, members of any governing body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

168.    "*Released Party*" means, collectively, in each case in its capacity as such:  (a) the Debtors; (b) the Wind-Down Debtors; (c) the Releasing Parties (except with respect to any Retained Causes of Action); (d) the Prepetition Agents; (e) the Prepetition ABL Secured Parties; (f) the DIP Secured Parties; (g) each of the Consenting Lenders (as defined in the RSA, including the Ad Hoc Group and each of its members); (h) the Committee and each member of the Committee (solely in its capacity as such); (i) DMPL; (j) the Plan Administrator; (k) Black Diamond Capital Management LLC; (l) Holders of the DMFI 2022 Term Loan; (m) each current and former Affiliate of each Entity in clauses (a) through (l); and (n) with respect to the foregoing clauses (a) through (l), each such Entity's Related Parties, each in their capacity as such; *provided* that "Released Party" shall not include the Minority Lender Ad Hoc Group or the members of such group as identified in the *Verified Statement of the Ad Hoc Group of Minority Secured Lenders, Pursuant to Bankruptcy Rule 2019* [Docket No. 295].

169.    "*Releasing Party*" means, collectively, in each case solely in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the Prepetition Agents; (d) the Prepetition ABL Secured Parties, (e) the DIP Secured Parties; (f) each of the Consenting Lenders (as defined in the RSA, including the Ad Hoc Group and each of its members); (g) the Committee and each member of the Committee (solely in its capacity as such); (h) DMPL; (i) the Plan Administrator; (j) Black Diamond Capital Management LLC; (k) all Holders of Claims that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (l) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (m) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (n) each current and former Affiliate of each Entity in clauses (a) through (j); and (o) each Related Party of each Entity in clauses (a) through (j).

170.    "*Retained Causes of Action*" means Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, the Purchase Agreements, the Sale Orders, or the Settlement, as applicable, including, for the avoidance of doubt, Retained Defensive Actions.  For the avoidance of doubt, the Retained Causes of Action shall not include any Causes of Action against the Settlement Released Parties except as explicitly set forth herein.

171.    "*Retained Defensive Actions*" means any and all Avoidance Actions and other estate Causes of Action retained by the Debtors or Wind-Down Debtors, as applicable, solely for defensive purposes as part of the Claims reconciliation process, including in response to, in connection with, or as part of, without limitation, the (a) the objection to, or request for disallowance or estimation of, any Claim, (b) any defenses, counterclaims, setoff, or recoupment

asserted in response to any Claim or cause of action asserted against a Debtor or its Estate, (c) the subordination, recharacterization, or avoidance of any Claim asserted against a Debtor or its estate, or (d) any proceeding to determine the validity, extent, or priority of any Claim, Lien, or other interest in property.

172.    "*RSA*" means that certain restructuring support agreement, dated as of July 1, 2025, by and among the Debtors and the Consenting Lenders, including all exhibits thereto.

173.    "*Sale Orders*" means, collectively, the (a) *Order (I) Approving the Asset Purchase Agreement with Del Monte Fresh Produce Company, (II) Authorizing the Sale of Assets, (III) Authorizing the Assumption and Assignment of Contracts and Leases, and (IV) Granting Related Relief* [Docket No. 1208]; (b) *Order (I) Approving the Asset Purchase Agreement with B&G Foods North America, Inc., (II) Authorizing the Sale of Assets, (III) Authorizing the Assumption and Assignment of Contracts and Leases, and (IV) Granting Related Relief* [Docket No. 1209]; and (c) *Order (I) Approving the Pacific Coast Producers Asset Purchase Agreement, (II) Authorizing the Sale of Assets, (III) Authorizing the Assumption and Assignment of Contracts and Leases, and (IV) Granting Related Relief* [Docket No. 1210].

174.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means that certain schedule of certain Executory Contracts and Unexpired Leases to be assumed by the Debtors or the Wind-Down Debtors, as applicable, pursuant to Article V of this Plan.  For the avoidance of doubt, the Schedule of Assumed Executory Contracts and Unexpired Leases shall not include any Executory Contracts and Unexpired Leases assumed and assigned to any of the Purchasers.

175.    "*Schedule of Excluded Real Estate*" means that certain schedule of Excluded Real Estate to be included in the Plan Supplement.

176.    "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time, in consultation with the Committee.

177.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, including any amendments or supplements thereto, including the Amended DMFC Schedules.

178.    "*Section 510(b) Claim*" means any Claim arising from:  (a) rescission of a purchase or sale of a Security of the Debtors or an Affiliate of the Debtors; (b) purchase or sale of such a Security; or (c) reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

179.    "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable Law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff,

20

as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a Secured Claim.

180. "*Secured Claim*" means a Claim secured by a Lien on property in which any of the Debtors has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable Law or by reason of a Bankruptcy Court order, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

181. "*Secured Tax Claim*" means any Secured Claim that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties, and is not an Assumed Liability under a Purchase Agreement.

182. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

183. "*Security*" means any security, as defined in section 2(a)(1) of the Securities Act.

184. "*Settlement*" means, collectively, the settlement, including the terms and conditions thereof, agreed among the Mediation Parties and approved by the Bankruptcy Court pursuant to the Settlement Order, and as set forth in Article IV of the Plan.

185. "*Settlement Order*" means the *Order (A) Approving the Settlement Reached Among the Mediation Parties Pursuant to Bankruptcy Rule 9019 and (B) Granting Related Relief* [Docket No. 1211].

186. "*Settlement Parties*" means each of the (i) the Debtors, (ii) the Ad Hoc Group, (iii) DMPL, and (iv) the Committee prior to the dissolution thereof pursuant to Article XII.D or the Claims Oversight Administrator following the dissolution of the Committee pursuant to Article XII.D.

187. "*Settlement Release*" means the release given on behalf of the Debtors and their Estates to the Settlement Released Parties as granted pursuant to the Settlement Order and as set forth in Article VIII and implemented by this Plan.

188. "*Settlement Released Parties*" means, collectively, in each case in its capacity as such: (a) each of the Consenting Lenders (as defined in the RSA, including the Ad Hoc Group and each of its members solely in their capacity as such), (b) the Prepetition ABL Secured Parties, (c) DMPL, (d) Black Diamond Capital Management LLC, (e) the Debtors, (f) the Committee and each member of the Committee (solely in its capacity as such), and (g) the Related Parties of each of the foregoing, in each case, solely in their capacity as such.

189. "*Settlement Releasing Parties*" means, collectively, in each case in its capacity as such: (a) each of the Consenting Lenders (as defined in the RSA, including the Ad Hoc Group and each of its members solely in their capacity as such), (b) the Prepetition ABL Secured Parties, (c) DMPL, (d) the Debtors, (e) the Committee and each member of the Committee (solely in its

21

capacity as such), and (f) the Related Parties of each of the foregoing solely in their capacity as such.

190.    "*SOTP Transactions*" means the sale transactions for substantially all of the Debtors' assets, other than Other Excluded Assets and the Excluded Real Estate, to be consummated pursuant to the SOTP Transaction Documents and Sale Orders, pursuant to which each of the Purchasers purchased the corresponding Purchased Assets and assumed the corresponding Assumed Liabilities from the Debtors.

191.    "*SOTP Transaction Documents*" means the definitive documentation for each of the SOTP Transactions, including but not limited to the Purchase Agreements, the Transition Services Agreement, the other Transaction Documents (as defined in each Purchase Agreement) and any other agreements, instruments and documents contemplated by the SOTP Transactions.

192.    "*Substantial Consummation*" shall have the meaning set forth in Article IX.D.

193.    "*Super-Senior Agent*" has the meaning set forth in the DIP Orders.

194.    "*Super-Senior Collateral*" has the meaning set forth in the DIP Orders.

195.    "*Super-Senior Credit Agreement*" has the meaning set forth in the DIP Orders.

196.    "*Super-Senior Documents*" has the meaning set forth in the DIP Orders.

197.    "*Super-Senior First Out Loan Claim*" means any Claim against the Debtors arising under, derived from, based on, or related to the Super-Senior First Out Loans incurred under the Super-Senior Credit Agreement, including principal amount plus any accrued and unpaid interest thereon.

198.    "*Super-Senior First Out Incremental Loans*" has the meaning set forth in the DIP Orders.

199.    "*Super-Senior First Out Initial Loans*" has the meaning set forth in the DIP Orders.

200.    "*Super-Senior First Out Loans*" has the meaning set forth in the DIP Orders.

201.    "*Super-Senior Second Out Loan Claim*" means any Claim against the Debtors arising under, derived from, based on, or related to the Super-Senior Second Out Loans incurred under the Super-Senior Credit Agreement, including principal amount plus any accrued and unpaid interest thereon.

202.    "*Super-Senior Second Out Loans*" has the meaning set forth in the DIP Orders.

203.    "*Super-Senior Secured Parties*" has the meaning set forth in the DIP Orders.

204.    "*Super-Senior Term Loan Claim*" means, collectively, the Super-Senior First Out Loan Claims, the Super-Senior Second Out Loan Claim, and the Super-Senior Third Out Loan

22

Claims, including, for the avoidance of doubt, any deficiency claim arising under, related to, or in connection with the Super-Senior Credit Agreement.

205.    "*Super-Senior Term Loans*" has the meaning set forth in the DIP Orders.

206.    "*Super-Senior Third Out Loans*" has the meaning set forth in the DIP Orders.

207.    "*Super-Senior Third Out Loan Claim*" means any Claim against the Debtors arising under, derived from, based on, or related to the Super-Senior Third Out Loans incurred under the Super-Senior Credit Agreement, including principal amount plus any accrued and unpaid interest thereon.

208.    "*Solicitation Materials*" means all solicitation materials in respect of the Plan.

209.    "*Third-Party Release*" means the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.D of the Plan.

210.    "*Transition Services Agreement*" means the Wind-Down Transition Services Agreement (as defined in the Multi-Business APA).

211.    "*U.S. Trustee*" means the United States Trustee for the District of New Jersey.

212.    "*Undeliverable Distribution Reserve*" shall have the meaning ascribed to it in Article VII.E.1.

213.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

214.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

215.    "*Waterfall Recovery*" means, as applicable, the priority by which Distributable Proceeds shall be allocated and paid to the Holders of Allowed Claims or Interests, as applicable, until paid in full, in each case, on a Pro Rata basis, except as otherwise agreed to by such Holders of Allowed Claims or Interests, in the following order of priority: (a)  DIP Term Loan Claims; (b) Allowed Other Secured Claims; and (c) Allowed Super-Senior Term Loan Claims (subject to and in accordance with Article III and Article IV of the Plan), Allowed General Unsecured Claims, and Allowed Other General Unsecured Claims.  For the avoidance of doubt, (i) distributions on account of Allowed General Unsecured Claims from the GUC Recovery Reserve and (ii) the receipt of proceeds from the Excluded Real Estate (in exchange for the DIP Term Loan Claim Waiver), in each case, shall not be subject to the Waterfall Recovery.  All Allowed Administrative / Priority Claims shall be paid in full from the Plan Administrator Reserve and are not included in the Waterfall Recovery.  For the avoidance of doubt, in no event can any obligations on account of any Allowed Super-Senior Claims, DIP Term Loan Indemnity or other indemnification obligations in favor of the DIP Term Loan Agent or DIP Term Loan Lenders or any other Secured Claims be satisfied from the GUC Recovery Reserve.

23

216. "*Wind-Down*" means the wind-down, dissolution, and liquidation of the Wind-Down Debtors' Estates and a winding down and dissolution of the Debtor Entities after the Effective Date, and all actions related to, necessary for, or otherwise appropriate to effectuate the foregoing, to be administered by the Plan Administrator in accordance with this Plan and the Wind-Down Transactions Memorandum.

217. "*Wind-Down Account*" means a segregated account in the Plan Administrator Reserve and established in accordance with Article IV.C, to be administered by the Plan Administrator in accordance with this Plan, that was funded with Cash from the proceeds of the SOTP Transactions equal to the Wind-Down Reserve Amount pursuant to the Wind-Down Budget. Any residual amounts remaining from the Wind-Down Account upon the Dissolution Date shall be returned to the DIP Lenders and/or Super-Senior Secured Parties, as applicable, in accordance with the Waterfall Recovery set forth herein.

218. "*Wind-Down Agreement*" means the form of agreement, substantially in the form included in the Plan Supplement (as it may be subsequently modified from time to time) the terms and mechanics facilitating the Wind-Down.

219. "*Wind-Down Budget*" means the budget (including any reserves) to fund the Wind-Down of the Debtors and their Estates and to implement and consummate the Plan, as may be amended, modified or otherwise altered from time to time, as agreed between the Debtors and the Ad Hoc Group and in consultation with the Committee, which budget will be Filed with the Plan Supplement. For the avoidance of doubt, the Debtors, the Ad Hoc Group, and the Committee agree that the Wind-Down Budget includes Cash sufficient to fund (a) all Allowed Administrative / Priority Claims to the extent any such Claims are not Assumed Liabilities under the applicable SOTP Transaction Documents or any other Purchase Agreement, and (b) all Allowed Claims asserted under section 503(b)(9) of the Bankruptcy Code and postpetition trade obligations, in each case, to the extent necessary to confirm the Plan.

220. "*Wind-Down Debtors*" means the Debtors, or any successor thereto, by merger, consolidation or otherwise (which may be, among other things, a corporation, limited liability company or a liquidating trust) on or after the Effective Date; provided that any Debtor that ceases to exist as a separate legal entity pursuant to a merger, consolidation, dissolution or other transaction shall not constitute a Wind-Down Debtor following such cessation of existence.

221. "*Wind-Down Reserve Amount*" means the amount of Cash provided for in the Wind-Down Budget, which aggregate amount shall be agreed to among the Debtors and the Ad Hoc Group, in consultation with the Committee, and be funded into the Plan Administrator Reserve.

222. "*Wind-Down Transactions Memorandum*" means a document to be included in the Plan Supplement that will set forth a summary of the transactions steps to implement and complete the Wind-Down.

B. *Rules of Interpretation; Consent Rights.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the

24

masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (8) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (9) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal Law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the Laws of the State of New York, without giving effect to the principles of conflict of Laws; (10) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (11) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (14) any effectuating provisions may be interpreted by the Debtors, or the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (15) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (16) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (17) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; and (18) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

Notwithstanding anything herein to the contrary, this Plan and all Definitive Documents (including the Plan Supplement) and any exhibits thereto, or any amendments, modifications, alterations, or supplements thereto, shall be (a) in form and substance acceptable to the Debtors and subject to all consent rights of the Ad Hoc Group as set forth in the Plan and the RSA, and (b) reasonably acceptable to the Committee solely as to the terms related to the Settlement.

*C.      Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

*D.      Governing Law.*

Unless a rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the Laws of the State of New York, without giving effect to the principles of conflict of Laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing Law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors not incorporated in Delaware shall be governed by the Laws of the state of incorporation or formation of the applicable Debtor.

*E.      Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

*F.      Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control.  In the event of any inconsistency between the Plan or Plan Supplement, on the one hand, and the Confirmation Order on the other hand, the Confirmation Order shall control.  In the event of any inconsistency between the Plan or Plan Supplement, on the one hand, and the Sale Orders or the Settlement Order on the other hand, the Sale Orders or the Settlement Order, as applicable, shall control in all respects.

*G.      Reference to the Debtors and the Wind-Down Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors and the Wind-Down Debtors shall mean the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

**ARTICLE II. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE
CLAIMS, PRIORITY TAX CLAIMS, AND DIP CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in <u>Article III</u> hereof.

### A.      Administrative Claims.

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors,  or the Wind-Down Debtors, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided* that, any Allowed Administrative Claim that is an Assumed Liability under a Purchase Agreement shall be an obligation of the Purchaser and shall not be an obligation of the Debtors or the Wind-Down Debtors; *provided*, *further*, that any Allowed Administrative Claim that is not an Assumed Liability under a Purchase Agreement shall be satisfied solely from the Plan Administrator Reserve.

Except for Professional Fee Claims and DIP Claims, and unless previously Filed, subject to the terms of the Sale Orders, requests for payment of Administrative Claims must be Filed with the Bankruptcy Court and served on the Debtors or the Wind-Down Debtors, as applicable, no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order.  Objections to such requests must be Filed and served on the Debtors or the Wind-Down Debtors and the requesting party on or before the Administrative Claim Objection Bar Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order.

Except for Professional Fee Claims and DIP Claims, Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Estates, the Wind-Down Debtors, or the property of any of the foregoing, and such Administrative Claims shall be deemed released as of the Effective Date without the need for any objection from the Debtors, the Wind-Down Debtors, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

B.      *Payment of Fees and Expenses under DIP Orders.*

On the Effective Date, the Debtors shall pay all reasonable and documented accrued and unpaid fees, expenses, disbursements, contribution or indemnification obligations, including without limitation, attorneys' and agents' fees, expenses, and disbursements incurred by each of the DIP Agents, the Ad Hoc Group, and the Prepetition Agents, whether incurred prior to or after the Petition Date, in each case to the extent payable or reimbursable under or pursuant to the DIP Orders, the DIP Credit Agreements, and the Prepetition Credit Agreements, as applicable (subject to any applicable conditions set forth in the DIP Orders and further subject to the reduction in fees agreed to pursuant to the Settlement).  Such fees, expenses, disbursements, contribution, or indemnification obligations shall constitute Allowed Administrative Claims (provided, however, that with respect to the DIP Term Loan Indemnity, such obligations will be modified as set forth herein).  Nothing herein shall require the DIP Agents, the Ad Hoc Group, the Prepetition Agents, or their respective Professionals, to File applications, a Proof of Claim, or otherwise seek approval of the Bankruptcy Court as a condition to the payment of such Allowed Administrative Claims.  For the avoidance of doubt, nothing herein shall be deemed to impair, discharge, or negatively impact or affect the rights of the DIP Agents or the Prepetition Agents to exercise any charging Liens pursuant to the terms of the DIP Credit Agreements, the Prepetition ABL Credit Agreement, or the Super-Senior Credit Agreement, as applicable, subject to the Prepetition Intercreditor Agreement.

C.      *Professional Fee Claims.*

1.      Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 45 days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders.  The Debtors or the Wind-Down Debtors (or the authorized signatories to the Professional Fee Escrow Account, after consultation with the Plan Administrator), as applicable, shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2.      Professional Fee Amount and Professional Fee Escrow Account.

The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtors and/or the Committee (subject to the Committee Hourly Fee Cap and further subject to the reduction in fees agreed to pursuant to the Settlement) before and as of the Confirmation Date projected to be outstanding as of the Confirmation Date, and shall deliver such estimate to the Debtors no later than five (5) Business Days before the anticipated Effective Date; *provided that* such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an

28

estimate after a request from the Debtors, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional through the Confirmation Date.  The total aggregate amount so estimated as of the Confirmation Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

Additionally, in accordance with the Settlement Order, payment of fees to the investment banker for the Committee shall be subject to the reductions agreed among such parties pursuant to the Settlement.

On or prior to the Effective Date, the Wind-Down Debtors or the Debtors, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Wind-Down Debtors as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all Allowed amounts owing to the Professionals have been paid in full, any amount remaining in the Professional Fee Escrow Account shall promptly be distributed to Holders of Allowed Claims in accordance with the Waterfall Recovery, without any further action or order of the Bankruptcy Court.  For the avoidance of doubt, the allowance of all Committee Professional Fee Claims shall be subject to the Committee Hourly Fee Cap and all other terms otherwise agreed to in the Settlement.

> 3.      Wind-Down Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Wind-Down Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Wind-Down Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, all Professional Fees incurred after Consummation of the Plan shall be paid solely from the Wind-Down Account, and any fees or costs incurred on behalf of the Claims Oversight Administrator shall be paid from the GUC Recovery Reserve.

> D.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code; *provided* that (a) any Allowed Priority Tax Claim that is an Assumed Liability under the Purchase Agreement shall be an obligation of the Purchaser, and shall not be an obligation of the Debtors or the Wind-Down Debtors.

     *E.     DIP Claims.*

As of the Effective Date, the DIP Claims shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP Credit Agreements including principal, interest, fees, costs, other charges, and expenses (but excluding, for the avoidance of doubt, professional fees to be paid in accordance with Article II.B), subject to the reduction of the DIP Term Loan Claims by the DIP Term Loan Claim Waiver.

     1.     DIP ABL Claims.

All outstanding DIP ABL Claims, including all principal and interest owed pursuant to the DIP Orders and the DIP ABL Documents, were paid from proceeds of the SOTP Transactions. Accordingly, the DIP ABL Claims have been paid in full.  To the extent any DIP ABL Claims are not fully satisfied as of the Effective Date, the DIP ABL Claims shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the DIP ABL Credit Agreement, including principal, interest, fees, costs, other charges, and expenses.

     2.     DIP Term Loan Claims.

Except to the extent that a Holder of an Allowed DIP Term Loan Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of its Claim, each Holder of an Allowed DIP Term Loan Claim shall receive its Pro Rata share of: (a) at or as soon as reasonably practicable following closing of the SOTP Transactions, the Distributable Proceeds; (b) on the Effective Date, any additional Distributable Proceeds (if any) in accordance with Article VI hereof; and (c) on the Dissolution Date, (i) any Distributable Proceeds after giving effect to the Waterfall Recovery, and (ii) any remaining funds from the Plan Administrator Reserve as of the Dissolution Date in accordance with Article VI hereof.

Each Holder of an Allowed DIP Term Loan Claim shall also receive, on account of the DIP Term Loan Claim Waiver (and not on account of any Allowed DIP Term Loan Claims pursuant to this Plan), at or as soon as reasonably practicable following closing of any Excluded Real Estate Disposition, its Pro Rata share of the proceeds from each Excluded Real Estate Disposition.

Pursuant to the DIP Term Loan Credit Agreement, all distributions pursuant to this Article II.E shall be made to the DIP Term Loan Agent for distributions to the DIP Term Loan Lenders in accordance with the DIP Term Loan Credit Agreement and DIP Term Loan Documents unless otherwise agreed upon in writing by the DIP Term Loan Agent and the Debtors or the Plan Administrator, as applicable.  The DIP Term Loan Agent shall hold or direct distributions for the benefit of the Holders of DIP Term Loan Claims.  The DIP Term Loan Agent shall retain all rights as DIP Term Loan Agent under the DIP Term Loan Documents in connection with the delivery of the distributions to the DIP Term Loan Lenders.  The DIP Term Loan Agent shall not have any liability to any person with respect to distributions made or directed to be made by such DIP Term Loan Agent.

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, the DIP Term Loan Facility and the DIP Term Loan Documents shall continue in full force and effect (other than, for the avoidance of doubt, any Liens or other security interests terminated pursuant

to this Article II.E) after the Effective Date and until the Dissolution Date with respect to, and nothing herein or in the Confirmation Order shall have the effect of releasing, discharging, or compromising (other than with respect to the DIP Term Loan Claim Waiver) any contingent or unsatisfied obligations thereunder, as applicable, including, but not limited to, those provisions relating to the rights of the DIP Term Loan Agent, and the DIP Term Loan Lenders and their Affiliates and Related Parties to expense reimbursement, the DIP Term Loan Indemnity, and any other indemnification obligations, and any other similar obligations of the Debtors to the DIP Term Loan Agent and the DIP Term Loan Lenders (which rights shall be fully enforceable against the Wind-Down Debtors) and any provisions thereof that may survive termination or maturity of the DIP Term Loan Facility in accordance with the terms thereof; *provided, however*, that the DIP Term Loan Indemnity shall be payable from and have sole recourse to the proceeds of the Excluded Real Estate and the Other Excluded Assets.

Upon the occurrence of the Dissolution Date pursuant to the terms of this Plan, all remaining Liens and security interests granted to secure such obligations shall be automatically terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

*A.*      *Classification of Claims and Interests.*

This Plan constitutes a separate Plan proposed by each Debtor.  Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Super-Senior Term Loan Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Other General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |

31

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| 8 | Equity Interests in DMFHL | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

### B.   *Treatment of Claims and Interests.*

Subject to Article IV hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.     Class 1 – Other Secured Claims

(a)    *Classification*: Class 1 consists of all Other Secured Claims.

(b)    *Treatment*: Each Holder of an Allowed Other Secured Claim that either was not paid during the Chapter 11 Cases or is not an Assumed Liability under a Purchase Agreement, shall receive, unless such Holder agrees to less favorable treatment, at the option of the applicable Debtor or Wind-Down Debtor, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim:

(i)    payment in full in Cash equal to its Allowed Other Secured Claim; or

(ii)   the collateral securing its Allowed Other Secured Claim; or

(iii)  such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)    *Voting*: Class 1 is Unimpaired. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Other Secured Claims are not entitled to vote to accept or reject the Plan.

32

2.      Class 2 – Other Priority Claims

      (a)    *Classification*: Class 2 consists of all Other Priority Claims.

      (b)    *Treatment*: Each Holder of an Allowed Other Priority Claim, except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, shall receive, at the option of the applicable Debtor or Wind-Down Debtor, as applicable, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim:

            (i)    payment in full in Cash equal to its Allowed Other Priority Claim; or

            (ii)    such other treatment consistent with section 1129(a)(9) of the Bankruptcy Code.

      (c)    *Voting*: Class 2 is Unimpaired. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.      Class 3 – Super-Senior Term Loan Claims

      (a)    *Classification:* Class 3 consists of Super-Senior Term Loan Claims.

      (b)    *Allowance*: As of the Effective Date, the Super-Senior Term Loan Claims shall be Allowed and deemed to be Allowed Claims in the full amount outstanding under the Super-Senior Credit Agreement including principal, interest, fees, costs, other charges, and expenses.

      (c)    *Treatment*: Except to the extent that a Holder of a Super-Senior Term Loan Claim agrees to less favorable treatment, each Holder of an Allowed Super-Senior Term Loan Claim shall be entitled to their Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery, if any, up to the Allowed amount of such Super-Senior Term Loan Claim.

      (d)    *Voting*: Class 3 is Impaired. Therefore, Holders of Super-Senior Term Loan Claims are entitled to vote to accept or reject the Plan.

4.      Class 4 – General Unsecured Claims

      (a)    *Classification:* Class 4 consists of all General Unsecured Claims.

(b)    *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim:

    (i)    its Pro Rata share of the GUC Cash Recovery, which shall be funded from the GUC Recovery Reserve (which GUC Recovery Contribution would have otherwise been Cash paid to the DIP Term Loan Lenders at the closing of the SOTP Transactions and/or distributed to the DIP Term Loan Lenders from the Distributable Proceeds) prior to or on the Effective Date; and

    (ii)    its Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery, if any.

(c)    *Voting*: Class 4 is Impaired.   Therefore, Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 5 – Other General Unsecured Claims</u>

(a)    *Classification:* Class 5 consists of Other General Unsecured Claims.

(b)    *Treatment*:  Except to the extent that a Holder of an Other General Unsecured Claim agrees to less favorable treatment, each Holder of a Parent Claim or an Excluded D&O Claim shall be entitled to their Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery, if any, up to the Allowed amount of such Other General Unsecured Claim.

(c)    *Voting*:  Class 5 is Impaired.   Therefore, Holders of Other General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.    <u>Class 6 – Intercompany Claims</u>

(a)    *Classification*:  Class 6 consists of all Intercompany Claims.

(b)    *Treatment*:  Each Intercompany Claim shall be, at the option of the Debtors, Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Claim, or such other treatment as is reasonably determined by the Debtors, in consultation with the Ad Hoc Group and the Committee, in accordance with the Wind-Down Transactions Memorandum.

(c)    *Voting*:  Holders of Interests in Class 6 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or

34

section 1126(g) of the Bankruptcy Code, respectively. Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

7. Class 7 – Intercompany Interests

    (a) *Classification*: Class 7 consists of all Intercompany Interests.

    (b) *Treatment*: Each Intercompany Interest shall be, at the option of the Debtors, Reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Interest, or such other treatment as is reasonably determined by the Debtors, in consultation with the Ad Hoc Group and the Committee, in accordance with the Wind-Down Transactions Memorandum.

    (c) *Voting*: Holders of Interests in Class 7 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

8. Class 8 – Existing Equity Interests in DMFHL

    (a) *Classification*: Class 8 consists of all Existing Equity Interests in DMFHL.

    (b) *Treatment*: All Existing Equity Interests in DMFHL will be cancelled and extinguished, and Holders of Existing Equity Interests in DMFHL shall receive no recovery on account of such Interests.

    (c) *Voting*: Class 8 is Impaired. Holders of Existing Equity Interests in DMFHL are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of Existing Equity Interests in DMFHL are not entitled to vote to accept or reject the Plan.

9. Class 9 – Section 510(b) Claims

    (a) *Classification:* Class 9 consists of all Section 510(b) Claims.

    (b) *Treatment:* Section 510(b) Claims shall be discharged, cancelled, released, and extinguished without any distribution to Holders of such Claims.

    (c) *Voting:* Class 9 is Impaired. Holders (if any) of Allowed Section 510(b) Claims are conclusively deemed to have rejected the Plan.

35

Therefore, Holders (if any) of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired; *provided* that the Reinstatement or other treatment of such Claims shall not be inconsistent with any Purchase Agreement.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Combined Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes, Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

F.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

G.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

*H.      Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.

Pursuant to section 510 of the Bankruptcy Code, subject to the consultation rights of the Claims Oversight Administrator solely to the extent set forth in Article IV.I hereof, the Debtors and the Wind-Down Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

*I.      Intercompany Interests.*

To the extent Reinstated under this Plan, distributions on account of Intercompany Interests are being received by Holders of such Intercompany Interests solely to use certain funds and assets as set forth in this Plan and the Plan Supplement to make certain distributions and satisfy certain obligations of certain other Debtors or Wind Down Debtors, as applicable and consistent with the August 2024 Transactions, to the Holders of certain Allowed Claims and for uses that are otherwise contemplated by this Plan and the Plan Supplement, in each case, in accordance with the terms of the applicable Sale Order.  For the avoidance of doubt, to the extent Reinstated pursuant to this Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Wind-Down Debtor that corresponds with the Debtor that owned such Intercompany Interests immediately prior to the Effective Date.

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN**

*A.      General Settlement of Claims and Interests.*

As discussed in the Disclosure Statement and as otherwise provided herein, to the greatest extent permissible under the Bankruptcy Code and the Bankruptcy Rules, and consistent with the relief granted pursuant to the Settlement Order pursuant to Bankruptcy Rule 9019 and implemented under this Plan, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute and be deemed a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan that were not previously settled as part of the Settlement (other than the Retained Causes of Action), and shall implement and give force and effect to that.  The releases provided for in the Settlement were approved in the Settlement Order, subject to implementation in this Plan.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of compromises and settlements set forth and incorporated herein under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules, as well as a finding by the Bankruptcy Court that all such settlements and compromises are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.  To the extent of any

37

inconsistency between the Plan and the terms of the Settlement or the Settlement Order as to the terms of the Settlement, the Settlement and Settlement Order shall control.

To facilitate the Settlement, a certain portion of the Cash proceeds from the sale of the "Collateral" (as defined in the DIP Term Loan Credit Agreement) through the SOTP Transactions shall be carved out as the GUC Recovery Contribution and used to fund the GUC Recovery Reserve.  The Cash proceeds of the SOTP Transactions are not sufficient to repay the DIP Term Loan Facility in full, meaning that the Super-Senior Term Loan Claims are entirely unsecured. Accordingly, without the GUC Recovery Contribution, the Cash proceeds of the SOTP Transactions would not be sufficient to make a distribution to Allowed General Unsecured Claims.

### B.      Administrative Consolidation for Voting and Distribution Purposes Only.

The Plan is premised upon the administrative consolidation of the Debtors solely for the purposes of voting, determining which Class or Classes have accepted the Plan, confirming the Plan, and the resulting treatment of all Claims and Interests and Plan Distributions.  Each Debtor shall continue to maintain its separate corporate existence for all purposes other than the treatment of Claims and Interests under the Plan.

On the Effective Date, and except as otherwise expressly provided in the Plan, solely for voting, confirmation, and distribution purposes with respect to each Class of Claims or Interests as provided for by the August 2024 Transactions and the Amended DMFC Schedules: (a) all Claims or Interests in each respective Class shall be deemed merged or consolidated and treated as Claims or Interests against the Debtors on a consolidated basis; (b) each Claim or Interest in each respective Class will be deemed a single Claim against, or Interest in, the consolidated Debtors; (c) any Claim in a given Class based on a guaranty by any Debtor of the obligations of any other Debtor shall be deemed eliminated and extinguished, so that any Claim against any Debtor and any guarantee thereof by any other Debtor, and any joint or several liability of any of the Debtors, shall be deemed to be one obligation of the consolidated Debtors; and (d) each Holder of any Allowed Claim or Interest in a given Class shall be entitled to a single recovery on account of such Claim or Interest, in accordance with the treatment provided under the Plan for such Class, regardless of whether such Holder Filed Proofs of Claim against multiple Debtors or has Claims against multiple Debtors based on the same or similar debt.

Such administrative consolidation is solely for voting, confirmation and distribution purposes with respect to each Class and shall not constitute a transfer of assets or liabilities between the Debtors for any other purpose.  In addition, the Plan's treatment shall not affect any subordination provisions set forth in any agreement relating to any Claim or Interest or the ability of the Wind-Down Debtors or Plan Administrator to seek to have any Claim subordinated in accordance with section 510 of the Bankruptcy Code or other applicable Law.

### C.      Plan Administrator Reserve.

Prior to the Effective Date, the Debtors shall establish the Plan Administrator Reserve and fund it with Cash using the proceeds of the SOTP Transactions in the amount set forth in the Wind-Down Budget (inclusive of the Professional Fee Escrow Amount and the GUC Recovery Contribution), in each case, in accordance with the Settlement and this Plan.  Before or on the

Effective Date, the Debtors, the Wind-Down Debtors or the Plan Administrator, as applicable, shall use the funds in the Plan Administrator Reserve to establish segregated accounts for (i) the Professional Fee Escrow Account in the amount of the Professional Fee Escrow Amount, (ii) the GUC Recovery Reserve using the GUC Recovery Contribution (in each case, which may be effected by either establishing a segregated account or establishing book entry accounts, in the discretion of the Plan Administrator), and (iii) the Wind-Down Account in the amount equal to the Wind-Down Reserve Amount.

On and after the Effective Date, the funds in the Plan Administrator Reserve shall be used to make payments in accordance with the Wind-Down Budget, including (a) to satisfy the expenses of the Wind-Down Debtors and the Plan Administrator as set forth in the Plan and Wind-Down Budget, (b) to make distributions to Holders of Allowed Administrative / Priority Claims from the Wind-Down Account, and (c) to make distributions on account of Professional Fee Claims incurred from and following the Effective Date solely from the Wind-Down Account, provided that, for the avoidance of doubt, any fees or costs of or incurred on behalf of the Claims Oversight Administrator shall be paid from the GUC Recovery Reserve; *provided* that all costs and expenses associated with the winding up of the Wind-Down Debtors and the storage of records and documents of the Wind-Down Debtors shall constitute expenses of the Wind-Down Debtors and shall be paid only from the Plan Administrator Reserve.

Notwithstanding anything to the contrary herein, (i) the amount allocated to the GUC Recovery Reserve; (ii) the permitted uses of the GUC Recovery Reserve; and (iii) any use of the Wind Down Budget, Plan Administrator Reserve, or Professional Fee Escrow Amount, in each case, that is inconsistent with the Settlement in a manner that materially and adversely impacts distributions to Holders of General Unsecured Creditors, may not be amended, modified, or reallocated without the prior written consent of the Committee.

Any amount remaining in the Plan Administrator Reserve upon the Dissolution Date shall be distributed pursuant to the Waterfall Recovery. In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes.

1.     Professional Fee Escrow Account.

Before the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with the Professional Fee Escrow Amount using Cash from the Plan Administrator Reserve in accordance with Article II.C of the Plan. For the avoidance of doubt, the Professional Fee Escrow Account is reserved exclusively for satisfying Professional Fee Claims, and may not be used to satisfy any other Claims or obligations, including, for the avoidance of doubt, the DIP Term Loan Indemnity, until all Professional Fee Claims are paid in full in accordance with Article II.C hereof.

2.     GUC Recovery Reserve.

Before the Effective Date, the GUC Recovery Reserve shall be established and Cash using the GUC Recovery Contribution shall be deposited into GUC Recovery Reserve, with the GUC Cash Recovery to be distributed to Holders of Allowed General Unsecured Claims in accordance with Article III.B of the Plan. Each of the mechanics for funding the GUC Recovery Reserve and for distributions therefrom must be acceptable to the Committee.

For the avoidance of doubt, (i) none of Allowed Super-Senior Term Loan Claims or Allowed Other General Unsecured Claims shall be entitled to any recovery from the GUC

39

Recovery Reserve, and (ii) any Secured Claims, including deficiency claims and indemnity obligations in favor of any secured lender (including the DIP Term Loan Indemnity), arising under the DIP Documents, Super-Senior Documents, or otherwise, shall not participate in any recovery from the GUC Recovery Reserve, which GUC Cash Recovery is solely for purposes of funding distributions to Holders of Class 4 General Unsecured Claims.

> D.    *SOTP Transactions; Transition Services.*

On or before the Effective Date, the Debtors and the Purchasers shall be authorized to take all actions as may be deemed necessary or appropriate to consummate the SOTP Transactions pursuant to the terms of the SOTP Transaction Documents and the Sale Orders.

On and after the Effective Date, except as otherwise provided in the Plan or the Purchase Agreements, the Debtors or the Wind-Down Debtors and the Plan Administrator, as applicable, and (a) the Purchasers shall be authorized to continue to perform all obligations of the Sellers as set forth in the Purchase Agreements, and (b) the Multi-Business Buyer shall be authorized to implement or otherwise continue to perform under the Transition Services Agreement pursuant to the Multi-Business APA. For the avoidance of doubt, the Wind-Down Debtors (and the Plan Administrator) shall succeed automatically to the rights of the Debtors under the Transition Services Agreement and the SOTP Transaction Documents.

> E.    *Post-Effective Date Transactions.*

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall enter into and take any actions that may be necessary or appropriate to effectuate the SOTP Transactions, sales or other dispositions with respect to the Other Excluded Assets and Excluded Real Estate, of the Wind-Down or the Debtors, as applicable, including, but not limited to: (1) the execution and delivery of appropriate agreements or other documents of consolidation, conversion, disposition, transfer, or dissolution containing terms that are consistent with the terms of this Plan and that satisfy the requirements of applicable Law; (2) the execution and delivery of any appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, duty, or obligation on terms consistent with this Plan; (3) the commencement of litigation on any of the Retained Causes of Action; (4) the Filing of appropriate documents with the appropriate governmental authorities pursuant to applicable Law; and (5) any and all other actions that the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, determine are necessary or appropriate to effectuate this Plan, the SOTP Transactions, Other Excluded Asset Dispositions or Excluded Real Estate Dispositions.

> 1.    <u>Other Excluded Asset Dispositions and Excluded Real Estate Dispositions</u>.

Following the Plan Effective Date, the Wind-Down Debtors or the Plan Administrator, as applicable, shall liquidate, collect, and/or engage in a process for the sale of the Other Excluded Assets in accordance with the terms and procedures set forth in <u>Article IV.F</u> hereof.

Following the Plan Effective Date, the Wind-Down Debtors or the Plan Administrator, as applicable, shall liquidate, collect, and/or engage in a process for the sale of the Excluded Real Estate, subject to the Excluded Real Estate Designation Rights of the Ad Hoc Group and otherwise

in accordance with the terms and procedures set forth in Article IV.F hereof, with the net proceeds of such sale or other disposition to be distributed to the DIP Term Loan Lenders in accordance with the DIP Orders.

2. Authority to Effectuate Other Excluded Asset Dispositions and Excluded Real Estate Dispositions.

On and after the Effective Date, the Plan Administrator (or, as applicable, the Wind-Down Debtors acting through the Plan Administrator) is hereby authorized and empowered, in its sole discretion, to liquidate, sell, assign, transfer, abandon, terminate, or otherwise dispose of (or monetize) (i) any and all Other Excluded Assets (each an "*Other Excluded Asset Disposition*"), free and clear of any Liens, Claims, charges, encumbrances, and other interests to the fullest extent permitted under sections 105(a), 363, 1123(a)(5), 1123(b)(4), and 1142 of the Bankruptcy Code, and (ii) any and all Excluded Real Estate (each an "*Excluded Real Estate Disposition*"), subject to the Excluded Real Estate Designation Rights set forth herein, in each case, without any requirement of further notice to or approval from the Bankruptcy Court.

The authority conferred by this Plan shall include the authority to (and with respect to an Excluded Real Estate Disposition, subject in all cases to the Excluded Real Estate Designation Rights): (i) market and solicit offers for Other Excluded Assets or Excluded Real Estate; (ii) negotiate and execute one or more purchase agreements, bills of sale, assignments and assumptions, settlement agreements, quitclaim deeds (if applicable), or other instruments and documents implementing any Other Excluded Asset Disposition or Excluded Real Estate; (iii) consummate such transactions; (iv) take any and all actions necessary or appropriate to effectuate the foregoing; and (v) pay customary and reasonable transaction expenses, including brokerage commissions, marketing expenses, transfer taxes, and professional fees incurred in connection with such Other Excluded Asset Disposition or Excluded Real Estate Disposition, as applicable. Other Excluded Asset Dispositions or Excluded Real Estate Dispositions may be effected by public sale, private sale, negotiated transaction, auction, structured disposition process, abandonment, compromise, or other transaction structure determined by the Plan Administrator in its discretion, and may occur in one or more transactions over time.

The net proceeds from each Other Excluded Asset Disposition shall be distributed to the DIP Term Loan Lenders in accordance with Article II.E hereof or, if applicable, pursuant to the Waterfall Recovery set forth in this Plan.

The net proceeds from each Excluded Real Estate Disposition shall be distributed to the DIP Term Loan Lenders in accordance with Article II.E hereof.

In carrying out any Other Excluded Asset Disposition and Excluded Real Estate Disposition, the Plan Administrator shall exercise commercially reasonable business judgment and may consider any factors it deems relevant, including: (i) the net value to the Wind-Down Debtors' Estates; (ii) certainty of closing; (iii) transaction costs and execution risk; (iv) the impact on the Wind-Down Budget and the orderly administration of the Wind-Down; (v) the timing of any disposition relative to the anticipated timeline for dissolution; and (vi) any tax and administrative considerations.

3.      Implementation.

The Plan Administrator shall take all actions reasonably necessary or appropriate to effectuate any (i) Other Excluded Asset Disposition or (ii) Excluded Real Estate Disposition in accordance with the Excluded Real Estate Designation Rights, including execution and delivery of deeds, transfer documents, purchase agreements, closing instruments, affidavits, and related ancillary documentation, and shall cooperate in good faith to consummate such transaction promptly.  The Plan Administrator may retain commercially reasonable brokers, consultants, attorneys, and other professionals to assist in marketing, documentation, and closing, subject to the Wind-Down Budget.

4.      Rights Regarding Excluded Real Estate.

Notwithstanding anything to the contrary in the Plan, the DIP Term Loan Lenders shall have the right as consideration for, among other things, the DIP Term Loan Claim Waiver (the "*Excluded Real Estate Designation Rights*") to designate and direct in their sole discretion the terms of any Excluded Real Estate Disposition, including, without limitation: (i) the identity of the buyer/transferee; (ii) whether the Excluded Real Estate Disposition shall be consummated through a private sale, marketed process, auction, deed-in-lieu, abandonment, or other structure; (iii) the purchase price or other consideration; (iv) the timing of the transaction; and (v) other material economic and closing terms.

The Ad Hoc Group's exercise of the Excluded Real Estate Designation Rights shall be governed by the following procedures:

(a)     Within ten (10) Business Days of any proposed Excluded Real Estate Disposition, the Plan Administrator shall provide written notice to the Ad Hoc Group (through the Ad Hoc Group Advisors, email being sufficient) specifying the proposed Excluded Real Estate Disposition and the material terms thereof (an "*Excluded Real Estate Designation Notice*").

(b)     Within twenty (20) Business Days after receipt of an Excluded Real Estate Designation Notice, the Ad Hoc Group shall either (i) confirm in writing that the Ad Hoc Group consents (i.e., "designates") to the proposed Excluded Real Estate Disposition, in which case the Plan Administrator will proceed to implement the transaction as so "designated" by the Ad Hoc Group, or (ii) object in writing.

(c)     Upon the Ad Hoc Group's affirmative consent to the Excluded Real Estate Designation Notice as designated, the Plan Administrator shall proceed with closing on such Excluded Real Estate Disposition.

In exchange for, among other things, the DIP Term Loan Claim Waiver, the net proceeds of any Excluded Real Estate Disposition (net of reasonable and necessary transaction costs and expenses, including of the Plan Administrator, solely related to any Excluded Real Estate Disposition) shall be distributed to the DIP Term Loan Lenders in accordance with Article II.E hereof.

42

*F.     The Wind-Down Debtors and Wind-Down.*

1.     <u>Establishment of the Wind-Down Debtors</u>.

On the Effective Date, the Wind-Down Debtors will be established, formed, merged, or converted, as applicable, in accordance with this Plan and the Wind-Down Steps Memorandum.

On and as soon as reasonably practicable following the Effective Date, all of the Wind-Down Debtors other than DMFC shall be merged out of existence, their interests and rights shall be vested for all purposes in the applicable surviving Wind-Down Debtor, and all of the interests in such Wind-Down Debtors shall be cancelled and terminated without further order of the Bankruptcy Court.

On and after the Effective Date, DMFC shall continue in existence as the Lead Wind-Down Debtor and, pursuant to this Plan, retain its existing corporate status to the same extent as such status existed immediately prior to the Petition Date.

2.     <u>Wind-Down</u>.

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall, subject to the Wind-Down Transactions Memorandum, the Wind-Down Agreement and any other agreement contemplated by the foregoing: (1) cause the Debtors and the Wind-Down Debtors, as applicable, to comply with, and abide by, the terms of the Plan, Confirmation Order, the SOTP Transaction Documents (including, for the avoidance of doubt, the Purchase Agreements and Transition Services Agreement), the Sale Orders, the Wind-Down Transaction Memorandum, and any other agreements or documents contemplated by the foregoing; (2) to the extent applicable, cause the preparation of and execute and file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors and the Wind-Down Debtors, as applicable, under the applicable Laws of their state of incorporation or formation (as applicable); (3) to the extent applicable, cause the preparation of and execute and file a certificate of merger or equivalent document, together with all other necessary corporate and company documents, to effect the merger of the Debtors and the Wind-Down Debtors, as applicable, under the applicable Laws of their state of incorporation or formation (as applicable); (4) take such other actions as the Plan Administrator may determine to be necessary or desirable to comply with any applicable Laws governing dissolutions and mergers (including the Bankruptcy Code, Bankruptcy Rules and Laws under the state of incorporation or formation of the applicable Debtors and the Wind-Down Debtors); and (5) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution, certificate of merger or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors or managers of any Debtor and the Wind-Down Debtors, as applicable.  From and after the Effective Date, except with respect to Wind-Down Debtors as set forth herein, the

43

Debtors (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which the Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (b) shall be deemed to have canceled pursuant to this Plan, and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. For the avoidance of doubt, notwithstanding the Debtors' dissolution, the Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

> 3. <u>Dissolution of the Wind-Down Debtors</u>.

Upon (a) the Filing with the Bankruptcy Court by the Plan Administrator of a certification that all distributions have been made and that it has completed all its duties under the Plan and (b) entry of a final decree closing the last of the Chapter 11 Cases (the date on which the foregoing (a) and (b) have occurred, the "***Dissolution Date***"), any Wind-Down Debtors not dissolved or merged out of existence as of such time shall be deemed to be dissolved without any further action by the Plan Administrator, including the filing of any documents with the secretary of state for the state in which the Debtors are formed or any other jurisdiction.

Notwithstanding the foregoing, the Plan Administrator shall retain the authority to take all necessary actions to cause the dissolution of or merge out of existence any Wind-Down Debtor in, and withdraw any Wind-Down Debtor from, applicable states and provinces to the extent required by applicable Law or as otherwise authorized under this Plan and consistent with the Wind-Down Transactions Memorandum.

> *G. Post-Effective Date Governance.*

> 1. <u>Post-Effective Date Director & New Governance Documents</u>.

On the Effective Date, all directors, managers or other individuals comprising the board of directors (or other governing body exercising similar authority) of each Debtor shall be deemed removed from their position on such board (or other similar body) and discharged of any and all authority, duties, responsibilities and obligations relating to, arising from and in connection with their service in such capacities, in each case, as of the Effective Date.

On the Effective Date, the Post-Effective Date Director shall be appointed, and shall be an individual that is mutually acceptable to the Lead Wind-Down Debtor and the Ad Hoc Group. The identity of the Post-Effective Date Director shall be disclosed in the Plan Supplement. For the avoidance of doubt, the Post-Effective Date Director may be the same individual as the Plan Administrator.

The Post-Effective Date Director of the Lead Wind-Down Debtor shall appoint and oversee the Plan Administrator, consistent with the terms of this Plan and the New Governance Documents of the Lead Wind-Down Debtor as then in effect. Any Action by a Wind-Down Debtor that is inconsistent with the Wind-Down Budget, is outside the ordinary course, or would result in a breach of such Wind-Down Debtor's obligations under the SOTP Transaction Documents, in each

case, shall require the approval of the Post-Effective Date Director of the Lead Wind-Down Debtor in accordance with the New Governance Documents of the Lead Wind-Down Debtor.

On the Effective Date, the Lead Wind-Down Debtor, DMFI, and DMFHL shall adopt the New Governance Documents, and the New Governance Documents of the Lead-Wind Down Debtor shall govern the operations of the Post-Effective Date Director of the Lead Wind-Down Debtor. The New Governance Documents shall be deemed to be valid, binding, and enforceable in accordance with their terms and shall be binding on the applicable Wind-Down Debtor and the Persons subject thereto, in each case, without the need for execution by any Person other than the applicable Wind-Down Debtor.

*H.*    *Plan Administrator.*

On or before the Effective Date, the Plan Administrator shall be selected by the Debtors and the Ad Hoc Group, in consultation with the Committee, and shall be identified in the Plan Supplement, with such appointment approved by entry of the Confirmation Order.

The Plan Administrator's duties shall commence as of the Effective Date, and the Plan Administrator shall act for the Wind-Down Debtors in the capacity as the sole officer of the Wind-Down Debtors and shall be subject to oversight of the Post-Effective Date Director of the Lead Wind-Down Debtor. The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the Plan Administrator Agreement and the Wind-Down as contemplated by the Wind-Down Agreement, the Wind-Down Transactions Memorandum, and the Wind-Down Budget, and as otherwise provided in the Confirmation Order.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Wind-Down Debtors and the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator, to be chosen by the Wind-Down Debtors and the Ad Hoc Group with the approval of the Post-Effective Date Director of the Lead Wind-Down Debtor. Upon any other vacancy of the Plan Administrator, a permanent or interim successor Plan Administrator shall be chosen by the Wind-Down Debtors and the Ad Hoc Group in accordance with the Plan Administrator Agreement and the New Governance Documents of the Lead Wind-Down Debtor. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtors shall be terminated.

1.    Powers of the Plan Administrator.

From and after the Effective Date, subject to any required approvals of the Post-Effective Date Director of the Lead Wind-Down Debtor, the powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to make distributions, including to administer and distribute the amounts set forth in the Plan Administrator Reserve in accordance with the Plan, and wind-down the business and affairs of the Debtors and Wind-Down Debtors (all without further order of the Bankruptcy Court and as further set forth in the Plan Administrator Agreement) in accordance with the Wind-Down Budget, including: (a) liquidating, receiving,

holding, investing, supervising, and protecting the assets of the Wind-Down Debtors and the Plan Administrator Reserve, including the authority to sell, liquidate, or otherwise dispose of any and all of the Wind-Down Debtors' Other Excluded Assets and Excluded Real Estate Assets (subject to the Excluded Real Estate Designation Rights) without any additional notice to or approval from the Bankruptcy Court; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Plan Administrator Reserve; (c) making distributions to Holders of Allowed Claims, including distributions from the Plan Administrator Reserve as contemplated hereunder; (d) establishing and overseeing bank accounts in the name of the Debtors and the Wind-Down Debtors, as applicable, and carrying out the Wind-Down and dissolution or mergers, as applicable, of the Wind-Down Debtors, including effectuating the transactions described in the Wind-Down Transactions Memorandum; (e) subject to the terms set forth herein and in the Plan Administrator Agreement, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (f) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtors; (g) administering and paying taxes of the Wind-Down Debtors, including filing tax returns; (h) representing the interests of the Wind-Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (i) complying with the Debtors' continuing obligations under any Sale Order and the SOTP Transaction Documents (including, for the avoidance of doubt, the Purchase Agreements and Transition Services Agreement); (j) reviewing and, as necessary, objecting to any final fee application of any Professionals (subject to the terms of the Settlement); (k) objecting to the Allowance of any Claims and pursuing, compromising, or settling any Retained Causes of Action (including Defensive Causes of Action) in accordance with this Plan and the Schedule of Retained Causes of Action; and (l) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan in accordance with the Plan Administrator Reserve and Plan Administration Agreement.  In addition, the filing of the monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

The Plan Administrator shall be the exclusive trustee of the assets of the Wind-Down Debtors for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

After the Effective Date, and subject to the terms of the Purchase Agreements, the Plan Administrator shall complete and file all final or otherwise required federal, state, provincial, and local tax returns for each of the Debtors and the Wind-Down Debtors.

For the avoidance of doubt, the Wind-Down Debtors and the Plan Administrator shall have no authority, except in accordance with the terms of the Settlement, to modify, alter, amend, supplement or otherwise waive the terms of the Settlement (including, without limitation, any of the economic terms or treatment provisions therein) without the prior written consent of the affected Settlement Parties.

2.      <u>Retention of Professionals</u>.

The Plan Administrator shall have the right, subject to the Wind-Down Budget, to retain the services of attorneys, accountants, and other Professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such Professionals shall be paid by the Wind-Down Debtors from the Wind-Down Account upon the monthly submission of statements to the Plan Administrator to the extent set forth in the Wind-Down Budget.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Wind-Down Account and shall not be subject to the approval of the Bankruptcy Court.

3.      <u>Compensation of the Plan Administrator</u>.

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Plan Administrator Account.  Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid in a manner consistent with the Wind-Down Budget and without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Account if such amounts relate to any actions taken hereunder.

4.      <u>Plan Administrator Expenses</u>.

All reasonable costs, expenses, and obligations incurred by the Plan Administrator or the Wind-Down Debtors in administering the Plan or in effecting distributions thereunder (including the reimbursement of reasonable expenses), including any costs, expenses, or obligations in any manner connected, incidental, or related thereto, shall be paid from the Plan Administrator Reserve.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.  However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall solely be paid for with Cash from the Plan Administrator Reserve.

5.      <u>Plan Administrator Report</u>.

During the Wind-Down period, the Plan Administrator will file with the Bankruptcy Court on an annual basis and serve on the U.S. Trustee, the Claims Oversight Administrator, the Ad Hoc Group Advisors, and prior to the Effective Date, the Committee, a report summarizing the distributions made to Holders of Claims pursuant to this Plan and the Other Excluded Asset Disposition(s) and Excluded Real Estate Disposition(s) effected during such period.

47

6.      Corporate Action.

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (a) consummation of the SOTP Transactions; (b) the monetization, through sale or other disposition, of Other Excluded Assets and the Excluded Real Estate; (c) consummation of the Wind Down; and (d) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Debtors, and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan or corporate structure of the Debtors or Wind-Down Debtors, including, for the avoidance of doubt, any transactions contemplated under the Wind-Down Transactions Memorandum, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the Security holders, directors, managers, or officers of the Debtors or the Wind-Down Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan and the Wind-Down Transactions Memorandum) in the name of and on behalf of the Wind-Down Debtors.  The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under nonbankruptcy Law.

7.      Exculpation, Indemnification, Insurance, and Liability Limitation.

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors.   The Plan Administrator may obtain, at the expense of the Wind-Down Debtors and with funds from the Plan Administrator Account, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

For the avoidance of doubt, notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

*I.      Claims Oversight Administrator.*

On the Effective Date, the Debtors shall appoint, in consultation with the Committee and the Ad Hoc Group, the Claims Oversight Administrator.

The Claims Oversight Administrator shall not have authority to administer or reconcile General Unsecured Claims, and shall instead have reasonable consultation rights with respect to the efforts of the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, to review, reconcile, settle, or otherwise resolve General Unsecured Claims.  The Claims Oversight

Administrator's role shall be limited to oversight and consultation and shall not impair or interfere with the Debtors', the Wind-Down Debtors', or the Plan Administrator's, as applicable, ability to maintain ordinary-course vendor and business relationships.

At the reasonable request of the Claims Oversight Administrator, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, will provide the Claims Oversight Administrator with periodic updates and information on the Claims reconciliation process necessary to perform such oversight and consultation role.

In addition, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall provide the Claims Oversight Administrator with no less than five (5) days' notice of (i) any Claim objection, or (ii) the proposed allowance of any Claim (a) in excess of $2 million, or (b) where the disputed amount exceeds $500,000.

The Claims Oversight Administrator shall be entitled to payment of its reasonable fees and expenses solely from the GUC Recovery Reserve.

*J.      Cancellation of Existing Agreements, Interests, and Intercompany Interests.*

On the Effective Date, except for the purpose of evidencing a right to and allowing Holders of Claims and Interests to receive distribution under the Plan or to the extent specifically provided for in the Plan or the Confirmation Order, all notes, bonds, indentures, instruments, certificates, Securities, shares, purchase rights, options, warrants, collateral agreements, subordination agreements, and other documents evidencing Claims, Interests, or Intercompany Interests, including credit agreements and indentures, shall be cancelled, and the obligations of the Debtors thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect, and the Agents shall be released from all duties and obligations thereunder.   Holders of, or parties to, such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan; *provided* that notwithstanding the release set forth in Article VIII.D of the Plan, Confirmation, Consummation, or the occurrence of the Effective Date, any agreement that governs the rights, claims, or remedies of the Holder of a Claim or Interest shall continue in effect solely for purposes of allowing and preserving the rights of the DIP Agents and the Prepetition ABL Agent to (a) make or direct the distributions in accordance with the Plan as provided herein or any other order of the Bankruptcy Court providing for distributions of consideration and (b) assert or maintain any rights for indemnification or contribution they may have against the Debtors or the applicable DIP Secured Parties and/or Prepetition Secured Parties, solely to the extent arising under, and due pursuant to the terms of, the applicable governing document or instrument, and provided further, that the DIP Term Loan Indemnity shall be modified as set forth herein.

*K.      Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, and subject in all respects to Article VII and Article VIII hereof, and the terms of the Settlement and the Sale Orders, all Retained Causes of Action (including Retained Defensive Actions) as set forth on the Schedule of

Retained Causes of Action that a Debtor or an Estate may hold against any Person or Entity, whether arising before or after the Petition Date, shall vest in the Wind-Down Debtors.

As of and following the Effective Date, the Plan Administrator or the Wind-Down Debtors, as applicable, shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment such Retained Causes of Action and Retained Defensive Actions, as appropriate, in accordance with the best interests of the Wind-Down Debtors, and no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Plan Administrator or the Wind-Down Debtors, as applicable, shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement to file motions or substitutions of parties or counsel in each such matter.

No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Schedule of Retained Causes of Action, to any Retained Cause of Action against it as any indication that the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, will not pursue any and all available Retained Causes of Action against it. Each of the Debtors, the Wind-Down Debtors, and the Plan Administrator expressly reserve all rights to prosecute any and all Retained Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.

Unless any such Retained Causes of Action (including Retained Defensive Actions) against an Entity are expressly waived (including pursuant to this Article IV.K), relinquished, exculpated, released, compromised, assigned, or transferred to the Purchasers in accordance with the Purchase Agreements, or settled in the Plan, the Settlement Order or any other Final Order, the Wind-Down Debtors expressly reserve all such Retained Causes of Action (including Retained Defensive Actions) as set forth on the Schedule of Retained Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action and Retained Defensive Actions upon, after, or as a consequence of the Confirmation or Consummation.

For the avoidance of doubt, the releases set forth in the "Waiver and Release of Avoidance Actions" paragraph of each Sale Order are incorporated herein by reference and implemented by this Plan upon the Effective Date; provided, that the Debtors shall retain the ability to assert Avoidance Actions solely as Retained Defensive Actions to disputed Claims in the Claims reconciliation process, and not for purposes of direct or indirect commencement or prosecution of, among other things, any affirmative action, the recovery of monetary relief, or the pursuit of damages of any kind.

50

L.      *Release of Liens.*

Except as otherwise provided herein with respect to the DIP Term Loan Claims or in the Purchase Agreements, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Debtors' Estates that have not been previously released shall be fully released, settled, and compromised, and the Holder of such mortgages, deeds of trust, Liens, pledges, or other security interest against any property of the Debtors' Estates shall be authorized to take such actions as may be reasonably requested by the Debtors to evidence such releases, at the sole expense of the Debtors or the Wind-Down Debtors, as applicable.

M.      *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtors and the Purchasers are, and on and after the Effective Date, the Wind-Down Debtors, the Purchasers, and the Plan Administrator are, authorized to and may issue, execute, deliver, file, or record, to the extent not inconsistent with any provision of this Plan, such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

N.      *Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code and applicable Law, any transfers (whether from a Debtor to a Wind-Down Debtor or the Plan Administrator, from a Debtor or Wind-Down Debtor to the Purchasers, or from a Wind-Down Debtor to any other Person) of property under the Plan pursuant to: (1) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, Equity Security, or other interest in the Debtors or the Wind-Down Debtors, as applicable; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (3) Other Excluded Asset Dispositions; (4) Excluded Real Estate Dispositions; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation

51

any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### O.     Sale Orders.

Notwithstanding anything to the contrary herein, nothing in the Plan, the Plan Supplement, the Plan Administration Agreement or the Confirmation Order, shall affect, impair, or supersede the Sale Orders, which remain in full force and effect and govern in the event of any contradiction with the Plan, the Plan Supplement, the Plan Administration Agreement or the Confirmation Order.

### P.     Closing of Chapter 11 Cases.

On and after the Effective Date, the Lead Wind-Down Debtor and the Plan Administrator shall be permitted to File a motion for entry of an order closing some or all of the Chapter 11 Cases of the Debtors, as appropriate at any given time.  In the event that the lead Chapter 11 Case of the Lead Wind-Down Debtor remains the only open Chapter 11 Case, upon cause shown, all contested matters relating to any of the Debtors, including objections to Claims or Interests and any adversary proceedings, may be administered and heard in the Chapter 11 Case of the Lead Wind-Down Debtor, irrespective of whether such Claims or Interests were Filed or such adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed.

## ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.     Assumption and Rejection of Executory Contracts and Unexpired Leases.

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that: (1) identified (if any) on (x) the Schedule of Assumed Executory Contracts and Unexpired Leases or (y) the Deferred Decision Schedule; (2) have been previously assumed or rejected by the Debtors pursuant to the Assumption/Rejection Procedures Order or any other Bankruptcy Court order; (3) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, under the SOTP Transaction Documents pursuant to the Sale Orders or in connection with any sale transaction that is pending on the Confirmation Date; or (5) are a contract, release, or other agreement or document entered into in connection with the Plan.  Any Deferred Decision Contract or Deferred Decision Lease removed from the Deferred Decision Schedule prior to the applicable Deferred Decision Deadline and not otherwise identified on the Schedule of Assumed Executory Contracts and Unexpired Leases shall be deemed rejected effective as of the date set forth in the applicable Deferred Decision Rejection Notice.

For the avoidance of doubt and notwithstanding anything to the contrary herein, the Debtors shall make all assumption and rejection determinations for their Executory Contracts and

Unexpired Leases either through the Filing of a motion or identification in the Plan Supplement (included an amended Schedule of Assumed Executory Contracts and Unexpired Leases), in each case, prior to the applicable deadlines set forth in sections 365(d)(2) and 365(d)(4) of the Bankruptcy Code. To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease by a deadline (including the Deferred Decision Deadline), including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the Filing of a motion or identification in the Plan Supplement or similar schedule in connection with an order approving an Other Excluded Asset Disposition or Excluded Real Estate Disposition, or inclusion of such Executory Contract or Unexpired Lease on the Deferred Decision Schedule, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline.

Subject to and upon the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections of Executory Contracts and Unexpired Leases provided for in this Plan or the Confirmation Order, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise provided for in the Confirmation Order, each Executory Contract and Unexpired Lease assumed pursuant to this Plan, the Confirmation Order, or any other order of the Bankruptcy Court shall re-vest in and be fully enforceable by the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, in accordance with its terms, except as such terms may have been modified by the provisions of any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal Law (following notice and an opportunity to object to the affected counterparties). Any guarantee of an Unexpired Lease that is pursuant to this Plan, the Confirmation Order, or any other order of the Bankruptcy Court shall be reaffirmed by the applicable Wind-Down Debtor and remain in full force and effect as of the Effective Date. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the rights of counterparties to any Unexpired Leases of nonresidential real property to object to the continued possession of such leased property, including for failure to comply with any other lease terms or obligations, including payment of rents and charges and insurance obligations, in each case related to such Unexpired Lease following entry of the Confirmation Order, are expressly preserved, and the rights of such counterparties to request that such objection be heard on shortened notice are preserved.

To the maximum extent permitted by Law, the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or any other transaction, event, or matter that would (1) result in a violation, breach, or default under such Executory Contract or Unexpired Lease, (2) increase, accelerate, or otherwise alter any obligations, rights, or liabilities of the Debtors or the Wind-Down Debtors under such Executory Contract or Unexpired Lease, or (3) result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Wind-Down Debtors pursuant to the applicable Executory Contract or Unexpired Lease, and to the extent any provision in any such Executory Contract or Unexpired Lease restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the transactions contemplated by the Plan, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related

53

rights with respect thereto, and any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with assumption thereof (subject to the other provisions of this Article V.A) shall be deemed satisfied by Confirmation.

*B.        Objections Relating to Assumption and Cure Costs.*

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall, in accordance with the Schedule of Assumed Executory Contracts and Unexpired Leases, pay all Cure Costs relating Executory Contracts and Unexpired Leases that are being assumed under the Plan on the effective date of such assumption and on such terms as the parties such Executory Contracts and Unexpired Leases may agree; *provided* that, if a dispute regarding the assumption of Cure Cost is unresolved as of the Effective Date, then payment of the applicable Cure Cost shall occur as soon as reasonably practicable after such dispute is resolved.  Any Cure Cost shall be deemed fully satisfied and released upon payment of the Cure Cost.

Any objection to the proposed assumption (including adequate assurance of future performance) or proposed Cure Cost by a counterparty to an Executory Contract or Unexpired Lease must be (1) Filed by no later than 4:00 p.m. (prevailing Eastern Time) on the date that is fourteen (14) calendar days after the service of the applicable notice of assumption, Confirmation Order or any other order of the Bankruptcy Court establishing the date by which such objections must be Filed, and (2) served upon the Debtors or the Wind-Down Debtors, as applicable, the Plan Administrator, and the U.S. Trustee.  The Wind-Down Debtors or the Plan Administrator, as applicable, may also settle any Cure Costs with counterparties to an Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court.

Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or the Wind-Down Debtors', as applicable, first scheduled omnibus hearing, or such other setting as requested by the Debtors or the Wind-Down Debtors, as applicable, with respect to which such objection is timely Filed.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.  Any such objection that is not timely Filed and served shall be disallowed and forever barred, estopped, and enjoined from assertion and shall not be enforceable against any Debtor, any Wind-Down Debtor, or the Plan Administrator, without the need for any objection by the Wind-Down Debtors or the Plan Administrator or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

Notwithstanding anything to the contrary in the Plan, the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, reserve the right to alter, amend, modify, or supplement Schedule of Assumed Executory Contracts and Unexpired Leases and the Deferred Decision Schedule, in each case, at any time through and including the Deferred Decision Deadline, which such amended Schedule of Assumed Executory Contracts and Unexpired Leases shall be Filed with the Bankruptcy Court; provided, however, that any Deferred Decision Leases on the Deferred Decision Schedule shall be subject to the consent of the applicable landlord; *provided, further that*, after the Confirmation Date, the Debtors may not subsequently reject any Executory Contract or Unexpired Lease, other than a Deferred Decision Contract or Deferred

Decision Lease, previously designated as assumed or assumed and assigned absent the consent of the applicable contract counterparty, or an order of the Bankruptcy Court.

C.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

If the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan and Confirmation Order results in a Claim, then, unless otherwise ordered by Final Order of the Bankruptcy Court, such Claim shall be forever barred and shall not be enforceable against the Debtors, the Estates, the Wind-Down Debtors, the Plan Administrator, or any of their respective assets and properties unless a Proof of Claim is Filed with the Notice and Claims Agent and served upon counsel to the Plan Administrator within thirty (30) days of the latest of (1) the Effective Date, (2) service of any Deferred Decision Rejection Notice, or (3) the Deferred Decision Deadline, as applicable.  The foregoing applies only to Claims arising from the rejection of an Executory Contract or Unexpired Lease under the Plan and Confirmation Order.

Any other Claims held by a party to a rejected Executory Contract or Unexpired Lease shall have been evidenced by a Proof of Claim Filed by the applicable Bar Date or shall be barred and unenforceable.  Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan and Confirmation Order shall be classified as General Unsecured Claims and shall, if Allowed, be treated in accordance with the provisions herein.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within the applicable time period prescribed above shall be barred from asserting such Claims against the Debtors and precluded from voting on any Chapter 11 plans Filed in the Chapter 11 Cases and/or receiving distributions on account of such Claims in the Chapter 11 Cases. The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims not timely Filed; *provided* that the Debtors will provide notice to such claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such claimant that its Claim will be removed from the Claims Register as a result of being untimely Filed.

All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  For the avoidance of doubt, unless otherwise agreed, any property remaining on the premises subject to a rejected Unexpired Lease shall be deemed abandoned by the Debtors or the Wind-Down Debtors, as applicable, as of the effective date of the rejection, and the counterparty to such Unexpired Lease shall be authorized to (i) use or dispose of any property left on the premises in its sole and absolute discretion without notice or liability to the Debtors or the Wind-Down Debtors as applicable, or any third party, and (ii) assert a Claim for any and all damages arising from the abandonment of such property by filing a Claim in accordance with this Article V.C.

D.    *Reservation of Rights.*

Neither the exclusion nor the inclusion by the Debtors of any Executory Contracts and Unexpired Leases on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement,

55

nor anything contained in the Plan, shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Wind-Down Debtor has any liability thereunder.

> E.    *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy Law to the contrary, the Debtors (for themselves and for their successors) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

> F.    *Insurance Policies.*

Each of the Insurance Policies, and any agreements, documents, or instruments relating thereto to which a Debtor is a party as of the Effective Date shall be deemed an Executory Contract.

On the Effective Date, (1) the Debtors shall be deemed to have assumed all Insurance Policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies, pursuant to section 365 of the Bankruptcy Code or otherwise, subject to the Debtors' rights to seek amendment to such Insurance Policies and (2) such Insurance Policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall vest in the Wind-Down Debtors. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Insurance Policies of the Debtors, including each of the D&O Liability Insurance Policies.

Notwithstanding anything to the contrary contained in the Plan or Plan Supplement, (a) Confirmation of the Plan shall not discharge, impair, or otherwise modify any obligations assumed by the foregoing assumption of the Insurance Policies, including D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed; and (b) nothing in the Plan, the Plan Supplement or the Confirmation Order shall terminate or otherwise reduce the coverage under any Insurance Policies (including D&O Liability Insurance Policies), with respect to conduct occurring on or prior to the Effective Date and, after the Effective Date, all directors, officers, managers, authorized agents or employees of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any applicable D&O Liability Insurance Policies for the full term of such policies, including but not limited to any extension of coverage after the end of such policy period if any extended reporting period has been purchased, in accordance with the terms thereof.

> G.    *Indemnification Obligations.*

Subject to and in accordance with the Purchase Agreements and the Sale Orders, all Indemnification Obligations, consistent with applicable Law, that have not been assumed by the

56

Purchasers and that are currently in place as of the Effective Date (whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) for each of the Debtor's Related Parties and Debtor Director/Officers, as applicable, shall be Reinstated and remain intact and irrevocable, and shall survive the Effective Date on terms no less favorable to such Related Parties and Debtor Director/Officers of the Debtors than the Indemnification Obligations in place prior to the Effective Date (with the exception of the DIP Term Loan Indemnity, which shall be modified as set forth herein), but in all events, subject to the following sentence.  Notwithstanding anything herein to the contrary, the Indemnification Obligations shall be deemed Executory Contracts assumed by the Debtors under the Plan, solely to the extent necessary to recover and have access to insurance proceeds.  Any Indemnification Obligations asserted by Debtor Directors/Officers against the Debtors shall be Subordinated to all other General Unsecured Claims.

        *H.*        *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including easements, reciprocal easement agreements, construction operating and reciprocal easement agreements, operating or redevelopment agreements, covenants, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

        *I.*        *Employment Agreements.*

Any Employment Agreement not assumed and assigned pursuant to the SOTP Transaction Documents as part of the SOTP Transactions shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code on the Effective Date of the Plan.

        *J.*        *Employee Compensation and Benefits.*

Upon the closing of the SOTP Transactions, and in accordance with the Multi-Business APA, the Multi-Business Buyer or one of its affiliates will assume the Legacy Pension Plan.  As the new contributing sponsor to the Legacy Pension Plan, the Multi-Business Buyer or its affiliate will be subject to certain statutory requirements under ERISA and the Code, including, as applicable, the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307, for the Legacy Pension Plan under ERISA or the Internal Revenue Code; and administering the Legacy Pension Plan in accordance with its terms and the provisions of ERISA and the Internal Revenue Code on an ongoing basis.

With the exception of the Legacy Pension Plan and other than as contemplated under the SOTP Transaction Documents, all employment policies, and all employment, compensation and benefit plans, agreements, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including but not limited to all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, fringe benefits, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, Executory Contracts under this Plan and, on the Effective Date, shall be rejected pursuant to sections 365 and 1123 of the Bankruptcy Code.

    *K.*        *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4)(B)(ii) of the Bankruptcy Code.

## ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS

    *A.*        *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on any Distribution Date, (or if a Claim is not an Allowed Claim or Allowed Interest on a Distribution Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter) each Holder of an Allowed Claim or Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

Notwithstanding the foregoing, the Debtors shall make one distribution with respect to Allowed General Unsecured Claims following the reconciliation and Allowance or Disallowance of all General Unsecured Claims.

    *B.*        *Distributions on Account of Obligations of Multiple Debtors.*

For all purposes associated with distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single distribution under the Plan, *provided* that Claims held by a single Entity at different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable distribution for such Claim at each applicable Debtor.  Any such Claims shall be released pursuant to Article VIII of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code.  For the avoidance of doubt, this shall not affect the

58

obligation of each and every Debtor to pay fees payable pursuant to section 1930(a) of the Judicial Code until such time as a particular Chapter 11 Case is closed, dismissed, or converted, whichever occurs first.

### C. Distributions Generally.

Except as otherwise provided herein, distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Wind-Down Debtors, as applicable.

Notwithstanding any provision of the Plan to the contrary, distributions to Holders of DIP Term Loan Claims shall be made to or at the direction of the DIP Term Loan Agent, which shall act as Disbursing Agent for distributions to the respective Holders of DIP Term Loan Claims at the sole expense of the Debtors or the Wind-Down Debtors, as applicable.

### 1. Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ Professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 2. Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement Claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash from the Wind-Down Account.

### D. Delivery of Distributions.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' books and records or the register or related document maintained by, as applicable, the DIP Agents as of the date of any such distribution; provided that the manner of such distributions shall be determined at the reasonable discretion of the Disbursing Agent; provided further that the address for each Holder of an Allowed Claim or Interest shall be deemed to be the address set forth in, as applicable, any Proof of Claim or Interest Filed by such Holder, or, if no Proof of Claim or Interest has been Filed, the address set forth in the Schedules. If a Holder holds more than one Claim in any one Class, all Claims of the Holder may be aggregated into one Claim and one distribution may be made with respect to the aggregated Claim.

    1.       <u>Minimum Distributions; Foreign Currency Exchange Rate</u>.

No Cash payment of less than $100.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

Except as otherwise provided in a Bankruptcy Court order, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

    2.       <u>Manner of Payment</u>.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in the applicable agreements.

    3.       <u>Compliance with Tax Requirements</u>.

In connection with the Plan, to the extent applicable, the Debtors or the Wind-Down Debtors, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and the Wind-Down Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

    4.       <u>Allocations</u>.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

    *E.*       *Undeliverable Distribution Reserve.*

    1.       <u>Deposits</u>.

If a distribution to any Holder of an Allowed Claim that is returned to the Plan Administrator as undeliverable or is otherwise unclaimed, such distribution (a) in the case of an Allowed Claim that is not an Allowed General Unsecured Claim, shall be deposited in a segregated, interest-bearing account, designated as an "***Undeliverable Distribution Reserve***" for the benefit of such Holder, or (b) in the case of an Allowed General Unsecured Claim, with consent of the Committee and Claims Oversight Administrator, shall be deposited into the GUC Recovery

Reserve, in each case, until such time as such distribution becomes deliverable, is claimed, or is deemed to have been forfeited in accordance with this Article VII.E.

2.      Forfeiture.

Any Holder of an Allowed Claim that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed distribution within six (6) months after the first distribution is made to such Holder shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution, and shall be forever barred and enjoined from asserting any such Claim for the undeliverable or unclaimed distribution against any Debtor, any Estate, the Plan Administrator, the Wind-Down Debtors, or their respective properties or assets.  In such cases:

(i)     any Cash or other property held by the Wind-Down Debtors in the Undeliverable Distribution Reserve in the case of Claims on account of Allowed Claims other than General Unsecured Claims for distribution on account of such Claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become the property of the Wind-Down Debtors, notwithstanding any federal or state escheat Laws to the contrary, and shall promptly be transferred to the Wind-Down Account to be distributed according to the priority set forth in the Waterfall Recovery without any further action or order of the Bankruptcy Court; and

(ii)    any Cash or other property held by the Wind-Down Debtors in the GUC Recovery Reserve in the case of Claims on account of Allowed General Unsecured Claims for distribution on account of such Claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the GUC Recovery Reserve, shall revert to the GUC Recovery Reserve for the benefit of Holders of Allowed General Unsecured Claims and shall not be distributed according to the priority set forth in the Waterfall Recovery.

3.      Disclaimer.

The Plan Administrator and his or her respective agents and attorneys are under no duty to take any action to attempt to locate any Claim Holder; *provided* that in his or her sole discretion, the Plan Administrator may periodically publish notice of unclaimed distributions.

4.      Distribution from Reserve.

Within 15 Business Days after the Holder of an Allowed Claim satisfies the requirements of this Plan, such that the distribution(s) attributable to its Claim is no longer an undeliverable or unclaimed distribution (provided that satisfaction occurs within the time limits set forth in Article VI.E of this Plan), the Plan Administrator shall distribute out of the Undeliverable Distribution Reserve the amount of the undeliverable or unclaimed distribution attributable to such Claim.

*F.    Setoffs and Recoupment.*

Except as expressly provided in this Plan, the Wind-Down Debtors may, pursuant to sections 553 and 558 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all Claims, rights, and Causes of Action that such Wind-Down Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Debtor(s) or Wind-Down Debtors, as applicable, and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; provided that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or its successor of any and all Claims, rights, and Causes of Action that such Debtor or its successor may possess against the applicable Holder.

*G.    Claims Paid or Payable by Third Parties.*

To the extent that the Holder of an Allowed Claim receives payment in full on account of such Claim from a party that is not a Debtor or Wind-Down Debtor, such Holder shall be barred from asserting such Claim against the Debtors and precluded from voting on any plans of reorganization Filed in the Chapter 11 Cases and/or receiving distributions from the Debtors on account of such Claims in the Chapter 11 Cases. The Debtors or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any Claims Filed with respect to an Executory Contract or Unexpired Lease that received payment in full on account of such Claim from a party that is not a Debtor or a Wind-Down Debtor. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Wind-Down Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor or Wind-Down Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS**

*A.    Disputed Claims Process.*

The Debtors, the Wind-Down Debtors or the Plan Administrator, as applicable, shall have the exclusive authority, subject to the reasonable consent rights of the Ad Hoc Group and, prior to the Effective Date, in consultation with the Committee, and subject to the consultation rights of the Claims Oversight Administrator, in consultation with the Claims Oversight Administrator following the Effective Date, to (i) determine, without the need for notice to or action, order, or approval of the Bankruptcy Court, that a Claim subject to any Proof of Claim that is Filed is Allowed, and (ii) File, settle, compromise, withdraw, or litigate to judgment any objections to Claims as permitted under the Plan. Except as otherwise provided herein, all Proofs of Claim Filed after the earlier of: (a) the Effective Date or (b) the applicable Claims Bar Date shall be Disallowed

and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Wind-Down Debtor, as applicable, without the need for any objection by the Debtor or Wind-Down Debtor, as applicable, or any further notice to or action, order, or approval of, the Bankruptcy Court.

*B. Allowance of Claims.*

After the Effective Date, the Plan Administrator shall be entitled to assert all of the Debtors' and the Wind-Down Debtors' rights, claims, defenses, offsets, rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization, and/or equitable subordination and counterclaims the applicable Debtor had with respect to any Claim immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim. Notwithstanding the releases in Article VIII of this Plan (including, for the avoidance of doubt, the Settlement Release), the Wind-Down Debtors retains all defenses against any Claim asserted against the Debtors, including rights of recoupment, setoffs, rights of disallowance, subrogation, recharacterization, and/or equitable subordination.

*C. Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and subject to the reasonable consent rights of the Ad Hoc Group and in consultation with the Committee prior to the Effective Date, and subject to the consultation rights of the Claims Oversight Administrator, in consultation with the Claims Oversight Administrator following the Effective Date, the Wind-Down Debtors or the Plan Administrator, as applicable, shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

*D. Estimation of Claims.*

Before or after the Effective Date, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest

for all purposes under the Plan (including for purposes of distributions), and the relevant Debtor or Wind-Down Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 14 days after the date on which such Claim is estimated. All of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.    *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Wind-Down Debtors or the Plan Administrator, as applicable, without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court. Additionally, any Claim or Interest that is duplicative or redundant with another Claim against or Interest in the same Debtor or another Debtor may be adjusted or expunged on the Claims Register by the Wind-Down Debtors or the Plan Administrator, as applicable, without the applicable Wind-Down Debtor having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

F.    *Time to File Objections to Claims.*

Except as otherwise provided herein, including Article V of this Plan, any objections to Claims shall be Filed by the Debtors or the Wind-Down Debtors, or the Plan Administrator, as applicable, on or before the Claims Objection Deadline, as such deadline may be extended from time to time.

G.    *Disallowance of Claims or Interests.*

Any Claims or Interests held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind-Down Debtors, as applicable. Subject to Article V.G hereof, all Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

64

**Subject to the terms of the Bar Date Order and __Article V__ of this Plan, if a Proof of Claim is not received by the Claims and Noticing Agent on or before the Claims Bar Date or the Administrative Claims Bar Date, as appropriate, the Holder of the underlying Claim shall be barred from asserting such Claim against the Debtors and precluded from voting on any plans of reorganization Filed in these Chapter 11 Cases and/or receiving distributions from the Debtors on account of such Claims in these Chapter 11 Cases.  Subject to the terms of the Bar Date Order, the Debtors, or the Wind-Down Debtors, as applicable, shall be authorized to update the Claims Register to remove any claims not received by the Claims and Noticing Agent before the Claims Bar Date or the Administrative Claims Bar Date, as applicable; *provided* that the Debtors will provide notice to such claimant at the address or email address on the Proof of Claim, to the extent such information is provided, informing such claimant that its Claim will be removed from the Claims Register as a result of being untimely Filed.**

> H.     *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Disputed Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Interest; *provided* that if the Allowed amount of a Claim or Interest is Disputed, but not the existence or nature of such Claim, such Claim or Interest shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

> I.     *Disputed Claims Reserve.*

Subject to the Wind-Down Budget, the Plan Administrator shall be authorized, but not directed, to establish a Disputed Claims Reserve for Claims, which shall be funded in accordance with the Wind-Down Budget and shall be administered by the Plan Administrator.  The Plan Administrator shall hold Cash in the Disputed Claims Reserve in trust for the benefit of Holders of Claims ultimately determined to be Allowed after the Effective Date.  The Disbursing Agent shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date solely to the extent of the amounts available in the applicable Disputed Claims Reserve.

The Plan Administrator may adjust the Disputed Claims Reserve to reflect all earnings thereon (net of any expenses relating thereto, such expenses including any taxes imposed thereon or otherwise payable by the reserve).  The taxes imposed on the Disputed Claims Reserve (if any) shall be paid from the property held in the Disputed Claims Reserve, and the Debtors, the Wind-Down Debtors, and the Plan Administrator shall have no liability for such taxes.  After any reasonable determination by the Plan Administrator that the Disputed Claims Reserve should be adjusted downward in accordance with this __Article VII__ of the Plan, the Plan Administrator may either (A) effect a distribution in the amount of such adjustment as required by the Plan or (B) transfer Cash in the amount of such adjustment to the Plan Administrator Account.

65

After all Disputed Claims have become either Allowed Claims or Disallowed Claims, and all distributions required pursuant the Plan have been made, the Plan Administrator may either (A) effect a final distribution of the Cash remaining (if any) in the Disputed Claims Reserve in accordance with the priorities set forth in the Plan or (B) transfer the remaining Cash to the Plan Administrator Account.

The Plan Administrator may (A) make an election pursuant to United States Treasury Regulations section 1.468B-9 to treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of that section and (B) allocate taxable income or loss to the Disputed Claims Reserve with respect to any taxable year that would have been allocated to the Holders of Disputed Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are Disputed Claims).  The affected Holders of the Disputed Claims shall be bound by such election, if made by the Plan Administrator.  For federal income tax purposes and, to the extent permitted by applicable Law, state, and local income tax purposes, absent definitive guidance from the IRS or a contrary determination by a court of competent jurisdiction, the Plan Administrator shall report consistently with the foregoing characterization.  All affected Holders of Disputed Claims shall report, for income tax purposes, consistently with the foregoing.

> *J.*      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy Law.

> *K.*      *No Interest.*

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim; *provided* that interest on any Disputed Priority Tax Claim that (i) becomes an Allowed Priority Tax Claim and (ii) is treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code shall accrue and be paid in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

> *L.*      *Amendments to Claims.*

Except as otherwise expressly provided for in the Plan or the Confirmation Order, on or after the Claims Bar Date or the Administrative Claims Bar Date, as appropriate, a Claim may not be Filed or amended without the authorization of the Bankruptcy Court or the Wind-Down

Debtors.  Absent such authorization, any new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable Law.

## ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A.        Settlement, Compromise, and Release of Claims and Interests.*

Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, the assets of the Debtors and the Wind-Down Debtors, as applicable, are being and shall be used for the satisfaction of expense obligations and/or the payment of Claims only in the manner set forth in the Plan and shall not be available for any other purpose.  Except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, compromise, and release, effective as of the Effective Date, of Claims, including General Unsecured Claims, Parent Claims, Permitted Insider Claims, and Intercompany Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Wind-Down Debtors), Interests, controversies, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date (including any Causes of Action or Claims based on theories or allegations of successor liability), any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.  Therefore, notwithstanding anything in section 1141(d)(3) of the Bankruptcy Code to the contrary, all Persons or Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, the Wind-Down Debtors, or the Chapter 11 Cases, that occurred prior to the Effective Date, other than as expressly provided in the Plan, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and distribution of the Debtors' assets in the manner contemplated by the Plan.  The Confirmation Order shall be a judicial determination of the settlement, discharge, compromise, and release of all Claims and Interests subject to the occurrence of the Effective Date.

Entry of the Settlement Order constituted the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases provided in the Settlement and implemented through this Plan, including, without limitation, the DIP Term Loan Waiver. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, to the greatest extent permissible under the Bankruptcy Code and the Bankruptcy Rules, of the releases described in the Settlement and this Plan to the extent not already approved pursuant to the Settlement Order, which include by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII, including in Article VIII.C and Article VIII.D, is: (i) consensual; (ii) given in exchange for the good and valuable consideration provided by the Released Parties; (iii) a good-faith settlement and compromise of such claims and Causes of Action; (iv) in the best interests of the Debtors, their Estates, and all Holders of Claims and Interests; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; (vii) a sound exercise of the Debtors' business judgment; and (viii) a bar to any of the Releasing Parties or the Debtors or their respective Estates or the Wind-Down Debtors, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

Notwithstanding the foregoing, and other than with respect to the DIP Term Loan Claim Waiver, nothing herein or in the Confirmation Order shall have the effect of releasing, discharging, or compromising any rights of any of the DIP Secured Party or their Affiliates (in any capacity) arising under, related to, or in connection with any rights, Claims, or Causes of Action in respect of the DIP Term Loan Indemnity, any other indemnification obligations, and any other similar obligations of the Debtors to the DIP Term Loan Agent and the DIP Term Loan Lenders (which rights shall be fully enforceable against the Wind-Down Debtors); *provided*, for the avoidance of doubt, that no such DIP Term Loan Indemnity or other indemnification obligations asserted by any DIP Secured Party shall be entitled to recover from the GUC Recovery Reserve.

>   *B.      Release of Liens.*

**Except as otherwise provided in the Plan, the Confirmation Order, the SOTP Transaction Documents, including the Purchase Agreements and the Sale Orders, any assets not sold as part of the SOTP Transactions or released pursuant to the Settlement Order and/or this Plan shall be transferred to and vest in the Wind-Down Debtors free and clear of all Liens, Claims, Charges, interests, or other encumbrances pursuant to sections 363(f) and 1141(d) of the Bankruptcy Code and in accordance with the terms of the Confirmation Order, the Plan, and the SOTP Transaction Documents, each as applicable. Without limiting the foregoing, except as otherwise provided in the Plan, any Plan Supplement, or the SOTP Transaction Documents, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the Wind-Down Transactions applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Wind-Down Debtors and their successors and assigns. The Holder of such Secured Claim (and the applicable**

**agents for such Holder) shall be directed, at the sole cost and expense of the Wind-Down Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (or the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Wind-Down Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**For the avoidance of doubt, the liens of the DIP Term Loan Agent and DIP Term Loan Parties on (i) the proceeds of the SOTP Transactions, and (ii) any assets not sold as part of the SOTP Transactions or released pursuant to the Settlement Order and/or this Plan, shall continue and shall not be released pursuant to this Plan until the occurrence of the Dissolution Date; provided, however, that the DIP Term Loan Indemnity, if any, shall be satisfied from the proceeds of the Excluded Real Estate and the Other Excluded Assets.**

## C.    *Debtor Release.*

Notwithstanding anything contained herein or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date and as previously approved in the Settlement Order and to the extent not already released pursuant to any of the Sale Orders, each of the Released Parties and the Settlement Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtors, their Estates, and, if applicable, the Wind-Down Debtors, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action directly or derivatively, by, through, for, or because of the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any avoidance actions and any derivative claims asserted or assertable on behalf of the Debtors, their Estates, or the Wind-Down Debtors, but excluding any Retained Causes of Action or Retained Defensive Rights), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtors, their Estates, or their heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim, Interest, or Intercompany Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the SOTP Transactions, the August 2024 Transactions, the incurrence of the Super-Senior Term Loans, the Chancery Court Settlement, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated under the Plan, the Debtors' operations, the business or contractual arrangements or interactions between or among the Debtors and any Released Party or Settlement Released Party,

the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Cases, any intercompany transactions, the negotiation, formulation, documentation, preparation, or consummation of the RSA, the SOTP Transactions, the Prepetition ABL Loan Documents, the Super-Senior Documents, the DIP Documents, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents in connection with the SOTP Transactions, including the Purchase Agreements and the other SOTP Transaction Documents, if applicable, the solicitation of votes with respect to the Plan, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.   Entry of the Settlement Order constituted the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases provided in the Settlement and implemented through this Plan.   Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, to the greatest extent permissible under the Bankruptcy Code and the Bankruptcy Rules, of the Debtor Release (to the extent not already approved in the Settlement Order), which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties and the Settlement Released Parties, including the Released Parties' and the Settlement Released Parties' respective contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors and all Holders of Claim, Interests, and Intercompany Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Debtors' Estates, or, if applicable, the Wind-Down Debtors, asserting any claim or Cause of Action released pursuant to the Debtor Release.

The foregoing Debtor Release shall not operate to waive or release (i) any Retained Causes of Action or Retained Defensive Rights, (ii) any Cause of Action against a Released Party or Settlement Released Party arising from any obligations owed to the Debtors pursuant to an Executory Contract or Unexpired Lease that is otherwise not rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date; (iii) any Cause of Action expressly set forth in and preserved in this Plan or related documents, or expressly preserved and transferred pursuant to any of the Sale Orders; (iv) any Cause of Action against a Holder of a Disputed Claim to the extent necessary to resolve and administer such Disputed Claim solely in accordance with this Plan; or (v) any Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party or Settlement Released Party that is determined by Final Order of any court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.   Notwithstanding anything to the contrary in the foregoing, the "Debtor Release" set forth above does not release any post-Effective Date obligations of any Entity under this Plan or any document, instrument or agreement executed in connection with this Plan with respect to the Debtors, the Wind-Down Debtors, or the Estates.   Notwithstanding anything to the contrary in the foregoing and other than with respect to the DIP Term Loan Claim Waiver, the "Debtor Release" set forth above does not release any post-Effective Date obligations of any Entity under this Plan or any document, instrument or agreement executed in connection with this Plan with respect to the Debtors, the Wind-Down Debtors, or the Estates. Notwithstanding the foregoing, nothing herein or in the Confirmation Order shall have the effect of releasing,

discharging, or compromising any rights of any of the DIP Secured Party or their Affiliates (in any capacity) arising under, related to, or in connection with any rights, Claims, or Causes of Action in respect of the DIP Term Loan Indemnity, any other indemnification obligations, and any other similar obligations of the Debtors to the DIP Term Loan Agent and the DIP Term Loan Lenders (which rights shall be fully enforceable against the Wind-Down Debtors).

### D.    Third-Party Release.

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is hereby deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Releasing Parties and the Settlement Releasing Parties, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action derivatively, by or through the foregoing Entities, in each case solely to the extent of the Releasing Parties' and the Settlement Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy Law, from any and all claims and Causes of Action, whether liquidated or unliquidated, fixed or contingent, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in Law, equity, contract, tort, or arising under federal or state statutory or common Law, or any other applicable international foreign or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them, including any derivative claims asserted or assertable on behalf of any of the Debtors, would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the SOTP Transactions, the August 2024 Transactions, incurrence of the Super-Senior Term Loans, the Chancery Court Settlement, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated under the Plan, the Debtors' operations, the business or contractual arrangements or interactions between or among the Debtors and any Released Party or Settlement Released Party, the distribution of any Cash or other property of the Debtors to any Released Party or Settlement Released Party, as applicable, the assertion or enforcement of rights or remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Cases, any intercompany transactions, the negotiation, formulation, documentation, preparation, or consummation of the Definitive Documents, RSA, the SOTP Transactions, the ABL Loan Documents, the Super-Senior Documents, the DIP Documents, the DIP Orders, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents in connection with the SOTP Transactions, including the Purchase Agreements and the other SOTP Transaction Documents, if applicable, the solicitation of votes with respect to the Plan, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

The foregoing Third-Party Release shall not operate to waive or release (i) any Cause of Action of any Releasing Party or Settlement Releasing Party against a Released Party or Settlement Released Party arising from any obligations owed to the Releasing Party or Settlement Releasing Party that are wholly unrelated to the Debtors or the Wind-Down Debtors, (ii) any Claims or Causes of Action expressly set forth in and preserved by this Plan or related documents; or (iii) any Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party or Settlement Released Party that is determined by Final Order of any court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. Notwithstanding anything to the contrary in the foregoing, the "Third-Party Release" set forth above does not release any post-Effective Date obligations of any Entity under this Plan or any document, instrument or agreement executed in connection with this Plan. Notwithstanding anything to the contrary in the foregoing and other with respect to the DIP Term Loan Claim Waiver, the "Third-Party Release" set forth above does not release any post-Effective Date obligations of any Entity under this Plan or any document, instrument or agreement executed in connection with this Plan. Notwithstanding the foregoing, nothing herein or in the Confirmation Order shall have the effect of releasing, discharging, or compromising any rights of any of the DIP Secured Party or their Affiliates (in any capacity) arising under, related to, or in connection with any rights, Claims, or Causes of Action in respect of the DIP Term Loan Indemnity, any other indemnification obligations, and any other similar obligations of the Debtors to the DIP Term Loan Agent and the DIP Term Loan Lenders (which rights shall be fully enforceable against the Wind-Down Debtors).

Without limiting the foregoing, from and after the Effective Date, any Entity that is given the opportunity to opt out of the releases contained in this Article VIII.D in accordance with this Plan and does not exercise such opt out may not assert any claim or other Cause of Action against any Released Party based on or relating to, or in any manner arising from, in whole or in part, the Debtors. From and after the Effective Date, any Entity that opts out of (or otherwise does not participate in) the releases contained in this Article VIII.D in accordance with this Plan may not assert any claim or other Cause of Action against any Released Party for which it is asserted or implied that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan without first obtaining a Final Order from the Bankruptcy Court (a) determining, after notice and a hearing, that such claim or Cause of Action is not subject to the releases contained in Article VIII.C of the Plan, and (b) specifically authorizing such Person or Entity to bring such claim or Cause of Action against any such Released Party. For the avoidance of doubt, the terms of this paragraph shall not apply to the Plan Administrator. The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a claim or Cause of Action constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible and as provided for in Article XI of the Plan, the Bankruptcy Court shall have jurisdiction to adjudicate the underlying claim or Cause of Action.

E.     Exculpation.

Effective as of the Effective Date, to the fullest extent permissible under applicable Law and without affecting or limiting either the Debtor Release or the Third-Party Release, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any claim or Cause of Action for any act or omission arising prior to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation,

72

dissemination, negotiation or filing, or Consummation of the Plan, any Definitive Documents, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation through the Effective Date of the Plan, the pursuit or consummation of the SOTP Transactions, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), except for claims or Causes of Action in each case arising out of or related to any act or omission that is determined in a Final Order of a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan; *provided, however*, that no Person or Entity that is not an Exculpated Party shall be entitled to rely on the exculpation provided for in this <u>Article VIII.E</u>, including by asserting this <u>Article VIII.E</u> as a defense or the basis for a claim or Cause of Action in its own name (whether directly or derivatively, and, whether or not in the capacity as a subrogee, assignee, or successor to an Exculpated Party, except to the extent that such relation renders such Person or Entity an Exculpated Party in its own right).  For the avoidance of doubt, nothing in this Plan or the Confirmation Order shall operate as a release of, and the Debtors shall not release, Claims or Causes of Action against any Exculpated Parties or any Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of any court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on this Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or Distributions made pursuant to this Plan. The Exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability.

For the avoidance of doubt, each of the Debtors, the professionals retained by the Debtors, the Committee, each of its members, and the Committee Professionals shall be Exculpated Parties and shall be exculpated for any Claims or Causes of Action associated with the formulation, preparation, dissemination, negotiation or filing, or Consummation of the Plan and the SOTP Transactions, any Definitive Document, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation of the Plan, the pursuit of consummation of the SOTP Transactions, the administration and implementation of the Plan, including the distribution of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion).

The Exculpated Parties have, and upon Consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable Laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not,

73

and on account of such distributions shall not be, liable at any time for the violation of any applicable Law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The exculpation will be in addition to, and not a limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability; *provided*, *however*, that notwithstanding anything herein to the contrary, nothing in this Plan shall affect, limit, or release in any way any performance obligations of any party or Entity under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan (including any Purchase Agreement and any documents in connection therewith).

F.    *Injunction.*

Effective as of the Effective Date, pursuant to section 524(a) of the Bankruptcy Code, to the fullest extent permissible under applicable Law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII of the Plan, released pursuant to the Debtor Release, the Third-Party Release, or another provision of the Plan (including the release of Liens pursuant to Article VIII.B of the Plan), or are subject to exculpation pursuant to Article VIII.E of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, the Plan Administrator,  the Exculpated Parties, or the Released Parties: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.  For the avoidance of doubt, nothing contained in this Plan, including this Article VIII.F, shall release, compromise, impair, or in any way affect any Assigned Claims.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Wind-Down Debtors, the Plan Administrator,  the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof, without the Bankruptcy Court (i) first

74

determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Wind-Down Debtor, Plan Administrator, Exculpated Party, or Released Party. Notwithstanding the foregoing and other than with respect to the DIP Term Loan Claim Waiver, nothing herein or in the Confirmation Order shall have the effect of releasing, discharging, or compromising any rights of any of the DIP Secured Party or their Affiliates (in any capacity) arising under, related to, or in connection with any rights, Claims, or Causes of Action in respect of the DIP Term Loan Indemnity, any other indemnification obligations, and any other similar obligations of the Debtors to the DIP Term Loan Agent and the DIP Term Loan Lenders (which rights shall be fully enforceable against the Wind-Down Debtors).

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.

For the avoidance of doubt and notwithstanding section 1141(d)(3) of the Bankruptcy Code, as of the Effective Date, except as otherwise specifically provided in the Plan and any Sale Order, all Persons or Entities who have held, hold, or may hold Claims or Interests that are treated under the Plan shall be precluded and permanently enjoined on and after the Effective Date from enforcing, pursuing, or seeking any setoff or relief with respect to such Claim or Interest from the Debtors, the Estates, the Purchasers, or the Wind-Down Debtors, except for the receipt of the payments or distributions, if any, that are contemplated by the Plan from the Wind-Down Debtors or the Disbursing Agent, as applicable, or otherwise contemplated under the applicable Sale Order(s). Such injunction will not enjoin Persons or Entities that do not consent to the Third-Party Release from pursuing any direct (but not derivative) Claims or Cause of Action such Persons or Entities may have against Released Parties other than the Debtors, the Estates, the Purchasers, or the Wind-Down Debtors (if applicable).

G.    *PBGC Release & Exculpation Carve-Out.*

In accordance with the Sale Order and the Multi-Business APA, the Multi-Business Buyer and/or its affiliates will assume the Legacy Pension Plan at the Closing Date (as defined in the Multi-Business APA), its related trust and administrative agreements and all assets and liabilities, and obligations arising under or related thereto, but excluding any breaches of fiduciary duty or violations of Law arising prior to the Closing Date. Nothing in these Chapter 11 Cases, the Disclosure Statement, the Plan, the Sale Orders, or the Confirmation Order shall be construed to discharge, release, limit, or relieve any Legacy Pension Plan fiduciary from any claim by the PBGC or the Legacy Pension Plan for breach of any fiduciary duty under ERISA, with respect to the Legacy Pension Plan, subject to any and all applicable rights and defenses of the Debtors, which are expressly preserved. For the avoidance of doubt, the Multi-Business Buyer and/or its affiliates are not successors to the Debtors or their assets in connection with the Legacy Pension Plan and will not assume any or all liabilities or obligations arising under or related to any breaches of

fiduciary duty or violations of law prior to the Closing Date.  The PBGC and the Legacy Pension Plan shall not be enjoined or precluded from enforcing such fiduciary duty or related liability solely against the Debtors by any of the provisions of the Plan, Confirmation Order, Bankruptcy Code, the Sale Orders, or other document Filed in these Chapter 11 Cases. Except to the extent otherwise specifically set forth herein, and without constituting an opt-out of the Third-Party Release, or in any other agreements between the Debtors and the PBGC, the Debtors shall not be released from any liability or obligation under ERISA, the Internal Revenue Code, and any other applicable Law relating to the Legacy Pension Plan.

### H.       Preservation of Setoff Rights.

Notwithstanding anything in <u>Article VIII</u> to the contrary or in any Sale Order, any right of setoff or recoupment is preserved against the Debtors to the extent such right(s) exist under applicable Law and subject to the Debtors', right to contest any such right(s) of setoff or recoupment; *provided*, *however*, that notwithstanding the foregoing or anything in the Plan to the contrary, the right of any Entity or Holder of a Claim or Interest to assert setoff or recoupment as a defense or affirmative defense to Claims brought against them is expressly preserved to the extent permitted by applicable Law and shall not be impaired, enjoined, precluded, restricted, or otherwise limited by the Plan or the Confirmation Order.

Notwithstanding anything to the contrary herein, nothing in the Plan or the Confirmation Order shall modify the rights, if any, of any counterparty to any Executory Contract or Unexpired Lease to assert any right of setoff or recoupment that such party may have under applicable bankruptcy Law or non-bankruptcy Law, including, but not limited to, the (i) ability, if any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtors under the Plan, (ii) assertion of rights or setoff or recoupment, if any, in connection with the claim reconciliation process, or (iii) assertion of setoff or recoupment as a defense, if any, to any Claim or action by the Debtors or the Wind-Down Debtors.

### I.       Protections Against Discriminatory Treatment.

To the maximum extent provided by section 525 of the Bankruptcy Code and the supremacy clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### J.       Document Retention.

On and after the Effective Date the Wind-Down Debtors, as applicable, may maintain documents in accordance with the Debtors' standard document retention policy, as may be altered, amended, modified, or supplemented by the Wind-Down Debtors, or in connection with the terms of the SOTP Transaction Documents and the Sale Orders.

*K.    Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged, notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

*L.    Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect on and following the Effective Date in accordance with their terms.

*M.    Subordination Rights.*

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Interest may have against other Claim or Interest Holders with respect to any distribution made pursuant to the Plan.  Except as provided in the Plan, all subordination rights that a Holder of a Claim may have with respect to any distribution to be made pursuant to the Plan shall be terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies relating to the subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or any distribution to be made pursuant to the Plan on account of any Allowed Claim.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, the Estates, their respective property, and Holders of Claims and Interests and is fair, equitable, and reasonable.

*N.    Integral Part of Plan.*

Each of the provisions set forth in this Plan (including the terms of the Settlement implemented hereunder) and the Settlement Order with respect to the settlement, release, cancellation, exculpation, injunction, indemnification and insurance of, for or with respect to Claims and/or Causes of Action is an integral part of this Plan and essential to its implementation. Accordingly, each Entity that is a beneficiary of such provision shall have the right to

independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

## ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

*A.     Conditions Precedent to Confirmation.*

Unless satisfied or waived pursuant to the provisions of Article IX.C hereof, the following are conditions precedent to Confirmation of this Plan:

1.     the Disclosure Statement Order shall have been entered by the Bankruptcy Court in form and substance reasonably acceptable to the Debtors and the Ad Hoc Group, and shall not have been vacated, amended, otherwise modified, or made subject to a stay pending appeal;

2.     the RSA shall not have been terminated and shall be in full force and effect and binding on all parties thereto as of the Confirmation Date;

3.     the Confirmation Order to be entered or entered by the Bankruptcy Court shall be in form and substance reasonably acceptable to the Debtors and the Ad Hoc Group, and shall contain terms and conditions consistent in all material respects with the Settlement; and

4.     the DIP Credit Agreements shall be in full force and effect, no termination event or event that would give rise to a termination event under the DIP Term Loan Credit Agreement upon the expiration of the applicable grace period shall have occurred, and the DIP Term Loan Credit Agreement shall not have been validly terminated prior to the Confirmation Date.

*B.     Conditions Precedent to the Effective Date.*

Unless satisfied or waived pursuant to the provisions of Article IX.C hereof, the following shall be a condition to the occurrence of the Effective Date:

1.     all conditions precedent to Confirmation as set forth in Article IX.B above shall have been satisfied or otherwise waived pursuant to the provisions of Article IX.C hereof;

2.     the Plan shall be in form and substance consistent with the consent rights in the RSA and the terms of the Settlement;

3.     the Confirmation Order shall have been entered by the Bankruptcy Court and contain terms and conditions consistent in all material respects with the Settlement, and shall otherwise be in form and substance reasonably acceptable to the Debtors and the Ad Hoc Group, and shall not have been vacated, amended, otherwise modified, or made subject to a stay pending appeal;

4.     the DIP Credit Agreements shall be in full force and effect, no termination event or event that would give rise to a termination event under the DIP Term Loan Credit Agreement upon the expiration of the applicable grace period shall have occurred, and the DIP Term Loan Credit Agreement shall not have been validly terminated prior to the Effective Date;

5.      the Releases as described herein shall have been approved pursuant to the Settlement Order, and incorporated into and approved by the Confirmation Order, as applicable;

6.      the closing of each of the SOTP Transactions shall have occurred, no termination event or event that would give rise to a termination event under the SOTP Transaction Documents upon the expiration of the applicable grace period shall have occurred, and the Purchase Agreements shall not have been validly terminated prior to the Effective Date;

7.      all documents necessary to consummate this Plan shall have been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred) contained therein shall have been satisfied or waived in accordance therewith and in accordance with any applicable consent rights set forth in this Plan;

8.      the Debtors shall have obtained all requisite governmental, regulatory and third-party authorizations, consents, and regulatory approvals, rulings, and documents that are necessary to implement and effectuate the Plan and the SOTP Transactions;

9.      the Plan Administrator Reserve shall have been created and funded in full in Cash in accordance with the Wind-Down Budget, including the Wind-Down Account in an amount equal to the Wind-Down Reserve Amount, the GUC Recovery Reserve using the GUC Recovery Contribution, and the Professional Fee Escrow Account in an amount equal to the Professional Fee Escrow Amount;

10.     all Professional Fee Claims of Professionals required to be approved by the Bankruptcy Court (including for the avoidance of doubt all professional fees and other amounts required to be paid pursuant to the RSA) shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval by the Bankruptcy Court;

11.     all accrued and unpaid fees of the Ad Hoc Group Advisors, the DIP Term Loan Agent, and the DIP Term Loan Secured Parties (including a reasonable estimate for go-forward fees and expenses) shall be paid on or prior to the Effective Date;

12.     the Plan Supplement, the Definitive Documents, this Plan, and all schedules, documents, and exhibits thereto shall have become effective and shall be in full force and effect and shall in all respects be consistent with the RSA;

13.     the Definitive Documents, including all schedules, documents, and exhibits contained in the Plan Supplement, shall (i) be consistent with the RSA, (ii) have been executed (or deemed executed) and delivered by each party thereto, and any conditions precedent related thereto shall have been satisfied or waived by the applicable party or parties, and (iii) be adopted on terms consistent with the RSA and the Settlement, as applicable;

14.     the Plan Administration Agreement shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation thereof shall have been waived or satisfied in accordance with the terms thereof;

15.    the Settlement has been implemented pursuant to the terms of the Plan;

16.    the Plan Supplement, including the Wind-Down Budget, reserve mechanics, and distribution provisions implementing this Plan shall be consistent with the Settlement and the Waterfall Recovery; and

17.    an order shall have been entered in the Intercreditor Adversary Proceeding determining that the relief requested shall have been denied or substantively resolved, or that each of the claims and causes of action therein shall have been dismissed.

### C.    *Waiver of Conditions.*

Subject to and without limiting the rights of each party under the DIP Orders or the Sale Orders, as applicable, the conditions to Confirmation and to the Effective Date set forth in Article IX.A and Article IX.B (each of which may not be waived without the consent of the Ad Hoc Group and of the parties affected directly thereby), respectively, may be waived by the Debtors without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan; *provided that*, the conditions in Article IX.B.10 or Article IX.B.11 may not be waived without the consent of the affected Professionals; *provided further that*, to the extent any condition in Article IX.A and Article IX.B materially and adversely impacts distributions to Holders on account of Allowed General Unsecured Claims or implementation of the Settlement relating to treatment of General Unsecured Claims, any waiver shall require the consent of the Committee.

### D.    *Effect of Failure of Conditions.*

If the Effective Date of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect; *provided* that all provisions of the RSA that survive termination thereof shall remain in effect in accordance with the terms thereof.

### E.    *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.    *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors, with the consent of the Ad Hoc Group, (i) reserve the right to modify the Plan, whether such modification is material or immaterial; (ii) seek Confirmation consistent with the Bankruptcy Code; and (iii), as appropriate, not re-solicit votes on such modified Plan; *provided that*, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, may not modify or amend the Plan in any way that would

modify, alter, or otherwise affect the terms of the Settlement, including, without limitation, the economic and treatment provisions thereof, without the prior written consent of each of the affected Settlement Parties. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors, subject to the consent rights of the Ad Hoc Group under the RSA and the consent rights of the Committee under the Settlement and this Plan, expressly reserve their respective rights to revoke or withdraw, alter, amend, or modify the Plan with respect to each Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. For the avoidance of doubt, the Wind-Down Debtors or the Plan Administrator may not amend, alter, or otherwise modify the Plan, including provisions governing treatment, if such amendment, alteration, or modification would be inconsistent with the terms of the Settlement unless so agreed by the affected Settlement Parties.

B.      *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan.*

The Debtors reserve the right, with the consent of the Ad Hoc Group and in consultation with the Committee, to revoke or withdraw the Plan before the Confirmation Date and to File subsequent plans, in each case subject to any applicable consent rights as set forth in the RSA. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan and the conditional approval of the Disclosure Statement, including the approval of the procedures by which acceptances and rejections of the Plan were solicited, shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests, or the fixing or limiting of the recovery to which the Holders of such Claims were entitled under the Plan), and any assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims, Causes of Action, or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, or any other Entity.

## ARTICLE XI. RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and all Entities with respect to all

matters related to the Chapter 11 Cases, the Debtors, and this Plan as legally permissible pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.       subject to Article VIII of this Plan, Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or Allowance of Claims or Interests;

2.       decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.       resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Costs pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed (or assumed and assigned); (c) the Wind-Down Debtors, amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed (or assumed and assigned), rejected, or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.       grant any consensual request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

5.       ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

6.       adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

7.       adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.       enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.       enforce the terms and conditions of this Plan, the Confirmation Order, and the Definitive Documents and maintain the integrity of this Plan following Consummation;

10.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

82

11.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII hereof, and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

14.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any Assigned Claims;

15.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI hereof;

16.     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

17.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

18.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

19.     enter an order concluding or closing the Chapter 11 Cases;

20.     adjudicate any and all disputes arising from or relating to distributions under the Plan;

21.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

22.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

23.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under any agreements, documents, or instruments executed in connection with the Plan;

24.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

25.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, or releases granted in the Plan, including under <u>Article VIII</u> hereof;

26.     enforce all orders entered by the Bankruptcy Court in the Chapter 11 Cases; and

27.     hear any other matter related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code.

## ARTICLE XII. MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and any  Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to any Executory Contracts and Unexpired Leases with the Debtors.

B.     *Additional Documents.*

On or before the Effective Date, subject to the terms of this Plan, the Debtors may File with the Bankruptcy Court any agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Wind-Down Debtors, as applicable, all Holders receiving distributions pursuant to the Plan, and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Payment of Statutory Fees.*

All fees due and payable pursuant to section 1930(a) of the Judicial Code prior to the Effective Date, including fees and expenses payable to the U.S. Trustee, shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Wind-Down Debtors shall pay any and all such fees for each quarter (including any fraction thereof) and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each and every one of the Debtors shall remain obligated to pay quarterly fees to the U.S. Trustee and File quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

D.     *Statutory Committees and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee shall dissolve automatically, and all members thereof and all Professionals retained thereby shall be released and discharged from all rights, duties, responsibilities, and liabilities arising on or prior to the Effective Date, from, or related to, the

Chapter 11 Cases and under the Bankruptcy Code; *provided* that the Committee will remain in place after the Effective Date solely for the purposes solely for the following limited purposes and solely in accordance with the Committee's statutory and fiduciary duties given the facts and circumstances of these Chapter 11 Cases: (a) pursuing requests and the allowance of Professional Fee Claims and final fee applications Filed by Committee Professionals pursuant to sections 330 and 331 of the Bankruptcy Code in accordance with <u>Article II.C</u> hereof, and (b) any appeals of the Confirmation Order or any other appeal or pending adversary proceeding to which the Committee is a party.  The Wind-Down Debtors shall no longer be responsible for paying any fees or expenses incurred by the Committee Professionals or the members of the Committee after the Effective Date, except for any fees and expenses incurred in connection with the activities described in the foregoing sentence, and in all cases subject to and in accordance with the terms of the Settlement.

> E.      *Rights of Purchasers under a Sale Order.*

Nothing contained in the Plan or the Confirmation Order constitutes, or shall be construed as, any modification or amendment of the rights or obligations of the Purchasers under any Sale Order.

> F.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement, shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

> G.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

> H.      *Notices.*

All pleadings, notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> 1.      if to the Debtors, to:
>
>> Del Monte Foods Corporation II, Inc.
>> 205 N. Widget Lane
>> Walnut Creek, CA 94598

Attention: Greg Longstreet, Chief Executive Officer, and
William R. Sawyers, General Counsel

Email addresses: Greg.Longstreet@DelMonte.com; William.Sawyers@DelMonte.com

*with copies to:*

Herbert Smith Freehills Kramer (US) LLP
1177 Avenue of the Americas
New York, New York 10037

Attention: Adam C. Rogoff, Rachael L. Ringer,
Megan M. Wasson, Ashland J. Bernard

Email addresses: Adam.Rogoff@HSFKramer.com;
Rachael.Ringer@HSFKramer.com;
Megan.Wasson@HSFKramer.com;
Ashland.Bernard@HSFKramer.com

2. if to a member of the Ad Hoc Group or a Consenting Lender, to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166

Attention: Scott J. Greenberg, Jason Zachary Goldstein, Francis Petrie

Email addresses: sgreenberg@gibsondunn.com;
jgoldstein@gibsondunn.com;
fpetrie@gibsondunn.com

3. if to the Committee, to:

Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019

Attention: Lorenzo Marinuzzi, Oksana Lashko, Theresa A. Foudy,
Raff Ferraioli, and Darren Smolarski

Email addresses: lmarinuzzi@mofo.com; olashko@mofo.com;
tfoudy@mofo.com; rferraioli@mofo.com;
dsmolarski@mofo.com

After the Effective Date, the Wind-Down Debtors, as applicable, may notify any Entity that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

I.      *Entire Agreement.*

Except as otherwise indicated (including with respect to the SOTP Transaction Documents and the Sale Orders), the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan. If the Effective Date does not occur, nothing herein shall be construed as a waiver by any party in interest of any or all of such party's rights, remedies, Claims, and defenses, and such parties expressly reserve any and all of their respective rights, remedies, Claims, and defenses. This Plan and the documents comprising the Plan Supplement, including any drafts thereof (and any discussions, correspondence, or negotiations regarding any of the foregoing), shall in no event be construed as or deemed to be evidence of an admission or concession on the part of any party in interest of any Claim, fault, liability, or damages whatsoever. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, all negotiations, discussions, agreements, settlements, and compromises reflected in or related to Plan, and the documents comprising the Plan Supplement, are part of a proposed settlement of matters that could otherwise be the subject of litigation among various parties in interest, and such negotiations, discussions, agreements, settlements, and compromises shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of the Plan and the documents comprising the Plan Supplement.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After such exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.stretto.com/DelMonteFoods or the Bankruptcy Court's website at www.njb.uscourts.gov.

K.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms, (2) integral to the Plan and may not be deleted or modified without the Debtors' and the Purchasers' consent, and (3) nonseverable and mutually dependent.

87

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith in the solicitation of votes on the Plan, and, therefore, no such parties will have any liability for the violation of any applicable Law, rule, or regulation governing the solicitation of votes on the Plan.

M.      *Waiver or Estoppel.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or with any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or any papers Filed with the Bankruptcy Court prior to the Confirmation Date.

N.      *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, any Plan Supplement, the Sale Orders, or any other order (other than the Confirmation Order and the Settlement Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

[*Remainder of Page Intentionally Left Blank*]

Dated:  March 16, 2026

DEL MONTE FOODS CORPORATION II INC.
on behalf of itself and all other Debtors


/s/ Jonathan Goulding

Jonathan Goulding
Chief Restructuring Officer

89