**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

John W. Weiss
Leah M. Eisenberg
David E. Sklar
Amy M. Oden
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 07601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
        leisenberg@pashmanstein.com
        dsklar@pashmanstein.com
        aoden@pashmanstein.com

*Attorneys for Certain Members of the Ad Hoc Group of Minority Secured Lenders that Are Litigation Plaintiffs in the Adversary Proceeding Bearing No. 26-01018*

Chapter 11

Case Number: 25-16984 (MBK)

Jointly Administered

In re:

Del Monte Foods Corporation II, Inc., *et al.*,

Debtors.[1]

**Re. D.I.: 1229,1334, 1336, 1427, and 1469**

**Hearing Date: May 12, 2026 at 10:00 am ET**
**Obj. Deadline: April 28, 2026 at 4:00 pm ET**

**MINORITY AD HOC GROUP
LITIGATION PLAINTIFFS' OBJECTION AND RESERVATION
OF RIGHTS WITH RESPECT TO THE FIRST AMENDED JOINT CHAPTER 11 PLAN
OF DEL MONTE FOODS CORPORATION II INC. AND ITS DEBTOR AFFILIATE**

---

[1]   The last four digits of Debtor Del Monte Foods Corporation II Inc.'s tax identification number are 1894. A complete list of the Debtors in these Chapter 11 Cases and their respective tax identification numbers may be obtained on the website of the Debtors' Claims and Noticing Agent, at https://cases.stretto.com/DelMonteFoods. The location of the Debtor Del Monte Foods Corporation II Inc.'s principal place of business and the Debtors' service address is 205 North Wiget Lane, Walnut Creek, California 94598.

**TABLE OF CONTENTS**

Preliminary Statement.................................................................................................................... 1
BACKGROUND ............................................................................................................................. 3
   A.  The Plan and Disclosure Statement ..................................................................................... 3
   B.  Relevant Plan and Plan Supplement Provisions ................................................................. 4
   C.  Adversary Proceeding........................................................................................................... 7
OBJECTION.................................................................................................................................... 8
   I.   The Plan Is Not Feasible ..................................................................................................... 8
   II.  The Plan Purports to Obtain Impermissible Third-Party Releases and Injunctions ......... 10
RESERVATION OF RIGHTS .......................................................................................................11
CONCLUSION................................................................................................................................ 12

Page(s)

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Harrington v. Purdue Pharma L.P.*,
    603 U.S. 204 (2024)..............................................................................................................10, 11
*In re Am. Cap. Equipment, LLC*,
    688 F.3d 145 (3d Cir. 2012) ...................................................................................................8, 9, 11
*In re Phoenix Petroleum Co.*,
    278 B.R. 385 (Bankr. E.D. Pa. 2001)......................................................................................9, 11

Certain Members of the Ad Hoc Group of Minority Secured Lenders that are litigation plaintiffs (in such capacity, the "Minority Ad Hoc Group Litigation Plaintiffs") in the adversary proceeding bearing No. 26-01018 (the "Adversary Proceeding") filed against members of the Ad Hoc Term Lender Group (the "Majority Ad Hoc Group"), the subject matter of which is a dispute between two non-Debtor parties concerning provisions of the Super-Senior Term Loans (as defined below), by and through its undersigned counsel, hereby respectfully submit the following objection and reservation of rights (the "Objection") to the *First Amended Joint Chapter 11 Plan of Reorganization of Del Monte Foods Corporation II, Inc. and its Debtor Affiliates* [Docket No. 1336] (as amended, modified, or supplemented from time to time, the "Plan").[2]   In support of this Objection, the Minority Ad Hoc Group Litigation Plaintiffs[3] respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The Plan seeks to improperly use the confirmation process to put its thumb on the scale with respect to a pending litigation involving a contractual dispute between two non-Debtor parties.  Despite the fact that the Minority Ad Hoc Group Litigation Plaintiffs did not include the Debtors as a Defendant to the Adversary Proceeding, and seek no remedy against the Debtors in the Adversary Proceeding, the Debtors nevertheless made the Plan expressly conditional on a resolution of the Adversary Proceeding.

---

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[3]     For the avoidance of doubt, Pashman Stein Walder Hayden P.C. ("Pashman") files this Objection on behalf of the Minority Ad Hoc Group Litigation Plaintiffs solely in their capacity as plaintiffs in the Adversary Proceeding. The Minority Ad Hoc Group Litigation Plaintiffs are members of the Minority Ad Hoc Group, which group is jointly represented in the Chapter 11 Cases by Dechert LLP ("Dechert") and Pashman.  Pashman is serving as conflicts counsel to the Minority Ad Hoc Group in connection with the Adversary Proceeding.  The objections and reservation of rights contained herein are asserted in addition to and without prejudice to any objections to confirmation of the Plan filed on behalf of the Minority Ad Hoc Group or any of its members in any other capacity. Nothing herein shall be construed to limit or adversely impact the rights of the Minority Ad Hoc Group or any member thereof in any of their respective capacities in connection with confirmation of the Plan or otherwise.

2.        Furthermore, the Plan includes broad release and exculpation language that raises concerns that it could later be argued that such language in some way releases and/or enjoins the Adversary Proceeding without the consent of the Minority Ad Hoc Group Litigation Plaintiffs in violation of binding United States Supreme Court on nonconsensual third-party releases, and also in violation of the terms and spirit of the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Granting Related Relief* [Docket No. 359] (the "Final DIP Order").

3.        The Minority Ad Hoc Group Litigation Plaintiffs have attempted on several occasions to consensually resolve these concerns with Debtors by proposing that clarifying language be added to the Confirmation Order consistent with what the Debtors have represented is their intent with respect to the Adversary Proceeding and the claims and causes of action asserted therein, including most recently the following proposed language:

> Nothing in the Disclosure Statement, the Plan, Plan Supplements (as amended and supplemented from time to time), any Definitive Documents (each as defined in the *Joint Chapter 11 Plan of Del Monte Foods Corporation II Inc. and Its Debtor Affiliates* filed in these cases at Docket No. 1229), this Confirmation Order, or any other documents now or hereinafter arising from or relating to any of the foregoing (as may be amended, modified or restated from time to time), shall waive, release or otherwise impact any claims or causes of action preserved in paragraph 40 of the Final DIP Order, or those included in Adversary Proceeding Number 26-01018 captioned Certain Members of the Ad Hoc Group of Minority Secured Lenders v. Members of the Ad Hoc Term Lender Group.

To date, the Debtors have not agreed to include this or any similar language in the Confirmation Order to resolve this issue.[4]

---

[4]    The language in paragraph 35 of the Proposed Confirmation Order (as defined below) that mentions the Minority Ad Hoc Group does not even mention the Adversary Proceeding or the Minority Ad Hoc Group Litigation Plaintiffs.  This paragraph does not resolve the Minority Ad Hoc Group Litigation Plaintiffs' objections.

4.     The Minority Ad Hoc Litigation Plaintiffs will continue to work with the Debtors in good faith in an effort to resolve their concerns with the Plan without the need for further unnecessary litigation and expense, but in the event agreement cannot be reached, the Minority Ad Hoc Litigation Plaintiffs would respectfully request that this Court order that (i) the condition precedent relating to the Adversary Proceeding be removed from the Plan, and (ii) the above proposed language be added to the Confirmation Order to ensure that the Adversary Proceeding is preserved and not in any way affected by the Plan and related Plan Documents.

## BACKGROUND

**A.     The Plan and Disclosure Statement[5]**

5.     On February 25, 2026, the Debtors filed the initial Plan [Docket No. 1229] (the "Initial Plan") and the *Disclosure Statement to the Joint Chapter 11 Plan of Del Monte Foods Corporation II Inc. and its Debtor Affiliates* [Docket No. 1230] (the "Initial Disclosure Statement" and as amended, modified, or supplemented from time to time, the "Disclosure Statement") that the Minority Ad Hoc Group Litigation Plaintiffs objected to the relief sought therein [Docket No. 1271].

6.     On March 18, 2026, the Court held a hearing to consider conditional approval of the Disclosure Statement (the "Disclosure Statement Hearing").

7.     In granting interim approval of the Disclosure Statement, this Court noted that:

Now, there have been significant issues raised by the disclosure statement objections. And yes, I do view the bulk of these to be confirmation issues. But these issues have been raised, and they are concerning; classification, voting rights, the impact on cram-down requirements, unfair discrimination, the impact of the plan on pending third-party litigation, the scope of the releases and the exculpations… These are all significant issues, but they have the tenor of being confirmation issues.

Ex. A to Sklar Cert. at 69:1–9.

---

[5]     In an effort to avoid repetition, the Minority Ad Hoc Group Litigation Plaintiffs hereby refer and incorporate the case background more fully set forth in their Disclosure Statement Objection [Docket No. 1270¶¶ 3–12].

3

8.      On March 19, 2026, this Court entered the *Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice, and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [Docket No. 1334] (the "Solicitation Procedures Order").  Among other things, the Solicitation Procedures Order approved the Disclosure Statement on an interim basis, with approval on a final basis to be considered by the Court at the Combined Hearing.

9.      On March 19, 2026, the Debtors filed the solicitation versions of the Plan [Docket No. 1336] and Disclosure Statement [Docket No. 1337].

10.     On April 13, 2026, the Debtors filed the Plan Supplement [Docket No. 1427], which contained, among other things, the Schedule of Retained Causes of Action (Ex. D) and the Plan Administrator Agreement (Ex. G).

11.     On April 25, 2026, the Debtors filed the *Notice of Filing of Proposed Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement and (II) Confirming the Joint Chapter 11 Plan of Del Monte Foods Corporation II Inc. and its Debtor Affiliates* [Docket No. 1469] (the "Proposed Confirmation Order").

**B.      Relevant Plan and Plan Supplement Provisions**

12.     The Plan includes the following relevant definitions for purposes of this Objection:

(a)     "*DIP Term Loan Indemnity*" means the go-forward indemnity for the benefit of the DIP Lenders and their Affiliates and Related Parties due and payable under each of (a) the DIP Term Loan Credit Agreement and (b) the Super-Senior Credit Agreement, which shall be payable from and have sole recourse to the proceeds of the Other Excluded Assets and the Excluded Real Estate. *See* Plan Art. I(A)(73); *see also* Plan Art. II(e)(3)(E); VIII(B).

(b)     "*Excluded Real Estate*" means the Debtors' fee-owned real property interests (and, as applicable, related fixtures and appurtenances), and/or the proceeds of leases or subleases assumed by the Debtors

4

pursuant to that certain Order Authorizing the Debtors to Assume Real Property Lease and Sublease [Docket No. 1207], as set forth in the Schedule of Excluded Real Estate, that are not Purchased Assets, which disposition shall be consistent with the Settlement. *See* Plan Art. I(A)(98).

(c)     "*Other Excluded Assets*" means the assets of the Debtors, if any, that are not Purchased Assets, other than (a) the Excluded Real Estate and (b) any Causes of Action released under the Settlement Order and pursuant to this Plan. *See* Plan Art. I(A)(131).

(d)     "*Released Party*" means, collectively, in each case in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the Releasing Parties (except with respect to any Retained Causes of Action); (d) the Prepetition Agents; (e) the Prepetition ABL Secured Parties; (f) the DIP Secured Parties; (g) each of the Consenting Lenders (as defined in the RSA, including the Ad Hoc Group and each of its members); (h) the Committee and each member of the Committee (solely in its capacity as such); (i) DMPL; (j) the Plan Administrator; (k) Black Diamond Capital Management LLC; (l) Holders of the DMFI 2022 Term Loan; (m) each current and former Affiliate of each Entity in clauses (a) through (l); and (n) with respect to the foregoing clauses (a) through (l), each such Entity's Related Parties, each in their capacity as such; *provided that* "Released Party" shall not include the Minority Lender Ad Hoc Group or the members of such group as identified in the *Verified Statement of the Ad Hoc Group of Minority Secured Lenders, Pursuant to Bankruptcy Rule 2019* [Docket No. 295]. *See* Plan Art. I(A)(168).

(e)     "*Releasing Party*" means collectively, in each case solely in its capacity as such: (a) the Debtors; (b) the Wind-Down Debtors; (c) the Prepetition Agents; (d) the Prepetition ABL Secured Parties, (e) the DIP Secured Parties; (f) each of the Consenting Lenders (as defined in the RSA, including the Ad Hoc Group and each of its members); (g) the Committee and each member of the Committee (solely in its capacity as such); (h) DMPL; (i) the Plan Administrator; (j) Black Diamond Capital Management LLC; (k) all Holders of Claims that are deemed to accept the Plan and who do not affirmatively opt out of the releases provided by the Plan; (l) all Holders of Claims who abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan; (m) all Holders of Claims who vote to reject the Plan and who do not affirmatively opt out of the releases provided by the Plan; (n) each current and former Affiliate of each Entity in clauses (a) through (j); and (o) each Related Party of each Entity in clauses (a) through (j). *See* Plan Art. I(A)(169).

5

13.     The Plan provides extremely broad releases for the Debtors, their Estates, the Wind-Down Debtors, and Released Parties, including all claims based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the August 2024 Transactions, the incurrence of the Super-Senior Term Loans, the negotiation, formulation, documentation, preparation, or consummation of the RSA, the SOTP Transactions, the Prepetition ABL Loan Documents, the Super-Senior Documents, the DIP Documents, and the DIP Orders. Plan Art. VIII(C)–(D).

14.     Furthermore, the Plan also contains extremely broad exculpation and injunction provisions (Articles VIII(E) and (F), respectively), including the following provision:

> Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.

Plan Art. VIII(F).

15.     The Plan also contains an improper condition precedent to the Effective Date of the Plan requiring that "an order shall have been entered in the Intercreditor Adversary Proceeding determining that the relief requested shall have been denied or substantively resolved, or that each of the claims and causes of action therein shall have been dismissed" (despite the fact that the Adversary Proceeding involves a contractual dispute between the Minority Ad Hoc Litigation Plaintiffs and the Majority Ad Hoc Group, and does not involve any claims or causes of action against the Debtors). *See* Plan Art. IX(B)(17).

16.     On April 13, 2026, the Debtors filed a *Notice of Filing of Initial Plan Supplement* [Docket No. 1427] enclosing a plan supplement to the Plan (the "Plan Supplement").

17.     The Schedule of Retained Causes of Action in the Plan Supplement provides:

6

> Unless otherwise released, waived, or transferred pursuant to the Plan, the Purchase Agreements, the Sale Orders, or the Settlement, as applicable, the Debtors and the Wind-Down Debtors expressly reserve and retain all Causes of Action against any party that is not a Released Party, including, without limitation, all Causes of Action against the Minority Lender Ad Hoc Group and its members in their capacity as such as identified in the *Verified Statement of the Ad Hoc Group of Minority Secured Lenders, Pursuant to Bankruptcy Rule 2019* [Docket No. 295].

Plan Supp. Ex. D § 9.

18.     Pursuant to the Plan and the Plan Administrator Agreement, the Plan Administrator is authorized to bring any such preserved causes of action against the Minority Lender Ad Hoc Group and its members on behalf of the Wind-Down Debtors.  *See* Plan Art. IV(K); Plan Supp. Ex. G §§ 3.1(xiv), (xvii); 3.2.

**C.     Adversary Proceeding**

19.     On January 23, 2026, in accordance with the reservation of rights in the Final DIP Order, the Minority Ad Hoc Group Litigation Plaintiffs, a subset of the Minority Ad Hoc Group, filed the Adversary Proceeding against solely the Majority Ad Hoc Group.  The Adversary Proceeding is focused in large part on Section 2.17 of the Super-Senior Credit Facility that requires pro rata sharing among the lenders.

20.     The Adversary Proceeding is solely related to disputes regarding the Super-Senior Credit Facility between the Minority Ad Hoc Group Litigation Plaintiffs and the Majority Ad Hoc Group.  The claims and causes of action in the Adversary Proceeding are not asserted against the Debtors, and do not implicate the Debtors in any direct fashion.  For these reasons, the Minority Ad Hoc Group Litigation Plaintiffs did not include the Debtors as a party to the Adversary Proceeding.

21.     On February 5, 2026, the Majority Ad Hoc Group filed a motion to dismiss the Adversary Proceeding [Adv. Docket No. 5] (the "Motion to Dismiss").

7

22.    On March 11, 2026, the Minority Ad Hoc Litigation Plaintiffs filed an opposition to the Motion to Dismiss [Adv. Docket No. 12].

23.    On March 16, 2026, the Debtors filed *The Debtors' Motion to Intervene in Adversary Proceeding* [Adv. Docket No. 16] (the "Motion to Intervene").

24.    On March 18, 2026, the Court held a hearing on the Motion to Dismiss.

25.    On April 6, 2026, the Minority Ad Hoc Litigation Plaintiffs filed the *Plaintiffs Certain Members of the Ad Hoc Group of Minority Secured Lenders' Response to Debtors' Motion to Intervene* [Adv. Docket No. 23].

26.    On April 10, 2026, the Debtors filed *The Debtors' Reply in Support of Their Motion to Intervene in Adversary Proceeding* [Adv. Docket No. 25].

27.    On April 15, 2026, this Court entered an order [Adv. Docket No. 27] granting the Motion to Intervene.

28.    On April 16, 2026, the Debtors filed a joinder to the Motion to Dismiss [Adv. Docket No. 28].

29.    As of the filing of this Objection, the Motion to Dismiss remains pending before this Court.

**OBJECTION**

**I.    The Plan Is Not Feasible**

30.    The Third Circuit has found that "[a] plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely." *In re Am. Cap. Equipment, LLC*, 688 F.3d 145, 156 (3d Cir. 2012).

31.    Here, the Debtors have purported to make success of the Plan expressly (and seemingly unnecessarily) contingent on the outcome of the Adversary Proceeding, which is in its infancy and premised on the Minority Ad Hoc Group Litigation Plaintiffs enforcing their

8

contractual rights against the Majority Ad Hoc Group.    Therefore, the Plan as proposed is unconfirmable as a matter of law pursuant to binding Third Circuit precedent.  *See id* at 154–56; Plan Art. IX(B)(17).

32.    Furthermore, the inclusion of this condition precedent to the Plan going effective when there are no claims or causes of action asserted in the Adversary Proceeding against the Debtors is nothing but a transparent and inappropriate effort by the Debtors to put their thumb on the scale with this Court in the adjudication of the Adversary Proceeding for the benefit of the Majority Ad Hoc Group.    Tying effectiveness of the Plan to the outcome of the Adversary Proceeding raises serious questions about the feasibility of the Debtors' reorganization efforts, whether it is appropriate for these cases to remain in chapter 11, and whether the Debtors are acting independently from the Majority Ad Hoc Group (as they should be).

33.    Although it is not clear in the subject Plan provision, to the extent that the Debtors' concern is over indemnification obligations that they may owe to the Majority Ad Hoc Group, those indemnification obligations were created in the Final DIP Order, which also preserved the Minority Ad Hoc Group Litigation Plaintiffs' right to bring the Adversary Proceeding.  As such, the Debtors, at a minimum, knew or should have known that there was a reasonable probability that the Adversary Proceeding would be brought when the Final DIP Order was entered by the Court and the Debtors' indemnity obligations to the Majority Ad Hoc Group were created. Therefore, to the extent that the Debtors indemnification obligations to the Majority Ad Hoc Group created a barrier to the Plan going effective, the Debtors knew or should have known at the time of entry of the Final DIP Order in August 2025 that their ultimate Plan was at significant risk, which would mean that the past eight months have been spent in a potentially futile chapter 11 bankruptcy proceeding that has accrued many millions of dollars in administrative fees (while

9

leaving the Debtors' DIP Financing and other secured claimants significantly impaired or receiving nothing under the Debtors' proposed Plan).

34.      Accordingly, either the condition precedent should be removed from the Plan or the Plan should not be confirmed. *See Am. Cap. Equipment*, 688 F.3d at 154–56; *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001).

**II.      The Plan Purports to Obtain Impermissible Third-Party Releases and Injunctions**

35.      Additionally, confirmation of the Plan should be denied because it contains impermissible third-party releases and injunctions unless the Adversary Proceeding is explicitly carved out from being impacted by the Plan similarly to how the Adversary Proceeding was explicitly protected by the terms of the Final DIP Order and the Sale Orders.

36.      The law with respect to the limitations on non-consensual third-party releases is clear since the United States Supreme Court held "that the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 227 (2024).

37.      The Plan contains extremely broad third-party release and injunction provisions, and purports to potentially classify the Minority Ad Hoc Group Litigation Plaintiffs as a Releasing Party, while at the same time specifically carving out the Minority Ad Hoc Group Litigation Plaintiffs from being a Released Party. *See* Plan Arts. I(A)(169) and (170); Arts. VIII(C), (D), (E), and (F).   These Plan provisions could potentially provide the Majority Ad Hoc Group with arguments that the Plan in some way releases, enjoins, or otherwise impacts  claims brought in the Adversary Proceeding.

38.      For the avoidance of doubt, the Minority Ad Hoc Group Litigation Plaintiffs do not consent to the Adversary Proceeding and the claims and causes of action asserted therein being

10

released, enjoined or otherwise impacted in any way by the Plan (a fact the Debtors were keenly aware of when drafting the Plan, given the pendency of the Adversary Proceeding and the reservation of rights language already negotiated and included in the Final DIP Order and Sale Orders in these cases).

39.    The Debtors' attempt to nevertheless potentially extinguish or affect in any way this actively pending existing litigation between two non-Debtor parties (that Debtors do not have any direct stake in and that was expressly preserved in the Final DIP Order and Sale Orders) is wholly improper and unquestionably violates United States Supreme Court binding precedent. *See Purdue Pharma*, 603 U.S. at 227.

40.    As a result, this Court should require the Debtors to make explicitly clear that the Adversary Proceeding and all claims and causes of action asserted therein are not released, enjoined, or otherwise impacted in any manner by the Plan (by including in the Confirmation Order the language proposed above by the Minority Ad Hoc Group Litigation Plaintiffs, or similar language in form and substance acceptable to the Minority Ad Hoc Group Litigation Plaintiffs), as the Minority Ad Hoc Group Litigation Plaintiffs have repeatedly requested of the Debtors to no avail. Otherwise, the Plan is unconfirmable as a matter of law. *See id*; *see also Am. Cap. Equipment*, 688 F.3d at 154; *Phoenix Petroleum Co.*, 278 B.R. at 394.

## RESERVATION OF RIGHTS

41.    The Minority Ad Hoc Group Litigation Plaintiffs reserve all of their rights in connection with the Plan, the other Plan Documents, and any proposed order confirming the Plan. This Objection is submitted without prejudice to, and with a full reservation of, the Minority Ad Hoc Group Litigation Plaintiffs' rights to supplement or amend this Objection in advance of, or in connection with, the Combined Hearing, and to assert similar or additional objections to confirmation of the Plan. Nothing herein is intended to be a waiver by the Minority Ad Hoc Group

Litigation Plaintiffs of any rights, objections, arguments, claims, or defenses with respect to any matter, including matters involving the Plan (or any amendments thereto), all of which are hereby expressly reserved.

42.     The objections and reservation of rights contained herein are asserted in addition to and without prejudice to any objections to confirmation of the Plan, the other Plan Documents, and any proposed order confirming the Plan filed on behalf of the Minority Ad Hoc Group or any of its members in any other capacity.  Nothing herein shall be construed to limit or adversely impact the rights of the Minority Ad Hoc Group or any member thereof in any of their respective capacities in connection with confirmation of the Plan or otherwise.

## CONCLUSION

For all the foregoing reasons, the Minority Ad Hoc Group Litigation Plaintiffs respectfully request that this Court (i)(a) require modification of the Plan and Confirmation Order as set forth herein, or (b) deny confirmation of the Plan, and (ii) grant the Minority Ad Hoc Group Litigation Plaintiffs such other and further relief as the Court may deem proper.

Dated:  April 28, 2026

Respectfully submitted,

By: /s/ John W. Weiss
John W. Weiss
Leah M. Eisenberg
David E. Sklar
Amy M. Oden
**PASHMAN STEIN WALDER HAYDEN, P.C.**
21 Main Street, Suite 200
Hackensack, New Jersey 97601
Telephone: (201) 270-5477
Email: jweiss@pashmanstein.com
        leisenberg@pashmanstein.com
        dsklar@pashmanstein.com
        aoden@pashmanstein.com

*Attorneys for Certain Members of the Ad Hoc
Group of Minority Secured Lenders that Are
Litigation Plaintiffs in the Adversary Proceeding
Bearing No. 26-01018*

13