**TYDINGS & ROSENBERG LLP**
Stephen B. Gerald (admitted *pro hac vice*)
Legal Arts Building
1225 N. King Street, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 587-6985
sgerald@tydings.com

**RIKER DANZIG LLP**
Joseph L. Schwartz, Esq.
Daniel A. Bloom, Esq.
7 Giralda Farms, Suite 250
Madison, New Jersey 07940
Telephone: (973) 538-0800
jschwartz@riker.com
dbloom@riker.com

*Co-Counsel to The J. M. Smucker
Company*

*Co-Counsel to The J. M. Smucker
Company*

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>Del Monte Foods Corporation II, Inc., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.:  25-16984 (MBK)<br><br>(Jointly Administered) |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE J. M. SMUCKER COMPANY FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 503(b)(1)(A)

The J. M. Smucker Company ("Smucker"), by and through its undersigned counsel, hereby

files this Memorandum of Law in support of its Motion for Allowance and Payment of

Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(1)(A) (the "Motion"), and in

support thereof, and states as follows.

---

[1]    The last four digits of Debtor Del Monte Foods Corporation II Inc.'s tax identification number are 1894. A complete list of the debtors in these Chapter 11 Cases (the "Debtors") and their respective tax identification numbers may be obtained on the website of the Debtors' Claims and Noticing Agent, at https://cases.stretto.com/DelMonteFoods. The location of the Debtor Del Monte Foods Corporation II Inc.'s principal place of business and the Debtors' service address is 205 North Wiget Lane, Walnut Creek, California 94598.

1

## BACKGROUND

### A.    The Unfunded Plan

1.    On October 9, 2013, Del Monte Corporation, as seller, Del Monte Foods Consumer Products, Inc. ("DMFCP"),[2] as purchaser, and Del Monte Pacific Limited ("DMPL"), as guarantor, entered into a Purchase Agreement (the "Project Bay Purchase Agreement"),[3] pursuant to which DMFCP purchased the equity interests in certain entities and assets from Del Monte Corporation. Following the consummation of the transactions contemplated by the Project Bay Purchase Agreement, Del Monte Corporation changed its name to Big Heart Pet Brands ("BHPB"), which was subsequently purchased by Smucker.

2.    Section 6.2 of the Project Bay Purchase Agreement provides, in pertinent part,[4]

(a) It is the intention of the Parties that all employment-related Liabilities associated with Business Employees and Former Business Employees, whether arising or incurred prior to, on or after the Closing Date, are to be assumed by Acquiror or one of its Affiliates, except as otherwise specifically set forth herein.

(b) Except as otherwise expressly provided in this Agreement, effective as of the Closing, Acquiror or one of its Affiliates shall assume, and none of the Company or its Affiliates shall have any further Liability with respect to, or under:

\*        \*        \*

(v) any nonqualified deferred compensation Company Plan pursuant to which any Business Employee or Former Business Employee has any legally binding rights to payments, whether vested or unvested, as of the Closing Date;

\*        \*        \*

---

[2]    Upon information and belief, DMFCP was absorbed into Debtor, Del Monte Foods, Inc.
[3]    The Project Bay Purchase Agreement is voluminous and available upon request.
[4]    For the avoidance of doubt, under the Project Bay Purchase Agreement, DMFCP is the "Acquiror" and Del Monte Corporation is the "Company."

(c) With respect to unpaid covered claims by any Business Employee or Former Business Employee under any Company Plan that provides welfare benefits or nonqualified deferred compensation, which are either incurred but not processed or that are incurred but unreported prior to the Closing Date, including claims that are self-insured and claims that are fully insured through third-party insurance, the Company or one of its Affiliates shall contine [*sic*] to be responsible for the payment for such claims. Acquiror shall reimburse the Company for its net after-tax cost of paying any such benefit that is not insured….

3.      Among the nonqualified deferred compensation "Company Plans" assumed by DMFCP pursuant to the Project Bay Purchase Agreement was an unfunded nonqualified deferred compensation obligation to former executives and their beneficiaries, as applicable, that, upon information and belief, Del Monte Corporation had assumed in connection with prior acquisitions (the "Unfunded Plan").

4.      Following Smucker's purchase of BHPB, Smucker, as successor to Del Monte Corporation, continued to administer the Unfunded Plan and to act as paying agent to pay the monthly benefits to the Unfunded Plan participants and their beneficiaries, as applicable, on DMFCP's behalf. DMFCP (and Del Monte Foods, Inc. as its successor) provided the pension registers to Smucker for this purpose.  The most current aggregate gross monthly payment paid by Smucker was approximately $5,875.00.

5.      In accordance with section 6.2 of the Project Bay Purchase Agreement, to the extent that Del Monte Foods, Inc. (as successor to DMFCP) had liabilities under the Unfunded Plan, Smucker (as successor to Del Monte Corporation) made payments to the participants or beneficiaries, and Del Monte Foods, Inc. (as successor to DMFCP) was obligated to reimburse Smucker for its net after-tax cost of paying any such benefit. Consistent with the Project Bay Purchase Agreement and the parties' past practices, Smucker would regularly submit invoices to

Del Monte Foods, Inc. for reimbursement, and Del Monte Foods, Inc. paid Smucker the invoiced amounts as reimbursement. The current net after-tax cost amounts to approximately $4,388 per month.

### B.     The Bankruptcy Case

6.      The Debtors filed voluntary chapter 11 petitions on July 1, 2025 (the "Petition Date").  Among other requests for first day relief, the Debtors filed the *Debtors' Motion for Interim and Final Orders (I) Authorizing (A) Payment of Prepetition Wages, Salaries and Related Workforce Obligations, and (B) Continuation of Benefits Programs, and (III) Granting Related Relief* [Docket No. 10] (the "Wage Motion"). The Wage Motion provided, in relevant part,

> 66. [Unfunded] Plan. In addition, the Debtors maintain an Unfunded Plan [ ] inherited from J.M. Smucker Company [ ]. As of the Petition Date, there are approximately 15 Employees who were grandfathered in and are currently participating in the [Unfunded Plan]. Smucker[ ] pays the monthly disbursements to the [Unfunded Plan] participants, and the Debtors thereafter reimburse Smucker[ ]. Based on historical averages, the Debtors pay approximately $4,700 per month in obligations under the [Unfunded Plan]. The Debtors seek authority to pay such prepetition amounts promptly and to continue to maintain the [Unfunded Plan] in the ordinary course on a postpetition basis.

Wage Motion, ¶ 66.

7.      Following Smucker's provision of informal comments to the Debtors regarding paragraph 66 of the Wage Motion, on August 13, 2025, the Court entered its *Final Order (I) Authorizing (A) Payment of Prepetition Wages, Salaries and Related Workforce Obligations, and (B) Continuation of Benefits Programs, and (III) Granting Related Relief* [Docket No. 364] (the "Wage Order").  The Wage Order revised the language in paragraph 66 of the Wage Motion, providing, in relevant part,

Paragraph 66 of the Motion is amended to read as follows:

66. [Unfunded] Plan. In addition, the Debtors maintain an Unfunded Plan [ ], the administration of which is maintained by The J.M. Smucker Company [ ], as a result of various divestiture and acquisition activity involving former Del Monte employees. As of the Petition Date, there are approximately 12 Employees who were grandfathered in and are currently receiving disbursements as participants in the [Unfunded Plan]. Smucker[ ] pays the monthly disbursements to the [Unfunded Plan] participants, and the Debtors thereafter reimburse Smucker[ ]. Based on historical averages, the Debtors pay approximately $4,700 per month in obligations under the [Unfunded Plan]. The Debtors seek authority to pay such prepetition amounts promptly and to continue to maintain the [Unfunded Plan] in the ordinary course on a postpetition basis.

Wage Order, ¶ 6.

8.    Based on the Debtors' representation in the Wage Order that they would continue to maintain the Unfunded Plan in the ordinary course of business on a post-petition basis, upon which Smucker relied, Smucker continued to administer the Unfunded Plan and to act as paying agent for the Debtors.  While the Debtors started to make reimbursement payments to Smucker in accordance with their obligation under section 6.2(c) of the Project Bay Purchase Agreement during these chapter 11 cases, the last payment received by Smucker was for the month of August 2025.  The Debtors have not made any payments to Smucker since that time despite Smucker's continued monthly payments to the Unfunded Plan participants on the Debtors' behalf through the Effective Date, hereinafter defined.  A summary of the unpaid reimbursement payments due and owing by the Debtors to Smucker is attached hereto as **Exhibit A**.

9.    On February 25, 2026, the Debtors filed the *Joint Chapter 11 Plan of Del Monte Foods Corporation II Inc. and Its Debtor Affiliates* [Docket No. 1229] (as amended, the "Plan")

5

and accompanying disclosure statement [Docket No. 1230], along with a motion seeking interim approval of that disclosure statement [Docket No. 1232].

10.     The Debtors thereafter filed an amended plan [Docket No. 1336]. Pursuant to section V.A of the first amended Plan, "[o]n the Effective Date, except as otherwise provided [t]herein, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court, will be deemed rejected in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code …."

11.     On May 4, 2026, Smucker filed *The J. M. Smucker Company's Limited Objection and Reservation of Rights with Respect to the First Amended Joint Chapter 11 Plan of Del Monte Foods Corporation II Inc. and Its Debtor Affiliates* [Docket No. 1490] (the "Smucker Plan Objection").  As set forth in the Smucker Plan Objection, both the Project Bay Purchase Agreement and the Unfunded Plan are Executory Contracts as each had material unperformed obligations on both sides as of the Petition Date. *See Spyglass Media Grp., LLC v. Bruce Cohen Prods. (In re Weinstein Co. Holdings, LLC)*, 997 F.3d 497, 504 (3d Cir. 2021) ("[An executory contract is] a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.") (citation omitted).

12.     On May 22, 2026, the Court entered its *Findings of Fact, Conclusions of Law, and Order (I) Approving the Amended Disclosure Statement and (II) Confirming the First Amended Joint Chapter 11 Plan of Del Monte Foods Corporation II Inc. and Its Debtor Affiliates* (with Technical Modifications [Docket No. 1592] (the "Confirmation Order"). The Confirmation Order provides, in pertinent part,

**Provisions Regarding Smucker**.  In connection with that certain Purchase Agreement, dated October 9, 2013, by and between Del Monte Corporation (predecessor of The J. M. Smucker Company ("**Smucker**")), Del Monte Foods Consumer Products, Inc. (predecessor of Del Monte Foods, Inc.), and DMPL (the "**Project Bay Purchase Agreement**"), the Debtors (and their predecessors) and Smucker (and its predecessor) have historically had certain rights and obligations in connection therewith and with respect to certain unfunded nonqualified deferred compensation obligations to certain former executives and their beneficiaries (as applicable) (the "**Unfunded Pension Plan**").

The Project Bay Purchase Agreement and the Unfunded Pension Plan each shall be deemed rejected pursuant to this Confirmation Order and Article V of the Plan.[5] For the avoidance of doubt, Smucker is deemed not to have given a Third-Party Release to any Released Parties, including, but not limited to DMPL, with respect to any Claims or Causes of Action, whether liquidated or unliquidated, fixed or contingent, known or unknown, foreseen or unforeseen, matured or unmatured, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, it may have in respect of: (i) the Project Bay Purchase Agreement; or (ii) the Unfunded Pension Plan. Smucker reserves all rights to assert any Claims arising with respect to the Unfunded Pension Plan or the Project Bay Purchase Agreement, including, but not limited to: (i) a request for allowance and payment of an administrative expense claim for unpaid amounts owed, if any, by the Debtors; and (ii) a rejection damages claim, and the Debtors, the Wind-Down Debtors, and the Plan Administrator, as applicable, reserve all rights to object to such request or Claim, including to assert any counterclaims or defenses available under applicable Law, without limitation.  The Debtors shall serve the Confirmation Order Notice upon the participants of the Unfunded Pension Plan,[6] with any claims arising from the rejection thereof to be filed in accordance with Article V of the Plan.

Confirmation Order, ¶¶ 40-41.

---

[5]    For the avoidance of doubt, nothing herein constitutes an admission as to the executory or non-executory nature of the Project Bay Purchase Agreement or the Unfunded Pension Plan, and the Debtors and Smucker each reserve all rights regarding such issue for purposes of section 365 of the Bankruptcy Code. (Footnote from Confirmation Order).

[6]    The list of participants is on file with the Debtors, but has been omitted publicly for privacy purposes, and may be viewable by the Court, the U.S. Trustee, and the Committee upon request. (Footnote from Confirmation Order).

13.    On June 13, 2026 (the "Effective Date"), the Plan became effective.  *See* Docket No. 1645.

## LEGAL STANDARD AND ARGUMENT

14.    Section 503(b)(1) of the Bankruptcy Code provides, in relevant part, that, "there shall be allowed administrative expenses … including … the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).  Administrative claims are entitled to priority payment under section 507(a)(2) of the Bankruptcy Code and are required to be paid in full once allowed pursuant to section 1129(a)(9) of the Bankruptcy Code. *See id.* §§ 507(a)(2), 1129(a)(9).

15.    To establish an administrative expense claim, a claimant must show that "(1) there was a post-petition transaction between the claimant and the estate; and (2) those expenses yielded a benefit to the estate." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021); *see also In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 532-33 (3d Cir. 1999) ("For a claim in its entirety to be entitled to first priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession … [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business.").

16.    Smucker submits that the first requirement is satisfied -- the Project Bay Purchase Agreement and the Unfunded Plan were post-petition transactions. *See Former Emples. Of Builders Square Retail Stores v. Hechinger Inv. Co. (In re Hechinger Inv. Co)*, 298 F.3d 219, 226 (3d Cir. 2002) (defining post-petition transactions as "services that are rendered after the commencement of the [bankruptcy] case and that are needed for the purpose of preserving the estate") (internal quotation marks omitted).  To be eligible for administrative expense priority, a post-petition transaction need not involve the exchange of money or formation of a contract. *See Goody's Family Clothing, Inc. v. Mountaineer Prop. Co. II, LLC (In re Goody's Family Clothing,*

*Inc.)*, 401 B.R. 656, 670 (D. Del. 2009) (citing Black's Law Dictionary 212, 1535 (8th ed. 2004) (defining "transaction" and "business transaction")). Indeed, a claimant's performance of a pre-petition contract, and a debtor's acceptance of that performance, can establish a post-petition transaction. *See id.* (citation omitted).

17.     Here, at least two bases support a finding of a post-petition transaction -- the Debtors' post-petition decision to "continue to maintain the [Unfunded Plan] in the ordinary course on a postpetition basis" as set forth in the Final Wage Order, and, alternatively, the Debtors' post-petition acceptance of Smucker's continued performance as administrator and paying agent under the Project Bay Purchase Agreement. *See Goody's*, 401 B.R. at 671.  The latter basis views performance of a pre-petition contract to be sufficient to establish a post-petition transaction; the former basis treats a debtor's decision to use property as an independent post-petition transaction, separate and apart from the Project Bay Purchase Agreement. Regardless of which basis the Court uses, the weight of authority clearly supports permitting administrative expense claims in situations like the instant matter. *See id.* (citation omitted).

18.     The second requirement is also satisfied as Smucker's performance as plan administrator and paying agent provided a benefit to the Debtors' estates.  The word "benefit" does not itself appear in the text of section 503(b)(1)(A) of the Bankruptcy Code.  Instead, it functions as "merely a way of testing whether a particular expense was truly 'necessary' to the estate: If it was of no 'benefit,' it cannot have been 'necessary' within the meaning of § 503(b)(1)(A)." *See In re Energy Future Holdings Corp.*, 990 F.3d 728, 742 (3d Cir. 2021) (quoting *Matter of Whistler Energy II, L.L.C.*, 931 F.3d 432, 443 (5th Cir. 2019) (internal quotation marks and citation omitted)).

19.     While the benefit provided by Smucker to the Debtors was more than substantial –

it was significant for the Unfunded Plan participants - "[t]he benefit does not, however, 'have to be substantial' to qualify." *Energy Future Holdings*, 990 F.3d at 742 (citation omitted).

20.     Under the second element of the test, a transaction provides an actual and necessary benefit to the estate where "the goods or services supplied enhanced the ability of the debtor-in possession's business to function as a going concern." *In re TransAmerican Nat. Gas Corp*., 978 F.2d 1409, 1416 (5th Cir. 1992).  "Although the estate receives a benefit that often can be measured by the actual cost of necessary goods or services supplied, the estate also receives other less readily calculable benefits, such as the ability to continue to conduct business as usual." *Id*. at 1420.

21.     Smucker submits that it meets the requirement of providing an actual and necessary benefit to the Debtors' estates.  The services rendered by Smucker as plan administrator and paying agent, which Smucker continued to perform in reliance upon the Debtor's representation that it would continue to maintain the Unfunded Plan, relieved the Debtor of its obligation to administer the Unfunded Plan and to make payments to its participants.

22.     For the foregoing reasons, Smucker should be allowed an administrative expense claim in amount of $43,982.71.

**<u>RESERVATION OF RIGHTS</u>**

23.     The filing of the Motion shall not be construed as a waiver or release of any of Smucker's claims, rights, or remedies.  Smucker reserves the right to supplement or amend the Motion in any manner and for any purpose including without limitation to assert additional administrative expenses for any period.  Smucker reserves its rights to seek reimbursement from non-Debtor DMPL in its capacity as a guarantor under the Project Bay Purchase Agreement for any payments previously made by Smucker that were not reimbursed by the Debtor and for any payments that may be made in the future.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Smucker respectfully requests the entry of

an order substantially in the form filed herewith granting allowance of its administrative expense

claim, requiring payment in the same manner as other similarly situated chapter 11 administrative

claims, and for such other relief as the Court deems appropriate under the circumstances.

July 9, 2026
Madison, New Jersey

**RIKER DANZIG LLP**

By:  /s/ *Joseph L. Schwartz*
Joseph L. Schwartz, Esq.
Daniel A. Bloom, Esq.
7 Giralda Farms, Suite 250
Madison, New Jersey 07940
Telephone: (973) 538-0800
jschwartz@riker.com
dbloom@riker.com

-and-

**TYDINGS & ROSENBERG LLP**

Stephen B. Gerald (admitted *pro hac vice*)
Legal Arts Building
1225 N. King Street, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 587-6985
sgerald@tydings.com

*Attorneys for The J. M. Smucker Company*

11

**Exhibit A**

| Invoice # | Invoice Date | Description | Amount |
|---|---|---|---|
| D-6760 | 10/1/2025 | September 2025 | 4,422.00 |
| D-6762 | 11/1/2025 | October 2025 | 4,405.44 |
| D-6764 | 12/1/2025 | November 2025 | 4,405.44 |
| D-6766 | 1/1/2026 | December 2025 | 4,405.44 |
| D-6768 | 2/1/2026 | January 2026 | 4,405.44 |
| D-6770 | 3/1/2026 | February 2026 | 4,387.79 |
| D-6772 | 4/1/2026 | March 2026 | 4,387.79 |
| D-6774 | 5/1/2026 | April 2026 | 4,387.79 |
| TBD | 6/1/2026 | May 2026 | 4,387.79 |
| TBD | 7/1/2026 | June 2026 | 4,387.79 |
| | | **Total** | **43,982.71** |

4915-3902-8155, v. 2