*Caption in Compliance with D.N.J. LBR 9004-1(b)*

**McELROY, DEUTSCH, MULVANEY & CARPENTER LLP**
Virginia T. Shea, Esq.
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ  07962-2075
Telephone: (973) 993-8100

*Counsel for Creditor Hartford Fire Insurance Company*

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| In re:<br><br>Del Monte Foods Corporation II Inc., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 25-16984 (MBK)<br><br>(Jointly Administered) |

### REQUEST BY HARTFORD FIRE INSURANCE COMPANY TO ALLOW AND REQUIRE PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Hartford Fire Insurance Company (individually, and with its affiliated insurance companies, "Hartford"), by and through its undersigned counsel, hereby files this Request to Allow and Require Payment of an Administrative Expense Claim (the "Administrative Expense Claim"), as against the following Debtors: 1) Del Monte Foods Corporation II Inc., 2) DM Intermediate II Corporation, 3) DM Intermediate Corporation, 4) Collage Inn Foods, 5) Contadina Foods, Inc., 6) Del Monte Chilled Fruit Snacks, LLC, 7) Del Monte Foods Holdings II, Inc., 8) Del Monte Foods

---

[1]　The last four digits of Debtor Del Monte Foods Corporation II Inc.'s tax identification number are 1894.  A complete list of the Debtors in these Chapter 11 Cases and their respective tax identification numbers may be obtained on the website of the Debtors' claims and noticing agent, at https://cases.stretto.com/DelMonteFoods.  The location of the Debtor Del Monte Foods Corporation II Inc.'s principal place of business and the Debtors' service address is 205 North Wiget Lane, Walnut Creek, California 94598.

Holdings, Inc., 9) Del Monte Foods Holdings, 10 Del Monte Foods, Inc., 11) Del Monte Mexico

Holdings LLC, 12) Del Monte Ventures, LLC, 13) Green Thumb Foods, 14) Hi Continental

Corporation, 15) Joyba, Inc., 16) Kitchen Basics, Inc., 17) S & W Fine Foods, Inc., 18) Sager

Creek Foods, Inc., and states as follows:

**GENERAL BACKGROUND**

A.      **Background and Basis for Administrative Expense Claim**

1.      On July 1, 2025 (the "Petition Date"), Del Monte Foods Corporation II Inc. and

certain of its affiliates (collectively, the "Debtors"), each filed a voluntary petition for bankruptcy

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United

States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").  The Debtors

continued to operate their businesses as debtors in possession and their chapter 11 cases were

jointly administered.

2.      Prior to the Petition Date, Hartford provided workers' compensation, commercial

general liability, and business auto insurance coverage to the Debtors in exchange for payment of

a premium (including premiums subject to audit such that the final amount due and owing may

not be determined until completion of such audit(s)).

3.      The prepetition policies, all having a term of 2/18/2025 – 2/18/2026, are:

(a) Policy 57 CSE S34502 (Automobile Liability)

(b) Policy 57 CSE S34503 (General Liability)

(c) Policy 57 WN S34501 (Workers' Compensation)

(d) Policy 57 WBR S34500 (Workers' Compensation (WI/MA)

(collectively, the "Prepetition Policies" or individually as a "Prepetition Policy).[2]

4.     As collateral for the foregoing, Hartford held the proceeds of an irrevocable standby letter of credit issued by JPMorgan Chase Bank, N.A., in the amount of $12,525,000.00 (the "LOC" and with any proceeds thereof, the "Original Collateral").

5.     The Prepetition Policies were set to expire effective February 18, 2026, and Hartford exercised its right to notify the Debtors that the Policies would be nonrenewed as of the expiration date.

6.     Pursuant to a *Stipulation and Consent Order Issuing Certain Insurance Coverage and Granting Related Relief* filed on February 13, 2026 ("Consent Order") [Docket No. 1190], the Prepetition Policies were renewed through for 120 days up to and including June 18, 2026 (the "Postpetition Policies" or individually as a "Postpetition Policy" and the Prepetition Policies with the Postpetition Policies, the "Policies"), in exchange for prior payment of the total premium and applicable surcharges totaling $1,535,435 (the "Premium") and (ii) additional collateral (in the form of cash) in the amount of $3,500,000 (the "Cash Collateral").   The Premium and Cash Collateral were duly paid to Hartford by the Debtors prior to Hartford issuing the Postpetition Policies on February 18, 2026.

7.     Pursuant to certain agreements ("Agreements" or individually, "Agreement") entered into between the Debtors and Hartford regarding the Prepetition Policies and the Postpetition Policies, the Agreement(s) constitute security agreement(s), and the Debtors' granted Hartford "a continuing first priority perfected security interest in and continuing lien on the

---

[2] The Policies and related documents are not attached to this Administrative Expense Claim as they are voluminous, and also for reasons of confidentiality.  The Policies and related documents will be made available to interested parties upon reasonable request, subject to an appropriate confidentiality agreement, where applicable.

[Original Collateral/Cash Collateral] and in all return premiums, return surcharge or Assessment amounts, dividends, Loss Deposits and other cash accounts, Prefunded Loss Reimbursement Amounts, or funds which are now or in the future may come into Hartford's possession."  (the "Additional Collateral").

8.      The Agreements also provide that the Debtors' obligations owed to Hartford include "all debts, liabilities and obligations of any kind owed or owing by [the Debtors] to [Hartford]… in connection with [the Agreement(s)], the [Policies], and any past or future insurance program agreements… including, without limitation, all interest, fees charges and expenses incurred by [Hartford] (including, without limitation, reasonable attorneys' fees and costs) …."

9.      The Consent Order provides that Hartford has a continuing first priority perfected security interest in, and continuing lien in the Original Collateral, Cash Collateral and Additional Collateral.

10.     The Consent Order also provides that Hartford, in its discretion, was entitled to apply any Original Collateral, Cash Collateral and/or Additional Collateral against any prepetition and/or Postpetition obligations under either the Prepetition Policies or the Postpetition Policies.

11.     The Consent Order also provides that Hartford has an allowed administrative expense claim for all the Debtors' obligations under the Postpetition Policies, subject to the terms of the Postpetition Policies, provided that any asserted administrative expense claims for attorneys' fees in connection with the application for the Consent Order be reasonable and documented.

12.     The Consent Order provides that any proceeds of the LOC do not constitute property of the Debtors' bankruptcy estate.

4

13.    Certain of the Prepetition Policies and Postpetition policies provide in pertinent part that the premium payments constitute a premium and that upon audit at the end of the policy term, a final premium will be computed, which could exceed the minimum premium.  Thus, the final premium cannot be computed until completion of the premium audit.

14.    Additionally, Hartford makes payment of claims on the Policies, which payments are invoiced to the Debtors, requiring reimbursement payment by the Debtors to Hartford, up to the claims deductible amount.

15.    The *First Amended Joint Chapter 11 Plan of Del Monte Foods Corporation II Inc. and its Debtor Affiliates (With Technical Modifications)*("Plan")(Docket No. 1592 at p. 71-190) defines "*Insurance Policies*" as "*all insurance policies that have been issued at any time to or provide coverage to any of the Debtors and all agreements, documents or instruments relating thereto, including, without limitation, all D&O Liability Insurance Policies, and any of the Debtors' rights under any third parties' insurance policies.*"  The Plan states that each Insurance Policy and any documents or instruments relating thereto to which a Debtor is a party as of the Effective Date, is an Executory Contract.  (Docket No. 1592, p. 130 of 190).

16.    The Effective Date of the Plan was June 13, 2026.  (Docket No. 1645, Notice of Occurrence of Effective Date).

17.    On May 22, 2026, the Bankruptcy Court issued *Findings of Fact, Conclusions of Law, and Order (I) Approving the Amended Disclosure Statement and (II) Confirming the First Amended Joint Chapter 11 Plan of Del Monte Foods Corporation ** Inc. and its Debtor Affiliates (With Technical Modifications)* ("Confirmation Order")(Docket No. 1592), which provides at paragraph 9 (page 42 of 190) that on the Effective Date, the Debtors shall be deemed to have assumed all Insurance Policies and related agreements, documents and instruments.

18.    The Confirmation Order also provides that the Consent Order was not to be modified.  (Confirmation Order at ¶ 36, pages 58 and 59 of 190).

19.    Hartford filed Proofs of Claim and Administrative Proofs of Claim Nos. 32, 543, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 560, 561 and 526, which claims are incorporated herein.

## The Administrative Expense Claim

20.    Hartford asserts, among other things, that the Wind-Down Debtors, pursuant to the terms of the Policies, must reimburse Harford for all deductible obligations paid by Hartford, without Hartford seeking reimbursement from the Original Collateral, the Cash Collateral or the Additional Collateral.

21.    Hartford's Administrative Expense Claim, a portion of which is contingent and/or unliquidated, arises from (a) one or all of the Policies; (b) agreements related to the Policies; and (c) contractual, common law, and statutory rights.

22.    Hartford's Administrative Expense Claim is/are comprised of: (a) any Postpetition loss/deductible reimbursement,  (b) a yet to be determined final premium amount (which may be a credit or a debit against the minimum premium amount, based upon a premium audit which has not yet occurred, and as such, is a contingent/unliquidated claim), (c) future claims made against the Policies which Hartford is obligated under those policies to pay, up to a deductible amount, and which the Debtors are obligated to reimburse/pay Hartford, inclusive of related surcharges/state tax, service fees and service fee taxes, which, as such, is an contingent/unliquidated claim, and (d) reasonable attorney fees and costs incurred by Hartford related to the insurance program provided by Hartford, including but not limited to reasonable attorney fees incurred by Hartford in these bankruptcy cases.

23.     To the extent that Hartford has paid or pays Postpetition claims made against certain of the workers' compensation policies, Hartford asserts an Administrative Expense claim therefore, inclusive of related surcharges/state tax, service fees and service fee taxes.

24.     In the event payments are made by Hartford as required under certain of the workers' compensation policies, the liquidated portion of the claim will be increased, with the contingent and/or unliquidated portion decreased accordingly.

25.     Hartford asserts and reserves all rights with respect to the Original Collateral, the Cash Collateral and the Additional Collateral.

26.     As the Policies have been deemed to be executory contracts and were assumed in connection with the Debtors' bankruptcy cases, all obligations thereunder are payable as administrative expense priority claims, and Hartford reserves all rights, claims and defenses with respect thereto.

27.     The Policies, having been deemed to be executory contracts, and Hartford has/will incur losses, costs and/or expenses with respect to any claim(s), Hartford asserts an administrative expense claim for such claim(s), loss(es), costs and/or expense(s).

28.     Hartford asserts that the LOC that it held and the proceeds thereof, are not property of the estate, however, to the extent if any that a court finds otherwise, Hartford has a secured claim against such LOC or the proceeds thereof.

29.     To the extent Hartford has setoff or recoupment rights against any of the Debtors, such setoff or recoupment rights constitute a secured claim.

30.     To the extent Hartford subrogates to any rights of any non-debtor claimants against insurance, such subrogation rights may constitute a secured claim, an administrative expense claim or unsecured claim.

31.     Hartford has a secured claim as to the cash collateral (Original Collateral, the Cash Collateral and the Additional Collateral) being held by Hartford.

32.     Hartford reserves all rights to assert a claim under theories of trust, recoupment and/or setoff.

33.     Hartford asserts a claim for all of its other rights under any of the Policies, such as, without limitation, the right to review any or all the Debtors' books and records.

34.     Hartford reserves the right to assert its claim as a secured claim and/or an unsecured deficiency claim.

35.     Further, to the extent that Hartford has received and/or receives collateral from any non-debtor, it does not diminish the claim(s) against any and/or all of the Debtors.

## ARGUMENT

**A.     Hartford has an Administrative Expense Claim Because the Policies have been Assumed.**

36.     Hartford's claim should be allowed as an administrative expense because the Debtors assumed the insurance policies and thereby bound the estate to perform the Debtors' obligations under those policies.  For example, it has been recognized that unpaid premiums arising out of post-petition workers' compensation policy is an administrative expense.  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 5, 120 S. Ct. 1942, 147 L.Ed.2d 1 (2000).  Accordingly, Hartford has an administrative expense claim arising out of any of the Debtors' obligations under the Policies.

**B.     Hartford has an Administrative Expense Claim Based Upon Language in the Consent Order.**

37.     The Consent Order [Docket No. 1190] provides at paragraph 10:

> Hartford shall have an allowed administrative expense claim for all of the
> Debtors' obligations under the 2026 Hartford Policies, subject to the terms

8

of the 2026 Hartford Policies, provided that any asserted administrative expense claims for attorneys' fees in connection with this Application and the Proposed Stipulation or otherwise, must be reasonable and, as to the attorneys' fees in connection with this Application, the Proposed Stipulation and the enforcement of Hartford's rights in these Chapter 11 Cases, documented. All parties' rights to contest any administrative expense claim are preserved.

38.    Accordingly, pursuant to the Consent Order, Hartford has an administrative expense claim arising out of the Debtors' obligations under the 2026 Hartford Policies.

**C.    In the Alternative, Hartford Is Entitled To An Administrative Expense Claim Based on Section 503**

39.    Pursuant to §§ 503(a) and (b) of the Bankruptcy Code, the Surety is entitled to receive payment for the actual, necessary costs and expenses of preserving the estate. Section 503(a) and (b) provide as follows:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
>
> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> > (1) (A) the actual, necessary costs and expenses of preserving the estate . . .

11 U.S.C. §§ 503(a) and (b). *See In re M Group, Inc.*, 268 B.R. 896, 898-899 (Bankr. D. Del. 2001) (provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate….") (citation omitted).

40.    The principal purpose of § 503(b)(1)(A) is to give creditors the incentive to continue dealing with the debtor-in-possession and supply it goods and services. *See e.g., Camelot Music, Inc. v. MHW Advertising & Public Relations Inc., (In re CM Holdings, Inc.)*, 264 B.R. 141, 151 (Bankr. D. Del. 2000) (recognizes that a creditor benefits the estate by providing postpetition

services); *In re Southern Soya Corp.*, 251 B.R. 302 (Bankr. D. S.C. 2000) (citing *Merry-Go- Round Enter. v. Simon DeBartolo Group (In re Merry-Go-Round Enter.*, 180 F.3d 149, 158 (4th Cir. 1999)). Normally, to be granted an administrative expense claim, a creditor must establish: (1) that the claim arose out of a transaction between the creditor and the bankrupt's trustee or debtor-in-possession; and (2) that the claim directly benefited the estate. *See Merry-Go-Round Enter.*, 180 F.3d at 157; *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995).

41.      However, Courts have also awarded administrative expense claims under the *Reading* exception which applies to variety of circumstances and under which notions of "fundamental fairness" demand that an injured party be compensated by the estate. *See Reading Co. v. Brown*, 391 U.S. 471, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968);  *Sanchez v. Northwest Airlines, Inc.*, 659 F.3d 671, 677 (8th Cir. 2011) (finding that *Reading* reached its conclusion "after balancing the objective of the debtor's rehabilitation against the desirability of allowing those injured by the operation of the business during the bankruptcy process to recover ahead of those for whose benefit the business was carried out");  *see also*, *In re ATP Oil & Gas Corp.*, 2014 Bankr. LEXIS 1050, at * 26 – 28 (Bankr. S.D. Tex. Mar. 18, 2014) (allowing an administrative expense even if contractually provided services did not "actually benefit the estate"); *In re Shreyas Hospitality, LLC*, 2010 Bankr. LEXIS 2074 (Bankr. C.D. Ill. 2010) (allowing administrative expense claim to compensate for debtor's use of a trade name during the case).  Such exception interprets "actual and necessary" costs under Section 503(b) to include amounts incurred ordinarily incident to the continued operation of a debtor's business or its orderly liquidation.  *Reading*, 391 U.S. at 475; 4 Collier on Bankruptcy P 503.06 (16th 2023) (citing *Reading)*.

10

42.    During the post-petition period, the Debtors maintained the Policies, which together form an integrated contract.  The Policies benefited the Debtors' estate by preserving it during the bankruptcy.  Costs associated with these Policies would thus be actual and necessary, and would be required to paid to Hartford under the Policies.  In addition, notions of "fundamental fairness" require that Hartford receive an administrative expense claim for these amounts as they would be expected as part of the Debtors' operation and indeed reorganization during these pendency of these bankruptcy cases.

**RESERVATION OF RIGHTS**

43.    Nothing contained in this Administrative Expense Claim shall constitute a waiver of: (a) the right to have final orders in non-core matters entered only after *de novo* review by a District Court Judge; (b) the right to trial by jury in any proceeding triable in this case or any case, controversy, or proceeding related to this case; (c) the right to have the District Court withdraw the reference in any matter subject to mandatory or discretionary abstention; (d) any objection to the jurisdiction or venue of this Court; (e) an election of remedy; (f) the right to amend this request for allowance of administrative expense claim; (g) the right to assert claims for attorneys' fees and costs which may accrue or have accrued; and/or (h) any other right, claim, defense, action, setoff, or recoupment, in law or in equity, under any agreement, all of which are expressly reserved.

44.    Hartford reserves the right to amend and/or supplement this request for allowance of an administrative expense at any time and in any manner including, without limitation, as necessary or appropriate to amend, quantify or correct amounts, to provide additional detail of the claims set forth herein, and/or file additional administrative expense claims and/or requests for allowance of administrative expense claims for any additional amounts owing to Hartford.

11

Hartford's request for allowance of administrative expense claims are made without prejudice to Hartford's rights under the Bankruptcy Code, applicable non-bankruptcy law, or otherwise.

45.     Hartford reserves all of its rights, claims, defenses and/or exclusions with respect to all non-debtors and nothing herein shall be construed as a waiver of such rights, claims, defenses and/or exclusions, or as an admission against the Hartford's interests.

WHEREFORE, based on the foregoing, the Hartford respectfully requests the entry of an Order (1) determining that the Wind-Down Debtors shall reimburse Hartford for all post-petition loss/deductible obligations paid by Hartford, without Hartford seeking reimbursement from the Original Collateral, the Cash Collateral or the Additional Collateral, (2)  allowing Hartford's Administrative Expense Claim for Hartford's attorney fees and expenses, (3), allowing Hartford's Administrative Expense Claim for any yet to be determined final premium amount, (4) allowing Hartford's Administrative Expense Claim for any future claims made against the Polices (which Hartford is obligated to pay up to a deductible amount and which the Debtors are obligated to reimburse/pay Hartford), inclusive of related surcharges/state tax, service fees and service fee taxes, and (5)  for such further and other relief as the Court may deem just and proper.[3]

**MCELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP**

Dated: July 9, 2026              */s/ Virginia T. Shea*
                               Virginia T. Shea, Esq.
                               1300 Mount Kemble Avenue
                               Morristown, NJ  07962-2075
                               Telephone: 973-993-8100
                               Facsimile: 973-425-0161
                               E-mail: vshea@mdmc-law.com

                               *Attorneys to Hartford Fire Insurance Company*

---

[3] Nothing herein shall limit Hartford's secured claim, including but not limited to any claim for setoff or recoupment, or claim against the Original Collateral, Cash Collateral and Additional Collateral.