**NOT FOR PUBLICATION**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | Case No. 25-16984-MBK<br><br>Hearing Date: June 25, 2026<br><br>Chapter 11<br><br>Judge:  Michael B. Kaplan |
| In Re:<br><br>Del Monte Foods Corporation II, Inc., *et al*.,<br><br>Debtors. | |

*All Counsel of Record*

## MEMORANDUM DECISION

Presently, before this Court is a Motion for a Request for Certification of Direct Appeal of the Confirmation Order[1] to the Court of Appeals for the Third Circuit (the "Motion") [ECF No. 1633] filed by the Ad Hoc Group of Minority Secured Lenders (the "Appellants" or the "Minority Ad Hoc Group"). Ultimately, the relief sought by Appellants is certification of the Confirmation Order pursuant to 28 U.S.C. § 158(d)(2) on the grounds that (i) the Confirmation Order involves a question of law as to which there is no controlling decision of the Court of Appeals for the circuit or the Supreme Court and (ii) the appeal involves a matter of significance warranting certification.

---

[1] Specifically, the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Amended Disclosure Statement and (II) Confirming the First Amended Joint Chapter 11 Plan of Del Monte Foods Corporation II Inc. and its Debtor Affiliates* (the "Confirmation Order") [ECF No. 1592].

1

The Court has reviewed carefully the parties' written submissions without oral argument and, for the reasons that follow, the Court will **DENY** Appellants' Motion.[2]

### I.    Jurisdiction

The Court has jurisdiction over the contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984—as amended September 18, 2012, and June 6, 2025—referring all bankruptcy cases to the bankruptcy court. This matter is a statutory core proceeding, and this Court has constitutional authority to enter a final order. 28 U.S.C. § 157(b)(2)(A) & (L).

### II.    Background and Procedural History

The underlying facts that provide a foundation for this Motion have been thoroughly briefed and as such, the Court accepts, without further analysis, the parties' written submissions relevant to the instant Motion.[3] On March 18, 2026, the Court considered the parties' written submissions and heard oral argument on the Debtors' Motion for Entry of an Order *(I) Approving The Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines related thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms related thereto; and (IV) Granting Related Relief* [ECF No. 1232] and, for the reasons set forth on the record, the Court granted the Motion and entered the interim order (the "Interim Order") [ECF No. 1334].[4] The Interim Order scheduled a combined hearing date on Plan confirmation and Final Disclosure

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the moving papers.

[3] The Court also accepts the parties' incorporation of background and admissions referenced in the *Min. AHG Objection* [ECF No. 1476], the *Stay Pending Appeal Motion* [ECF No. 1602], and the *Debtors' Reply to Objections and Brief in Support of Final Approval of the Disclosure Statement and Conformation Plan* [ECF No. 1507].

[4] *See generally* Transcript regarding Hearing held on March 18, 2016 at ECF No. 1341.

Statement Approval for May 7, 2026. *Interim Order* at 7. Subsequently, on April 28, 2026, the combined hearing was rescheduled to May 12, 2026.

On May 12, 2026, at the combined hearing on confirmation of the Plan and final approval of the Disclosure Statement and after considering the parties' written submissions, the Court conducted an evidentiary hearing, which included witness testimony and admitted exhibits, as well as oral argument. Thereafter, on May 18, 2026, the Court issued its ruling on the record, confirming the Plan and approving the Disclosure Statement.[5] Accordingly, the Court entered the Confirmation Order, the order for which the Appellants now seek direct certification.

Post-confirmation, but prior to the filing of the instant Motion, the Minority Ad Hoc Group appealed the ruling and sought a stay pending appeal both in this Court [ECF No. 1602] and the District Court of New Jersey.[6] In seeking a stay pending appeal, Appellants argued the Court should grant a stay because (1) there is a substantial likelihood that the Minority Ad Hoc Group would prevail on appeal; (2) the Minority Ad Hoc Group would be irreparably harmed if its appellate rights were impaired owing to the Debtors' efforts to involve "equitable mootness" upon substantial consummation of the Plan; (3) no parties would be harmed by a stay; and (4) the public interest would be furthered by the correct determination and application of the important legal principles at issue. *Appellants' Stay Pending Appeal Mot.* at 1. In an oral opinion on June 2, 2026, the Court denied the Stay Pending Appeal Motion.[7]

---

[5] *See generally* Transcript regarding Hearing held on May 18, 2026 at ECF No. 1597.

[6] The matter was filed as Case No. 26-CV-06259-RK; *See generally* The Ad Hoc Group's Emergency Motion for a Temporary Administrative Stay and to Stay Order Confirming Debtors' First Amended Joint Chapter 11 Plan of Reorganization Pending Appeal (the "Emergency Motion") [ECF No. 3]; On June 11, 2026, the District Court denied Appellants' Emergency Motion (*see generally* Memorandum Order Denying Appellants' Emergency Motion [ECF No. 56]).

[7] *See generally* Order Denying Minority Ad Hoc Group's Stay Pending Appeal Motion at ECF No. 1642.

As a result, the Minority Ad Hoc Group filed the instant Motion for Request for Certification of Direct Appeal of the Confirmation Order[8] to the Court of Appeals for the Third Circuit [ECF No. 1633]. Subsequently, on June 18, 2026, Debtors filed opposition to the Motion (the "Opposition") [ECF No. 1652][9] and in response, on June 23, 2026, the Minority Ad Hoc Group filed its reply (the "Reply") [ECF No. 1664]. On June 26, 2026, after considering the parties' submissions, the Court entered an Order denying the Motion [ECF No. 1679] and this is the written opinion accompanying the Order.

### III.   Arguments of the Parties

#### A. The Appellants' Position

In accordance with FED. R. BANKR. P. 8006 and 28 U.S.C. § 158(d)(2), Appellants move this Court to certify the Confirmation Order for direct appeal. Appellants argue certification for direct appeal is warranted because the Confirmation Order involves questions of law as to which there is no controlling decision by the Court of Appeals for the Third Circuit or of the Supreme Court. *Appellants' Mot.* at ¶ 10. In addition, Appellants argue this appeal involves a matter of significance and, therefore, immediate appellate review will materially advance the progress of this case. *Appellants' Mot.* at ¶ 22.

First, Appellants contend that certification is warranted to resolve the issue regarding 11 U.S.C. § 1126(g) and whether Class 3 should have had the ability to vote. *Appellants' Mot.* at ¶ 10. Specifically, Appellants argued at confirmation that "the Plan should not have been confirmed because Class 3 must have been deemed to reject under [S]ection 1126(g) as it is not receiving any

---

[8] Specifically, the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Amended Disclosure Statement and (II) Confirming the First Amended Joint Chapter 11 Plan of Del Monte Foods Corporation II Inc. and its Debtor Affiliates* (the "Confirmation Order") [ECF No. 1592].

[9] The Official Committee of Unsecured Creditors and the Ad-Hoc Super Senior Term Lender Group both filed Joinders to Debtors' Opposition [*see generally* ECF Nos. 1653 and 1655].

recovery under the Plan." *Appellants' Mot.* at ¶ 11; 11 U.S.C. § 1126(g). The Court rejected this argument and permitted Class 3 to vote, finding that "retention of a hypothetical right to any distributable proceeds under the waterfall, in addition to setoff and recoupment rights, were sufficient to avoid the application of [S]ection 1126(g)." *Id*. Appellants assert that this conclusion is unsupported by binding authority and therefore, warrants certification. *Appellants' Mot.* at ¶¶ 11-12.

Relatedly, Appellants state that—just as there is no controlling law on § 1126(g)—there is likewise no controlling authority concerning "how creditor classes should be classified when there is an insider (preferred) class of prepetition secured creditors, a non-insider (disfavored) class of prepetition secured creditors, and a favored class of general unsecured creditors." *Appellants' Mot.* at ¶ 13. Appellants assert that the classifications in the case present a "hybrid set of issues" because Debtors "have gerrymandered the classes to sidestep having to satisfy the cramdown standard entirely and have sought to drown out the voice of the disfavored lenders ([the] Appellants)." *Appellants' Mot.* at ¶ 14. Appellants maintain that the special "inducements" afforded to the preferred creditor classes arise from the favorable treatment of their inflated DIP loans, which have been separately classified from their prepetition secured loans, in addition to other benefits they receive under the Plan that are not afforded to Appellants. *Id*.

Second, Appellants contend that there is a lack of meaningful guidance on the § 507(b) issues on appeal. Here, Appellants argue that the Plan is "not feasible under [S]ection 1129(a)(11) and [does] not comply with [S]ection 1129(a)(9) because it fail[s] to provide for the possibility of Appellants' [S]ection 507(b) claims." *Appellants' Mot.* at ¶ 16. Appellants argue these claims stem from the inadequacy of the adequate protection liens granted under the Court's DIP Orders, which ultimately proved insufficient in light of Appellants' "$0 recovery" under the Plan. *Id*. In this

context, Appellants claim there is a complete absence of binding authority on how § 507(b) claims must be evaluated for feasibility under § 1129(a)(11). Specifically, Appellants assert there is no controlling law as to: (i) how significant § 507(b) claims should be evaluated for feasibility in the context of adequate protection liens granted by bankruptcy courts pursuant to DIP orders; and (ii) whether a bankruptcy court can shift the burden of establishing the viability of their § 507(b) claims to creditors. *Appellants' Mot.* at ¶ 18.

Ultimately, Appellants maintain the facts of this case give rise to legal questions that previously have not been litigated, thus presenting precisely the circumstances warranting direct certification under § 158(d)(2)(A)(i). Moreover, Appellants contend that this appeal involves a "matter of significance" pursuant to § 158(d)(2)(A)(i). *Appellants' Mot.* at ¶ 22. Appellants assert that the resolution of this appeal will determine whether Appellants will receive any payment on their claims, which total over $111 million. *Id*. Given the substantial amount in controversy, Appellants suggest that any decision made by the District Court will likely be appealed to the Third Circuit Court. Accordingly, Appellants posit an immediate appeal to the Third Circuit Court of Appeals promotes judicial economy and will materially advance the case. *Id*.; *Appellants' Reply*, at 2.

### B.  The Debtors' Position

In response, Debtors assert that the Appellants fail to meet their burden of proof to establish that direct certification of the appeal of the Confirmation Order is warranted. *Debtors' Opp'n*. at ¶ 1. First, Debtors argue that Appellants have not established that the appeal raises unsettled questions of law. Rather, Debtors contend that Appellants mischaracterize the disputes, all of which properly concern the application of settled law to the facts of this case.[10] *Id*. Second, Debtors

---

[10] Debtors cite to the Transcript regarding the hearing on Appellants' Stay Pending Appeal Motion [ECF No. 1602] in support of their position; This point is addressed is greater detail In Section V below.

contend that the Appellants' disagreement with the Court's application of well-settled law does not give rise to a matter of public importance, which is consistent with this Court's prior denial of the Ad Hoc Group's motion to certify the Settlement Order for direct appeal. *Debtors' Opp'n.* at ¶ 2; *see also* Opinion Denying Certification of Direct Appeal of the Settlement Order [ECF No. 1373].

Debtors maintain that whether Class 3 is deemed to reject the Plan is controlled by the plain language of 11 U.SC. § 1126(g). *Debtors' Opp'n.* at ¶ 11. They further emphasize that Appellants acknowledge they retain setoff and recoupment rights, while the Plan also preserves their right to receive property through the recovery waterfall. *Debtors' Opp'n.* at ¶¶ 11-12. Accordingly, Debtors argue whether these rights have meaningful value is a factual question—not a legal one—and cannot be assumed otherwise. *Id.* Since this issue requires only the straightforward application of §1126(g) to the facts, Debtors submit that certification is not appropriate. *Id.*

Turning to classification issues, the Debtors contend that binding authority provides ample guidance on the formulation of classes. *Debtors' Opp'n.* at ¶ 13. Accordingly, the Appellants' disagreement with the Court's application of those well-defined principles does not create a question of law. *Id.* Likewise, Debtors maintain that Appellants' feasibility argument concerning their § 507(b) claims fares no better. *Debtors' Opp'n.* at ¶ 14. Specifically, Debtors note that Appellants fail to recognize that "[a] feasibility determination is a prototypical example of a forward-looking factual finding." *In re Smith*, 102 F.4th 643, 657 (3d Cir. 2024). *Id.* Moreover, Debtors assert they have met their burden on feasibility satisfying § 1129(a)'s statutory requirements. *Id.* As a result, Debtors argue that the Court's findings on feasibility are inappropriate for certification. *Id.*

7

Finally, Debtors argue that Appellants' have failed to establish that this appeal presents a matter of significance[11] such that direct certification would materially advance the resolution of the case. Debtors point out that courts analyze this prong narrowly, requiring the matter "transcend the litigants and involve a legal question, the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *Whittaker, Clark & Daniels, Inc.*, 2023 WL 4875915, at *3 (Bankr. D.N.J. July 31, 2023) (internal citations omitted). *Debtors' Opp'n*. at ¶ 16. Debtors submit that this appeal does not present a matter that "transcends" the litigants because it concerns merely the application of well-settled confirmation standards to the set of facts present in this case. *Id*. Debtors further assert that mere possibility of eventual review by the Court of Appeals does not—standing alone—warrant direct appeal, as adopting such a rule would effectively bypass the District Court's role in the bankruptcy appellate process. Thus, Debtors maintain that the relief sought in the Appellants' Motion should be denied.[12]

### IV.    Legal Standard

Section 158(d)(2)(A), enacted as part of the BAPCPA amendments, permits the direct appeal of a bankruptcy court order to the circuit court of appeals if one or more of the specified statutory criteria are satisfied. *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 708 (Bankr. D. Del. 2016) (citing *Mull Drilling Co. v. SemCrude, L.P. (in re SemCrude L.P.)*, 407 B.R. 82, 111 (Bankr. D. Del. 2009). In pertinent part, § 158(d)(2)(A) provides:

---

[11] Although the Appellants characterize this appeal as raising a "matter of significance," the substance of this submission is properly considered under the recognized criterion that may establish a "matter of public importance." *See* § 158(d)(2)(A)(i). The Court therefore addresses the argument on that basis. The Debtors note this distinction in their Opposition, observing that the Appellants' characterization does not alter the applicable standard. *Debtors' Opp'n*. at ¶ 16.

[12] The Court notes that Appellants filed a Reply [ECF No. 1664] in further support of the Motion and in response to Debtors' Opposition. The Court has reviewed the Reply and concludes that it largely reiterates the arguments advanced in the Motion. Accordingly, the Court does not separately address the Reply in this Section.

> The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentenced, or all the appellants and appellees (if any) acting jointly, certify that –
>
>> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>>
>> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
>>
>> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.
>
> and, if the court of appeals authorizes the direct appeal of the judgement, order, or decree.

28 U.S.C. § 158(d)(2)(A). The direct-appeal pathway for a bankruptcy court order under 28 U.S.C. § 158(d)(2) was enacted to "foster the development of coherent bankruptcy-law precedent" by facilitating "guidance on pure questions of law" from the circuit courts of appeals. *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007). It is generally reserved for gaps or conflicts in bankruptcy-law precedent—when the order "involves a question of law as to which there is no controlling decision" or "involves a question of law requiring resolution of conflicting decisions." § 158(d)(2)(A)(i), (ii). Certification may also be granted for an order that "involves a matter of public importance" or for which immediate appeal "may materially advance the progress of the case," § 158(d)(2)(A)(i), (iii), but courts construe these secondary provisions "narrowly." *Polk 33 Lending LLC v. THL Corp. Fin., Inc.* (*In re Aerogroup Int'l, Inc.*), 2020 WL 757892, at *5 (D. Del. Feb. 14, 2020).

In contrast, certification ordinarily is inappropriate when there is an opportunity to build additional precedent because the lower court's order involves questions of fact, mixed questions of fact and law, or the application of well-settled law to a particular set of facts. *See Weber*, 484 F.3d at 158 ("Congress believed direct appeal would be most appropriate … to resolve a question of law not heavily dependent on the particular facts of a case"). Courts in this circuit have rejected requests to certify fact-bound orders. *See In re Tribune Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) ("[H]ow this Court measured materiality is not a pure legal issue; it is not appropriate for direct appeal.") (internal citations omitted); *Bepco LP v. Globalsantafe Corp.* (*In re 15375 Mem'l Corp.*), 2008 WL 2698678, at *1 (D. Del. July 3, 2008) (Under § 1112(b) of the Bankruptcy Code, "whether such 'unusual circumstances' exist on the record … is necessarily fact-intensive, as is a review of that court's determination that no lack of good faith exists on the part of the debtors. Such factual issues preclude a direct appeal.").

V.    **Discussion**

After reviewing the Parties' submissions and the underlying Confirmation Order, the Court concludes that the issues identified for appeal do not warrant direct certification.

Appellants first contend that the Confirmation Order involves pure questions of law for which there is no controlling authority, thereby satisfying 28 U.S.C. § 158(d)(2)(A)(i). However, the issues presented by the approval of the Confirmation Order are, in the Court's view, mixed questions of fact and law that implicate the particular circumstances of this case. It is a fundamental principle of bankruptcy law that confirmation of a plan requires the Court to make factual findings and determinations necessary to conclude that the applicable requirements of the Bankruptcy Code have been satisfied. *See*, *e.g.*, *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3d Cir. 2004); *In re Boy Scouts of America and Delaware BSA, LLC*, 650 B.R. 87 (Bankr. D. Del. 2023); *see also In re G-I Holdings, Inc.*, 420 B.R. 216 (Bankr. D.N.J. 2009). In this instance, confirmation of the

10

Plan required the Court to make numerous fact-intensive findings and determinations—including, but not limited to, whether the plan was proposed in good faith (§ 1129(a)(3)), is feasible (§1129(a)(11)), complies with the applicable provisions of the Bankruptcy Code (§1129(a)), and satisfies the statutory requirements governing treatment of creditors, including the "best interests of creditors" test (§ 1129(a)(7)).

The record here reflects precisely such an exercise. Specifically, approval of the Plan and Disclosure Statement was predicated on the evidentiary record before the Court. Particularly noteworthy is the Court's identification of the considerations underlying its approval. *See* Hr'g Tr. May 18, 2026 at 4:22-6:15. The Court's determinations were grounded in well-established Third Circuit precedent and required the application of those standards, as well as the statutory requirements set forth in the Bankruptcy Code, to the specific facts presented. Courts have consistently recognized that such determinations—where the Court is called upon to apply settled legal principles to a detailed factual record—are not well-suited for direct appeal under §158(d)(2). *See e.g. In re Tribune*, 477 B.R. at 472 (declining certification where the issues turned on how the court applied established standards to the facts before it). Moreover, "[a] 'controlling decision' of the Third Circuit for the purposes of § 158(d)(2)(A)(i) is one that admits of no ambiguity in resolving the issue." *In re Conex Holdings, LLC*, 534 B.R. 606, 611 (Bankr. D. Del. 2015) (internal citations omitted). In *Conex*, the court determined that the appellant was not arguing about the absence of controlling law but rather, the absence of a decision that adopted his position. *Id*. The Court reaches the same conclusion here and, accordingly, finds persuasive Debtors' observation that the issues Appellants identify for appeal are plainly fact-bound.

In so concluding, the Court first addresses, and rejects, Appellants' contention that Class 3 should have been deemed to reject the Plan. 11 U.S.C. § 1126(g) provides, in pertinent part, "a

class is deemed not to have accepted a plan if such a plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." Appellants contend that—notwithstanding the Plan's provision for potential distributable proceeds to Class 3 through the Recovery Waterfall—any right to receive property is speculative at best and therefore, Class 3 must have been deemed to reject the Plan. *Appellants' Mot.* at ¶ 11. The Court, however, found this argument unpersuasive during the Confirmation hearing and held:

> This argument fails in light of the plain language of the statute and its legislative history. [Section] 1126(g) deems a class to reject a plan only when the plan itself excludes the class from participation all together; for example, when the plan provides no entitlement to receive or retain any property on account of the classes' claims. The statute focuses on what the plan provides, not on anticipated recoveries. The courts must limit the inquiry to whether the plan entitles holders to receive or retain property, not on what the projected outcome is likely to be.
>
> . . . [T]he plan gives Class 3 holders a right to their pro rata share of distributable proceeds through the waterfall recovery. Even if . . . the expected case recovery is zero percent, the plan still gives the class a contingent entitlement . . . and the low projected value does not itself erase the entitlement.

Hr'g Tr. May 18, 2026 at 16:12-17-2.[13] As the Court notes, a similar outcome occurred in *In re Claire's Holdings LLC* (Case No. 25-11454-BLS) and *In re Bed Bath & Beyond, Inc.* (Case No. 23-13359-VFP).[14] The Court's rulings are ultimately guided by the applicable statutes and controlling Third Circuit case law.[15] Appellants conflate issues and improperly focus on Class 3's

---

[13] Likewise, the Court rejected Appellants' reiteration of this argument in the Stay Pending Appeal Motion. *See* Hr'g Tr. June 2, 2026 at 59:7-15 [ECF No. 1625].

[14] *See* Hr'g Tr. May 18, 2026 at 17:5-6.

[15] *See*, *e.g.*, *In re Boy Scouts of America*, 137 F.4th 126, 145 n.5 (3d. Cir. 2025) (explaining that, under the Bankruptcy Code, fully impaired classes are deemed to reject a proposed Chapter 11 plan pursuant to § 1126(g)); *In re PWS Holding Corp.*, 228 F.3d 224, 231-32 (3d Cir. 2000) (finding the interest of holders of

projected cash recoveries, which do not—standing alone—determine whether a class is deemed to have rejected a plan under § 1126(g). As the Court explained, the statutory inquiry turns on whether the class retains any right to receive or retain property under the plan. Here, it is undisputed that Class 3 retains setoff and recoupment rights under the Plan—a fact Appellants themselves acknowledge. *Appellants' Mot.* at ¶ 11. Because § 1126(g) requires the absence of both the entitlement to receive distribution and retain property, and the Appellants do not dispute the existence of either, their contention regarding the absence of controlling authority not only fails— but is irrelevant.

As to Appellants' second issue—whether the members of Class 3 were properly classified—the Court rejects Appellants' contention that there is no controlling authority governing the formation of classes. The Bankruptcy Code itself provides the governing framework for classification of claims. 11 U.S.C. § 1122(a) provides in pertinent part, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." Applying this principle, the Third Circuit has recognized that § 1122(a) affords debtors flexibility in the classification of claims provided that such classification is not employed to manipulate the voting process. *See, e.g.*, *Matter of Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) (finding § 1122(a) requires that claims in a class be "substantially similar", but it does not require identical treatment or mandatory grouping); *see also In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013) (upholding a plan's classification scheme so long as it is "reasonable" and does not "arbitrarily designate classes."); *In re Coastal Broad. Sys., Inc.*, 570 F. App'x 188, 193 (3d Cir. 2014) (explaining that the "'grouping of similar claims in different

---

subordinated notes were eliminated and, "by operation of the Code, 11 U.S.C. § 1126(g), the holders are deemed to have rejected the plan").

classes' is permitted so long as the classification is 'reasonable.'" (citing *Jersey City Med.*, 817 F.2d at 1061)).

Appellants argue the Debtors violated § 1122(a) by gerrymandering the classes so Debtors could have a consensual plan and avoid having to satisfy cramdown standards under § 1129(b). In doing so, Appellants argue Debtors have effectively silenced the Appellants (the disfavored lenders). *Appellants Mot.* at ¶ 14. However, the Court previously rejected this argument during confirmation and held:

> [T]he [P]lan's classification scheme satisfied [S]ection 1122. The [P]lan separately classified super-senior term loan claims in Class 3 and general unsecured claims in Class 4. Those claims are not substantially similar. The super-senior term loan claims arise from a distinct credit facility, are governed by unique contractual arrangements, possess asserted collateral rights, and are subject to separate intercreditor and adequate protection issues. General unsecured creditors, by contrast, are trade and other unsecured obligations with materially different legal rights.

*See* Hr'g Tr. May 18, 2026 at 19:12-22. Most notably, the Court's ruling on the classification of claims was premised on factual findings "establish[ing] that the classification scheme was not proposed for any improper purpose such as vote manipulation or artificial impairment." *See* Hr'g Tr. May 18, 2026 at 20:1-4. Appellants cite to *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 158, 161 (3d Cir. 1993) in support of their contention that debtors "may not classify creditor claims in order to gerrymander an artificially impaired class . . . and . . . that deficiency claims cannot be classified differently from other **unsecured** claims." *Appellants' Mot.* at ¶ 13. Indeed, *John Hancock* instructs courts to look for and rule against classification schemes designed to manipulate voting outcomes. *John Hancock*, 987 F.2d at 160. However, implicit in this direction is that claims must be "sufficiently distinct" to justify separate

14

classifications. *Id*. at 159; *see also, e.g.*, *In re W.R. Grace & Co.*, 729 F.3d 311, 326 (3d Cir. 2013).[16]

That is the case here.

In an attempt to reframe the issue, Appellants assert there is an absence of controlling law articulating "how creditor classes should be classified when there is an insider (preferred) class of prepetition secured creditors, a non-insider (disfavored) class of prepetition secured creditors, and a favored class of general unsecured creditor." *Appellants' Mot.* at ¶ 13. Clearly, this argument is a distraction from the dispositive issue, which is that Appellants simply do not agree with the Court's classification ruling. The absence of a controlling decision on materially identical facts does not mean that a controlling decision on the legal question does not exist. Because Appellants cannot demonstrate that the Court failed to properly apply § 1122's governing principles in its classification ruling, the Court finds their argument on this issue unavailing.

As a final matter within this point, the Court also rejects the Appellants' contention that there is a "similar lack of meaningful guidance" on the § 507(b) issues on appeal. *Appellants' Mot.* at ¶ 15. Specifically, Appellants assert "the Plan [is] not feasible under 11 U.S.C. § 1129(a)(11) and [does] not comply with 11 U.S.C. § 1129(a)(9) because it fail[s] to provide for the possibility of Appellants' [S]ection 507(b) claims." *Appellants' Mot.* at ¶ 16. Appellants fail to recognize that "[a] feasibility determination is a prototypical example of a forward-looking factual finding." *In re Smith*, 102 F.4th 643, 657 (3d Cir. 2024). Moreover, a "bankruptcy court must forecast whether the debtor will make all plan payments over the duration of the plan's term . . . [T]hus, a bankruptcy court's feasibility determination is a question of fact to be reviewed for clear error." *Id*. On that

---

[16] The Court, like Debtors, finds it noteworthy that Appellants simultaneously argue that no controlling authority exists, while urging the Court to follow guidance set forth in *John Hancock*.

15

basis and as discussed above, a Court's factual findings on feasibility should not be certified for direct appeal. *See*, *e.g.*, *Weber*, 484 F.3d at 158.

As the Court noted during confirmation, "Section 1129(a)(11) requires a reasonable assurance of success, not certainty."[17] This principle is well-established: "[a] plan must be 'reasonably likely [to] succeed [] on its own terms without a need for further reorganization on the debtor's part.'" *In re American Capital Equipment, LLC*, 688 F.3d 145, 156 (3d. Cir. 2012) (internal citations omitted). In the instant matter, the Court further recognized:

> The [D]ebtors have demonstrated that the plan provides a workable mechanism for completing the wind-down, administering remaining assets, resolving claims, and making distributions. The [P]lan is supported by extensive settlements, completed sale transactions, and overwhelming creditor support. The feasibility analysis is not defeated by speculative and unsupported claims that may never materialize.

*See* Hr'g Tr. May 18, 2026 at 15:2-8. In addition, the Court found that there was nothing in the record which would allow the Court to fix a value on the Appellant's interest on the Petition Date and any diminution thereafter. *Id*. at 14:5-7. Notably, the Court had no evidentiary record upon which to rely and instead was presented only with Appellants' argument that the collateral necessarily possessed value in light of its nature and amount. *Id*. at 14:14-17. As a result, the Court overruled the feasibility objection. *See* Hr'g Tr. June 2, 2026 at 60:9-14 (stating that, "[a]t confirmation, the record before the Court was insufficient to establish either standing to pursue the asserted 507(b) claims or the factual and legal basis necessary to require a reserve for such claims. An appellate court's review will be confined to the record that existed at the time of confirmation."). The Court also concluded that Debtors have met their burden under §1129(a).[18]

---

[17] *See* Hr'g Tr. May 18, 2026 at 15:1-2.

[18] *See generally* May 18, 2026 Hr'g Tr. on confirmation.

In sum, Appellants have not demonstrated the existence of pure questions of law requiring immediate appellate intervention under § 158(d)(2)(A)(i). Because each ruling is highly fact-intensive, the issues presented are not amenable to resolution on direct appeal.

Finally, Appellants submit that this appeal warrants direct certification because the amount in controversy renders the matter one of "significance". *Appellants' Mot.* at ¶ 22. As an initial matter—and as Debtors correctly observe—the correct standard is whether the appeal concerns a "matter of public importance." § 158(d)(2)(A)(i); *Debtors' Opp'n.* at ¶ 16.[19]

Courts construe the "public importance" prong narrowly and with a specific meaning. *See*, *e.g.*, *Polk*, 2020 WL 757892 at *5; *In re Nortel Networks Corp.*, 2010 WL 1172642 at *2 (Bankr. D. Del. Mar. 18, 2010). Courts emphasize that a matter must "transcend the litigants and involve a legal question, the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *Whittaker*, 2023 WL 4875915, at *3 (emphasis and citations omitted). Even where a dispute implicates public policy concerns, those concerns must be broad and must still present a legal question. *See In re IMMC Corporation*, 2016 WL 356026, at *6 (D. Del. Jan. 28, 2016). Therefore, that an issue is hotly contested and important to the parties is not sufficient. *See In re Millennium Lab Holdings II*, *LLC*, 534 B.R. at 716. Similarly, issues involving the application of settled legal standards to a particular factual record—as is the case here—generally

---

[19] In Appellants' Reply, they assert immediate appellate review will materially advance the administration of the Case. *Appellants' Reply* at 2. As an initial matter, although Appellants do not fully develop this argument in their initial briefing, the Court notes that Appellants reference—in passing—the third prong of 28 U.S.C. § 158(d)(2)(A).The Court finds that Appellants' one-line argument necessarily overlaps with the related contention that the issues presented warrant immediate review due to their asserted significance. Accordingly, for the reasons set forth in this subsection, the court likewise finds that the Appellants have not demonstrated that the requirements for material advancement have been satisfied under §158(d)(2)(A)(iii).

do not satisfy this standard because they do not "transcend" the parties or meaningfully advance

the development of the law. *Polk*, 2020 WL 757892, at \*5.

### VI.    Conclusion

Based on the foregoing, the Motion [ECF No. 1633] is **DENIED**.